# Complaint
# EXHIBIT G




Search for bills, hearings, people, and more

Bills

Share

# AB 2839: Elections: deceptive media in advertisements.

**Session Year:** 2023-2024

**House:** Assembly

## Current Status:

**IN PROGRESS**

(2024-08-29: Read third time. Urgency clause adopted. Passed. Ordered to the Assembly. (Ayes 32. Noes 5.).)

- ✓ Introduced
- ✓ First Committee Review
- ✓ First Chamber
- ✓ Second Committee Review
- ✓ Second Chamber
- ○ Enacted

Summary | Bill Text | Status | Votes | Supporters & Opponents | **Analysis**

Assembly Standing Committee on Elections (4/9/2024) 

Date of Hearing: April 10, 2024

# ASSEMBLY COMMITTEE ON ELECTIONS

Gail Pellerin, Chair

# ABPCA Bill Id:AB 2839 (

Author:Pellerin) – As Introduced Ver:February 15, 2024

**ANALYSIS CORRECTED 4/9/24; 4:20PM – Corrected Support List**

**AS PROPOSED TO BE AMENDED**

**SUBJECT**: Elections: deceptive media in advertisements.

**SUMMARY**: Prohibits the distribution of campaign advertisements and other election communications that contain materially deceptive and digitally altered or created images, audio, and video, except as specified. Allows a court to issue injunctive relief prohibiting the distribution of such content, and to award general or special damages against the person that distributed the content. Specifically, **this bill**:

Prohibits a person, committee, or other entity from knowingly distributing an advertisement or other election communication containing materially deceptive and digitally altered or created image or audio or video files with the intent to influence an election or solicit funds for a candidate or campaign, during a specified period of time, if the files are of any of the following:
A candidate portrayed as doing or saying something that the candidate did not do or say.
An officer holding an election or conducting a canvass portrayed as doing or saying something in connection with the election that the officer did not do or say.
An elected official portrayed as doing or saying something in connection with the election that the official did not do or say.
A voting machine, ballot, voting site, or other elections-related property or equipment

portrayed in a materially false way.

Provides that the prohibition detailed above applies only during the following time periods: 120 days before any election.

With respect to content depicting an officer holding an election or conducting a canvass and depicting elections equipment and materials, 120 days before any election through 60 days after the election.

Permits a candidate, notwithstanding the prohibition detailed above, to portray themselves as doing or saying something that the candidate did not do or say if the image or audio or video file includes a disclaimer stating "This (image/video/audio) has been manipulated." Requires this disclaimer to comply with the following:

In the case of visual media, requires the text of the disclaimer to appear in a size that is easily readable, as specified.

In the case of a video, requires the disclaimer to appear for the duration of the video.

In the case of media that consists of audio only, requires the disclaimer to be read in a manner that can be easily heard by the average listener at both the beginning and the end of the audio. For audio that is longer than two minutes, the disclaimer must also be included during the audio at intervals of not more than two minutes each.

Permits a recipient of a materially deceptive and digitally altered or digitally created image or audio or video file distributed in violation of this bill, a candidate or committee participating in the election, or an officer holding an election or conducting a canvass, to seek the following relief:

Injunctive or other equitable relief prohibiting the distribution of the materially deceptive file. Requires the court in this case to award a prevailing plaintiff reasonable attorney's fees and costs. Provides that such an action is entitled to precedence in court, as specified.

General or special damages against the person, committee, or other entity that distributed that materially deceptive file. Requires the court to award attorney's fees and costs to a prevailing party in such an action.

Provides that in any civil action brought under this bill, the plaintiff bears the burden of establishing the violation through clear and convincing evidence.

Provides that this bill does not apply to any of the following:

A radio or television broadcasting station, as specified, when it broadcasts materially deceptive and digitally altered or created content as part of a bona fide news coverage if the broadcast clearly acknowledges that the audio or visual media does not accurately represent any actual event, occurrence, appearance, speech, or expressive conduct.

A regularly published newspaper, magazine, or other periodical of general circulation,

including an internet or electronic publication, that routinely carries news and commentary of general interest, and that publishes materially deceptive and digitally altered or digitally created content if the publication clearly states that the materially deceptive file does not accurately represent any actual event, occurrence, appearance, speech, or expressive conduct.

Materially deceptive audio or visual media that constitutes satire or parody.

Defines the following terms, for the purposes of this bill:

"Advertisement" to mean any general or public communication that is authorized or paid for the purpose of supporting or opposing a candidate for elective office or a ballot measure and that is broadcast by or through television, radio, telephone, or text, or disseminated by print media, including billboards, video billboards or screens, and other similar types of advertising.

"Election communication" to mean any general or public communication not covered under "advertisement" that is broadcast by or through television, radio, telephone, or text, or disseminated by print media, including billboards, video billboards or screens, and other similar types of communications, that concerns any of the following:

A candidate for office or ballot measure.

Voting or refraining from voting in an election.

The canvass of the vote.

"Materially deceptive and digitally modified or created image or audio or video file" to mean an image or audio or video file that has been intentionally manipulated in a manner such that all of the following conditions are met:

The file is the product of digital manipulation, artificial intelligence (AI), or machine learning, including deep learning techniques, that merges, combines, replaces, or superimposes content onto an image or an audio or video file, creating an image or an audio or video file that appears authentic, or generates an inauthentic image or an audio or video file that appears authentic.

The file represents a false portrayal of a candidate for elective office, an elected official, an elections official, or a voting machine, ballot, voting site, or other elections property or equipment. Provides that "a false portrayal of the candidate for elective office, an elected official, an elections official, or a voting machine, ballot, voting site, or other elections property or equipment" means the file would cause a reasonable person to have a fundamentally different understanding or impression of the expressive content of the file than if the person were hearing or seeing the unaltered, original version of the file.

The person, committee, or other entity distributed the file knowing the portrayal of the candidate, elected official, elections official, or elections materials, property, or equipment was false or with a reckless disregard for the true portrayal of the candidate, the elected official, the elections official, or the elections materials, property, or equipment. Provides that this

provision is presumed when a file has been intentionally manipulated to represent a false portrayal, but may be rebutted.

Provides that a file that contains only minor modifications that do not lead to significant changes to the perceived contents or meaning of the content is not a "materially deceptive and digitally modified or created image or audio or video file" for the purposes of this bill, as specified.

Contains various findings and declarations and contains a severability clause.

**EXISTING STATE LAW**:

Prohibits a person, committee, or other entity, until January 1, 2027, from distributing with actual malice, within 60 days of an election at which a candidate for elective office will appear on the ballot, materially deceptive audio or visual media of a candidate with the intent to injure the candidate's reputation or to deceive a voter into voting for or against the candidate.

Defines "materially deceptive audio or visual media," for these purposes, as an image or an audio or visual recording of a candidate's appearance, speech or conduct that has been intentionally manipulated in a manner that both of the following are true about the image or audio or video recording:

It would falsely appear to a reasonable person to be authentic; and,

It would cause a reasonable person to have a fundamentally different understanding or impression of the expressive content of the image or audio or video recording than the person would have if the person were hearing or seeing the unaltered, original version of the image or audio or video recording.

Provides that this prohibition does not apply if the audio or visual media includes a disclaimer stating "This (image/video/audio) has been manipulated," and the disclaimer complies with specified requirements.

Permits a candidate whose voice or likeness appears in deceptive audio or visual media distributed in violation of this provision to seek the following relief:

Injunctive or other equitable relief prohibiting the distribution of the materially deceptive audio or visual media in violation of this bill. Provides that such an action is entitled to precedence in court, as specified.

General or special damages against the person, committee, or other entity that distributed that audio or visual media. Permits the court to award reasonable attorney's fees and costs to a prevailing party in such an action.

Provides that in any civil action brought pursuant to these provisions, the plaintiff bears the burden of establishing the violation through clear and convincing evidence.

Provides that this prohibition shall not be construed to alter or negate any rights, obligations, or immunities of an interactive service provider under Section 230 of the federal Communications Decency Act.

Provides that this prohibition does not apply to any of the following:

A radio or television broadcasting station, as specified, in either of the following circumstances:

When it broadcasts materially deceptive audio or visual media as part of a bona fide newscast, news interview, news documentary, or on-the-spot coverage of bona fide news events, if the broadcast clearly acknowledges through content or disclosure that there are questions about the authenticity of the audio or visual media, as specified.

When it is paid to broadcast materially deceptive audio or visual media.

An internet website, or a regularly published newspaper, magazine, or other periodical of general circulation, including an internet or electronic publication, that routinely carries news and commentary of general interest, and that publishes materially deceptive audio or visual media covered by this prohibition, if the publication clearly states that the media does not accurately represent the speech or conduct of the candidate.

Materially deceptive audio or visual media that constitute satire or parody. (Elections Code §20010, as amended by Section 3 of Chapter 745 of the Statutes of 2022)

Prohibits a person, firm, association, corporation, campaign committee, or organization, beginning January 1, 2027, with actual malice, from producing, distributing, publishing, or broadcasting campaign material, as defined, that contains either of the following types of pictures or photographs, as specified, unless the campaign material includes a disclaimer that the picture is not an accurate representation of fact:

A picture or photograph of a person or persons into which the image of a candidate for public office is superimposed.

A picture or photograph of a candidate for public office into which the image of another person or persons is superimposed. (Elections Code §20010, as amended by Section 4 of Chapter 745 of the Statutes of 2022)

**EXISTING FEDERAL LAW** provides, pursuant to Section 230 of the federal Communications Decency Act, that no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. (47 U.S.C. §230)

**FISCAL EFFECT**: None. This bill is keyed non-fiscal by the Legislative Counsel.

**COMMENTS**:

**Author's Amendments**: After the committee's deadline for pre-committee author's amendments, the author proposed the following minor and technical amendments to this bill: Add the following to the findings and declarations included in the bill:

The labeling information required by this bill is narrowly tailored to provide consumers with factual information about the inauthenticity of particular images, audio, video, or text content in order to prevent consumer deception.

Amend the language on page 3, lines 19-25 of the bill, to make technical corrections:

(b) (1) A person, committee, or other entity shall not, during the time period set forth in subdivision (c), with the intent to influence an election or solicit funds for a candidate or campaign, knowingly distribute an advertisement or other election communication containing **a** materially deceptive and digitally altered or digitally created ~~images~~ **image** or audio or video files of any the following:

Amend the language on page 4, lines 25-27 as follows to correct a drafting error:

(2) For ~~elections officials~~ **people** and items set forth in subparagraphs (B) and ~~(C)~~ **(D)** of paragraph (1) of subdivision (b), 120 days before any election through 60 days after the election, inclusive.

Amend the language to add "an officer holding an election or conducting a canvass" to the list of entities that can bring an action to enforce this bill.

This analysis reflects those proposed author's amendments.

**Purpose of the Bill**: According to the author:

Those trying to influence elections—conspiracy theorists, foreign states, online trolls, and even campaigns themselves—have already started creating and distributing deepfake images, audio, and video content, in the United States and around the world. This generative AI-fueled disinformation can affect voter behavior and undermine faith in our elections.

Entering the 2024 election, millions of voters will not know what images, audio, or video they can trust, and their faith in election integrity and our democracy will be significantly diminished. AB 2839 will protect our democracy by limiting the spread of harmful disinformation and deepfakes used in political campaign ads including mailers, television,

radio, and robocalls.

**Threats of Manipulated Media in Campaign Communications**: The use of false and deceptive information in campaigns to influence election outcomes is not a new phenomenon. Laws aimed at curbing such practices and preserving the integrity of elections have a long history in California. In 1850, the First Session of the California State Legislature created penalties for election misconduct, including for "deceiving [an elector] and causing him to vote for a different person for any office than such elector desired or intended to vote for" (Chapter 38, Statutes of 1850). California law today includes various provisions criminalizing deceptive tactics that undermine election integrity or interfere with voters' ability to participate in elections. This includes laws that prohibit distribution of false and misleading information about qualifications to vote or about the days, dates, times, and places where voting may occur (Elections Code §18302); prohibit the misleading use of government seals in campaign literature (Elections Code §18304); and prohibit coercing or deceiving people into voting in a way that was inconsistent with the person's intent (Elections Code §§18573, 18573.5).

Advancements in technology have made it increasingly simple to produce false and misleading media that closely resembles authentic content. Moreover, platforms like social media have facilitated the rapid dissemination of deceptive media to large audiences at minimal cost. Given these developments, the potential threat posed by manipulated media to future elections' integrity may be more significant than in the past.

As described in greater detail below, past legislative efforts have addressed concerns about manipulated media's use to deceive voters during elections. Those laws, however, are limited, and are designed primarily to target the harms to *candidates* that may result from the distribution of manipulated media of those candidates. In contrast, this bill aims to regulate materially deceptive and digitally altered media depicting not only candidates, but also elections officials and elected officials who are not candidates. Additionally, this bill targets media that portrays elections materials and equipment in materially deceptive ways. The author and supporters of this bill believe that these provisions will safeguard voters against deceitful media that could undermine trust in the electoral process.

**Recent Examples of Materially Deceptive Campaign Communications**: As evidence of the need for this bill, the author points to the following incidents, as reported in the media:

Elections in Bangladesh were recently plagued by a number of deepfake videos promoting disinformation and intended to influence the election results.

During elections in Slovakia, deepfake audio was released of a conversation discussing how to

rig the election. Due to a media blackout and social media policies, debunking the audio proved difficult.

A political action committee in support of candidate Ron DeSantis released a political advertisement with a deepfake of former President Donald Trump, and DeSantis' campaign released an advertisement featuring AI generated images of former President Trump and Dr. Anthony Fauci. Neither included disclaimers that they were manipulated content.

In New Hampshire's 2024 Presidential Primary, an AI generated deepfake audio of President Biden was used as part of a robocall to dissuade voters from voting in the primary.

**Previous Legislation Related to Materially Deceptive Media in Campaigns**: In 2019, in response to concerns that deepfake technology could be used to spread misinformation in political campaigns, the Legislature approved and Governor Newsom signed AB 730 (Berman), Chapter 493, Statutes of 2019. Deepfake technology refers to software capable of producing a realistic looking video of someone saying or doing something that they did not, in fact, say or do. This technology has advanced rapidly in recent years thanks to the use of AI to help train the software.

AB 730 prohibits the distribution of materially deceptive audio or visual media with actual malice with the intent to injure a candidate's reputation or to deceive a voter into voting for or against a candidate, unless the materially deceptive audio or visual media includes a disclaimer that it has been manipulated. AB 730 does not apply exclusively to deepfakes, but rather applies to any intentional manipulation of audio or visual images that results in a version that a reasonable observer would believe to be authentic. Nonetheless, the increasing availability and advancing capability of deepfake technology was the immediate impetus for that bill.

AB 730 was designed as an update to California's "Truth in Political Advertising Act," a law enacted in 1998 (through the passage of AB 1233 (Leach), Chapter 718, Statutes of 1998) that prohibited campaign material that contains a picture of a person into which a candidate's image is superimposed, or contains a picture of a candidate into which another person's image is superimposed, except if a specified disclaimer was included. The Truth in Political Advertising Act was introduced in response to the use of photoshopped pictures in campaign materials, and accordingly was designed to target the manipulation of photographs in campaign materials. In the 20 years following its passage, however, it was never amended to update the law to address more modern techniques of manipulating campaign materials in a

manner that can mislead voters. AB 730 replaced the Truth in Political Advertising Act with a law that regulates not only altered photographs in campaign materials, but also audio and video media that have been altered in a materially deceptive manner.

AB 730 included a January 1, 2023 sunset date. In 2022, however, the Legislature approved AB 972 (Berman), Chapter 745, Statutes of 2022, which extended the sunset date to January 1, 2027. AB 972 did not otherwise change the provisions of AB 730. If the current January 1, 2027 sunset date is not repealed or extended, the original Truth in Political Advertising Act as enacted by AB 1233 of 1998 would go back into effect.

Because the impetus for AB 730 was concern about the potential that people might create deepfake media appearing to be accurate representations of the conduct of candidates for office, its provisions apply exclusively to images or audio or video recordings of a candidate's appearance, speech, or conduct. Relatedly, candidates for elective office who are the target of materially deceptive media are the only entities that can seek injunctive relief or damages under AB 730. Materially deceptive images, audio, or video that appear in campaign communications are not covered by AB 730 if that media is not of a candidate. For instance, if a candidate digitally manipulated video or a photo of a campaign rally to make the crowd look significantly larger than it actually was, such manipulation would not be covered by AB 730 as long as the manipulated image or video was not materially deceptive about a candidate's appearance, speech, or conduct. Similarly, manipulated and materially deceptive content in advertisements related to ballot measures, or in communications that seek to undermine confidence in the electoral process but that do not mention candidates directly, generally would not be covered by AB 730.

**Free Speech Considerations**: The First Amendment to the United States (US) Constitution, which also applies to states under the Fourteenth Amendment, provides in relevant part "Congress shall make no law…abridging the freedom of speech…" Similarly, Section 2 of Article I of the California Constitution provides in relevant part "Every person may freely speak, write, and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

This bill seeks to regulate the distribution of media containing intentionally manipulated images, audio, or video related to candidates, elections officials, elected officials, and election materials and equipment under certain circumstances. A question could be raised about whether this bill is consistent with the right to freedom of speech that is guaranteed by the US

and California constitutions. The US Supreme Court has ruled that even false statements are protected by the First Amendment (*United States v. Alvarez* (2012), 567 U.S. 709). When a law burdens core political speech, the restrictions on speech generally must be "narrowly tailored to serve an overriding state interest," *McIntyre v. Ohio Elections Commission* (1995), 514 US 334.

This bill targets deceptive content that could undermine trust in elections, prevent voters from voting, and distort the electoral process. The US Supreme Court generally has found that the protection of the integrity of elections is an overriding (or compelling) government interest (*Id.* at 349; *Burson v. Freeman* (1992) 504 U.S. 191, 199). A challenge of this bill on First Amendment grounds, then, likely would hinge on whether the court found this bill's provisions to be narrowly tailored.

This bill includes provisions to limit its scope to communications posing the greatest threat to election integrity. It applies only to communications that include media that was intentionally manipulated to be materially deceptive. To be "materially deceptive," a communication would have to "cause a reasonable person to have a fundamentally different understanding or impression of the expressive content" of the media; minor and cosmetic changes alone would not be considered to be materially deceptive. Furthermore, liability under this bill requires knowledge of the media's false portrayal of a candidate, elections official, elected official, or elections materials or equipment, or action with reckless disregard for the true portrayal of the candidate, official, or materials or equipment. Moreover, this bill applies only to communications intended "to influence an election or solicit funds for a candidate or campaign."

This bill's application is restricted to deceptive portrayals of candidates or elections officials in the 120 days before an election to target periods where a deceptive communication would be more likely to harm election integrity. (For communications that include deceptive portrayals of elections officials or election materials and equipment, the bill additionally applies in the 60 days after the election. This post-election period is intended to protect against deceptive communications that could undermine confidence in the integrity of recently-conducted elections during the period when election results are being finalized and newly-elected officials are taking office.) Finally, relief under this bill requires the plaintiff to establish a violation through clear and convincing evidence.

Whether these limitations adequately protect this bill from a potential constitutional challenge

is a question that falls more squarely within the jurisdiction of the Assembly Judiciary Committee, where this bill will be heard next if it is approved by this committee. However, while these limitations may help protect the bill against a constitutional challenge, they may also make it harder for the bill to achieve its aims of limiting the spread of materially deceptive communications that have the potential to undermine election integrity.

**Digital Alterations Only**: While digital tools may have made it considerably easier and less costly to create and distribute convincingly-realistic but materially deceptive elections-related communications, the harm that this bill presumably seeks to address is the fact that those communications were created or altered to be deceptive, and not the fact that the creation or alteration was done using digital means. To the extent that someone is able to create convincingly-realistic and materially deceptive communications without using digital means, it seems that those communications would pose an equal threat to elections as a communication that was digitally created or altered. The author and the committee may wish to consider whether limiting this bill to *digitally* created or altered media is necessary.

**Arguments in Support**: The sponsor of this bill, the California Initiative for Technology & Democracy, a Project of California Common Cause, writes in support:

Current California law requires disclosure that content has been manipulated for certain deepfakes of a candidate, to better inform voters on the credibility of the content they are consuming. However, this disclosure requirement only applies in a very narrow set of circumstances with a high burden of proof, and only applies to media portraying candidates… [F]or the most pernicious disinformation in our elections, we must do more than require disclosures -- we must prevent it from even entering the information ecosystem to truly protect the integrity of our democracy…

In order to help ensure California elections are free and fair, AB 2839 would prevent the use of the most potentially harmful offline deepfakes close to an election… AB 2839 would address significant deficiencies of current law by removing potential disinformation from the information ecosystem and expanding coverage to additional key election-related subjects beyond just candidates. In short, AB 2839 ensures deepfake-free campaigning close to Election Day, when voter attention is highest.

**Arguments in Opposition**: In opposition to this bill, the Electronic Frontier Foundation writes:

We respectfully oppose your bill A.B. 2839, which not only bans the distribution of materially deceptive or altered content in relation to an election, but also places burdens on those

unconnected to the creation of the content but who distribute it (internet websites, newspapers, etc.) regardless of whether they know of the prohibited manipulation. We recognize the complex issues raised by potentially harmful artificially generated election content. However, this bill's "exceptions" for only some types of republishers, and by requiring them to publish a disclaimer, does not reflect the full First Amendment protection due the republication of speech pertaining to matters of public interest by those not connected with the creation of the offending material.

The First Amendment requires this distinction between those who create synthetic media and those not directly involved in it. The Fourth Circuit relied on this distinction in striking down a Maryland law that extended the reach of campaign finance law to include 'online platforms,' thus imposing disclosure requirements on them when they ran online ads. AB 2389, as written, suffers from the same constitutional defect.

**Related Legislation**: AB 2355 (Wendy Carrillo), which is also being heard in this committee today, requires a political advertisement that is generated in whole or in part using AI to include a disclaimer stating that fact.

AB 2655 (Berman), which is also being heard in this committee today, requires large online platforms to block the posting or sending of materially deceptive and digitally modified or created content related to elections, during specified periods before and after an election.
**Double-Referral**: This bill has been double-referred to the Assembly Judiciary Committee.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California Initiative for Technology & Democracy, a Project of California Common Cause (Sponsor)

Asian Americans Advancing Justice - Asian Law Caucus

Asian Americans and Pacific Islanders for Civic Empowerment

Asian Law Alliance

California Chamber of Commerce (if amended)

California Clean Money Campaign

Campaign Legal Center

Computer and Communications Industry Association (if amended)

Courage California

Disability Rights California

Indivisible CA Statestrong

Inland Empire United

Partnership for the Advancement of New Americans

Software & Information Industry Association (if amended)

TechNet (if amended)

Verified Voting

Voices for Progress Education Fund

**Opposition**

Chamber of Progress (unless amended)

Electronic Frontier Foundation

**Analysis Prepared by**: Ethan Jones / ELECTIONS / (916) 319-2094

# Discussed in Hearing



1MIN

Aug 5, 2024

Senate Standing Committee on Appropriations



8MIN

Jul 2, 2024

Senate Standing Committee on Judiciary



Jun 18, 2024

Senate Standing Committee on Elections and
Constitutional Amendments



May 22, 2024

Assembly Floor

[View Older Hearings](#)





Apr 10, 2024

Assembly Standing Committee on Elections

Assembly Standing Committee on Judiciary

## Bill Co-Author(s):

 **Josh Becker** 

 **Steve Bennett** 

 **Sabrina Cervantes** 

 **Bill Dodd** 

 **Corey Jackson** 

Sharon Quirk-Silva  D

Philip Ting  D

Avelino Valencia  D

Akilah Weber  D

Jim Wood  D

## Journalists backed by artificial intelligence bringing transparency and accountability to California's policy choices.

About Digital Democracy

Data Sources & Methodology

Visit CalMatters

## Support this nonprofit initiative

Digital Democracy informs Californians, holds officials accountable, and builds a stronger community. Brought to you by the 501(c)(3) nonprofit and nonpartisan CalMatters newsroom.

Support Our Work

## Sign up for news and updates

Receive updates about Digital Democracy and CalMatters' daily newsletter that brings transparency to state government.

| Email | Sign Up |

By signing up, you agree to the terms.



Copyright © 2024 CalMatters

Terms & Conditions    Privacy Policy