Theodore H. Frank (SBN 196332)
        Email: ted.frank@hlli.org
Adam E. Schulman (*pro hac vice* pending)
        Email: adam.schulman@hlli.org
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848

*Attorneys for Plaintiff Christopher Kohls*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| CHRISTOPHER KOHLS, | No. 24-cv-02527-JAM-CKD |
| *Plaintiff*, | **MEMORANDRUM IN SUPPORT OF** |
| | **PLAINTIFF'S MOTION FOR A** |
| *v.* | **PRELIMINARY INJUNCTION** |
| | |
| ROB BONTA, in his official capacity as | DATE: September 30, 2024 |
| Attorney General of the State of California, | TIME:  TBD |
| and SHIRLEY N. WEBER, in her official | JUDGE: Hon. John A. Mendez |
| capacity as California Secretary of State, | |
| | |
| *Defendants.* | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 4

LEGAL STANDARD ................................................................................................................ 8

I.    Kohls has Article III standing to bring a suit to enjoin AB 2839 ...................................... 9

II.   Kohls is very likely to win his constitutional claims that AB 2839 violates the First
      and Fourteenth Amendments and the California Constitution's analogous free
      speech protections. ......................................................................................................... 11

      A.    The State has no interest in preventing AI-generated political content about
            politicians or elections. ......................................................................................... 12

      B.    AB 2839 is an unconstitutional content-based regulation. ................................... 14

      C.    AB 2839's failure to define its material terms makes the law unconstitutionally
            vague. ..................................................................................................................... 15

      D.    AB 2839's onerous "labeling" requirement for parody compels speech in
            violation of the First Amendment. ........................................................................ 18

      E.    AB 2839 unconstitutionally discriminates based on speaker ............................... 20

III.  Plaintiff is irreparably harmed by AB 2839. ................................................................. 21

IV.   The public interest and the balance of the equities weigh in favor of granting a
      preliminary injunction. .................................................................................................. 22

V.    Kohls should not be required to post a Rule 65(c) bond. ............................................... 23

# TABLE OF AUTHORITIES

## Cases

*281 Care Committee v. Arneson*,
    766 F.3d 774 (8th Cir. 2014) ................................................................. 13, 20

*ACLU of Nev. v. Heller.*,
    378 F.3d 979 (9th Cir. 2004) ................................................................. 10, 11

*Am. Bev. Ass'n v. City & Cty. of San Francisco*,
    916 F.3d 749 (9th Cir. 2019) ............................................................. 9, 19, 21

*Babbitt v. Farm Workers*,
    442 U.S. 289 (9th Cir. 2004) ...................................................................... 10

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) .................................................................... 23

*Boyer v. City of Simi Valley*,
    978 F.3d 618 (9th Cir. 2020) ................................................................. 14, 20

*Butcher v. Knudsen*,
    38 F.4th 1163 (9th Cir. 2022) .................................................................... 16

*Commonwealth v. Lucas*,
    34 N.E.3d 1242 (Mass. 2015) ............................................................... 13, 20

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) .................................................................................. 13

*Cuviello v. City of Vallejo*,
    944 F.3d 816 (9th Cir. 2019) ................................................................. 21, 22

*FEC v. Ted Cruz for Senate*,
    596 U.S. 289 (2022) ............................................................................. 12, 13

*Firearms Policy Coalition Second Amendment Defense Comm. v. Harris*,
    192 F. Supp. 3d 1120 (E.D. Cal. 2016) .................................................. 10, 11

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991) ................................................................................ 16

*Grimmett v. Freeman,*
  59 F.4th 689 (4th Cir. 2023) ...............................................................15

*Hoffman Estates v. Flipside, Hoffman Estates,*
  455 U.S. 489 (1982)............................................................................15

*IMDB.com, Inc. v. Becerra,*
  962 F.3d 1111 (2020) .........................................................................13

*Isaacson v. Mayes,*
  84 F.4th 1089 (9th Cir. 2023). ...........................................................11

*Jorgensen v. Cassiday,*
  320 F.3d 906 (9th Cir. 2003)...............................................................23

*Klein v. City of San Clemente,*
  584 F.3d 1196 (9th Cir. 2009).................................................... 21, 22

*Kolender v. Lawson,*
  461 U.S. 352 (1983).............................................................................17

*McCullen v. Coakley,*
  573 U.S. 464 (2014).............................................................................14

*McDonald v. Lawson,*
  94 F.4th 864 (9th Cir. 2024) ........................................................... 1-2

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012)...............................................................22

*Minn. Voters All. v. Mansky,*
  585 U.S. 1 (2018).................................................................................17

*Nat'l Inst. Of Family & Life Advocates v. Becerra (NIFLA),*
  138 S. Ct. 2361 (2018) ..........................................................18-19, 20, 22

*Nebraska Press Ass'n v. Stuart,*
  423 U.S. 1327 (1975) ..........................................................................21

*NRA v. Am. v City of Los Angeles,*
  441 F. Supp. 3d 915 (C.D. Cal. 2019)..................................................9

*People ex rel. van de Kamp v. Tahoe Reg'l Plan*,
  766 F.2d 1319 (9th Cir. 1985)............................................................................23

*Progressive Democrats for Soc. Justice v. Bonta*,
  73 F.4th 1118 (9th Cir. 2023) ............................................................................12

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015).................................................................................. 14, 15

*Sammartano v. First Jud. District Court*,
  303 F.3d 959 (9th Cir. 2002)..............................................................................22

*Smith v. Board of Election Comm'rs*,
  591 F. Supp. 70 (N.D. Ill. 1984).........................................................................23

*Speech First v. Fenves*,
  979 F.3d 319 (5th Cir. 2020)..............................................................................10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...........................................................................9-10, 11

*Susan B. Anthony List v. Driehaus*,
  814 F.3d 466 (6th Cir. 2016)..............................................................................13

*Texans for Free Enter. v. Tex Ethics Comm'n.*,
  732 F.3d 535 (5th Cir. 2013)..............................................................................12

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ............................................................................10

*Thalheimer v. City of San Diego*,
  645 F.3d 1109 (9th Cir. 2011)..............................................................................9

*United States v. Alvarez*,
  567 U.S. 709 (2012)...........................................................................2, 13, 19, 22

*United States v. State of Oregon*,
  675 F. Supp. 1249 (D. Or. 1987).........................................................................23

*United States v. Stevens*,
  559 U.S. 460 (2010)............................................................................................19

*Victory Processing, LLC v. Fox*,
    937 F.3d 1218 (9th Cir. 2019) ............................................................................15

*Vitagliano v. Cnty. of Westchester*,
    71 F.4th 130 (2d Cir. 2023) ...............................................................................10

*Weaver v. Bonner*,
    309 F.3d 1312 (11th Cir. 2002) .................................................................. 13-14

*Whitney v. Calirornia*,
    274 U.S. 357 (1927) ....................................................................... 12-13, 22-23

*Wis. Right to Life, Inc. v. Barland*,
    751 F.3d 804 (7th Cir. 2014) ....................................................................... 15-16

*X. Corp. v. Bonta*,
    __F.4th__, 2024 U.S. App. LEXIS 22456 (9th Cir. Sept. 5, 2024) ............1, 2, 13, 14, 19

*Zarate v. Younglove*,
    86 F.R.D. 80 (C.D. Cal. 1980) ...........................................................................19

**<u>Rules, Statutes, and Constitutional Provisions</u>**

Assembly Bill 2655 ...............................................................................................3

Assembly Bill 2839 ......................................................................................*passim*

Cal. Elec. Code § 20012 .......................................................................................3

Cal. Elec. Code § 20012(a)(4) ....................................................................... 7-8, 12

Cal. Elec. Code § 20012(b) .................................................................................14

Cal. Elec. Code § 20012(b)(1) .............................................................................18

Cal. Elec. Code § 20012(b)(1)(A) ..........................................................................8

Cal. Elec. Code § 20012(b)(2) ....................................................................... 12, 20

Cal. Elec. Code § 20012(b)(2)(B)(i) .....................................................................18

Cal. Elec. Code § 20012(b)(3) ........................................................................3, 18

Cal. Elec. Code § 20012(b)(4)(A)....................................................................18

Cal. Elec. Code § 20012(c)(3)...........................................................................8

Cal. Elec. Code § 20012(d).............................................................................17

Cal. Elec. Code § 20519..................................................................................3

Fed. R. Civ. P. 65...........................................................................................23

U.S. Const., Amend. I...............................................................................*passim*

U.S. Const., Amend. XIV........................................................................... 15-18

U.S. Const., Art. III.................................................................................. 10-11

### Other Authorities

11A Wright & Miller,
    FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. Apr. 2020 update).................21

11A Wright & Miller,
    FEDERAL PRACTICE AND PROCEDURE § 2954 (3d ed. Apr. 2020 update)....................23

Bauder, David
    *They look life— and link to — real news articles. But they're actually ads from the*
    *Harris campaign,*
    ASSOCIATED PRESS (Aug. 16, 2024), https://tinyurl.com/4kpx3erk.............................16

Davis, Susan & Ben Giles,
    *Harris says, as a former prosecutor, 'I know Donald Trump's type'*,
    NPR (Jul. 22, 2024), https://www.npr.org/2024/07/22/g-s1-
    12690/democrats-rally-behind-vice-president-harris.............................................6

DiFeliciantonio, Chase & Sophia Bollag
    *In Dreamforce 'stunt,' Nesom signs AI bills to rein in election misinformation,*
    SAN FRANCISCO CHRONICLE (Sept. 17, 2024)......................................................7

*Remarks by Vice Preisdent Harris After Tour of the Korean Demilitarized Zone*
    THE WHITE HOUSE (Sept. 29, 2022) ...................................................................6

Scalia, Antonin
    *The Doctrine of Standing as an Essential Element of the Separation of Powers*,
    17 SUFFOLK U. L. REV. 881 (1983) ....................................................................10

Volokh, Eugene,
    *When are Lies Constitutionally Protected*,
    4 J. FREE SPEECH L. 685 (2024) ........................................................................2

Zewe, Adam,
    *Explained: Generative AI*,
    MIT NEWS (Nov. 9, 2023), https://news.mit.edu/2023/explained-generative-ai-1109 ........................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The American people have been making fun of politicians—using hyperbole, mockery, gesticulation, and satire, amongst other means—since before this country was founded.

In modern America, Plaintiff Christopher Kohls has found fame and steady income creating videos from real clips and generative artificial intelligence (AI)[1] that pokes fun at politicians he opposes politically, including Vice President Kamala Harris, the Democratic nominee for President. Kohls posts these videos to his accounts on YouTube and X (commonly known as Twitter), where viewers can watch satire of "Harris" announcing outrageous policies and arguments for her candidacy (in an AI-generated voice) in the aesthetic of a political campaign ad. California Governor Gavin Newsom and the California Legislature won't allow Plaintiff's burlesque: The Governor replied to Kohls's first Harris video on X with his own tweet, where he promised to sign a then-pending law that would make Kohls's content illegal. Then, the Legislature passed that legislation in mere weeks—with urgency, meaning it's enforceable today—doing just that. The full force of state power has been enlisted to take down harmless and constitutionally-protected parody.

More broadly, for the past few years California's legislature has embarked on an unrelenting quest to combat "misinformation" by imposing content-based regulations of private speech. *See, e.g., X Corp. v. Bonta*, __F.4th__, 2024 U.S. App. LEXIS 22456 (9th Cir. Sept. 5, 2024) (holding unconstitutional a social media mandatory reporting law intended, among other things, to combat misinformation and disinformation); *McDonald v. Lawson*, 94 F.4th 864 (9th Cir. 2024) (holding moot challenge to COVID misinformation statute when

---

[1] "Generative AI can be thought of as a machine-learning model that is trained to create new data, rather than making a prediction about a specific dataset. A generative AI system is one that learns to generate more objects that look like the data it was trained on." Adam Zewe, *Explained: Generative AI*, MIT News (Nov. 9, 2023), https://news.mit.edu/2023/explained-generative-ai-1109. For example, a Generative AI trained on the voice of a person can be used to create new audio that resembles the voice of that person, as Kohls did.

California repealed it after unfavorable oral argument). The California legislature should stop immediately because it does not possess "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *X Corp.*, 2024 U.S. App. LEXIS 22456, at *20 (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). And the Supreme Court has clarified that misinformation is fully protected speech unless it causes a "legally cognizable harm" to the interests of another. *United States v. Alvarez*, 567 U.S. 709, 719 (2012); *see generally* Eugene Volokh, *When are Lies Constitutionally Protected*, 4 J. FREE SPEECH L. 685 (2024).[2] But for now, California continues its crusade.

AB 2839 is the result, a patently unconstitutional law which allows any political candidate, election official, the Secretary of State, and *everyone who sees* Kohls's AI-generated videos to sue him for damages and injunctive relief starting 120 days before an election, until 60 days *after* an election. While the bill's sponsor pretended that the bill was "narrowly tailored," the First Amendment does not take a vacation for five months every year.

Liability under AB 2839 extends to satire and parody like Kohl's July 26 video, where an AI voiceover for "Harris" calls herself a "diversity hire" who follows "rule number one: carefully hide your total incompetence." Complaint ¶ 33. Confronting the lampooning video, Gov. Gavin Newsom responded that "[m]anipulating voice in an 'ad' like this one should be illegal. I'll be signing a bill in a matter of weeks to make sure it is." *Id.* at ¶ 35. True to his word, Newsom collaborated with the bill's sponsors to excise the bill's carveout of parody and satire, which originally read: "This section does not apply to materially deceptive content that constitutes satire or parody." *Id.* at ¶¶ 79-80.[3] Instead, of exempting parody, AB 2839 merely provides a safe harbor for videos that satisfy restrictive labeling requirements.

---

[2] *Available at:* https://www.journaloffreespeechlaw.org/volokh5.pdf

[3] A similar carveout still exists in AB 2839's companion bill, AB 2655, which does not become effective until January 1, 2025, and is not the subject of this memorandum. The carveout (part of Cal. Elec. Code § 20519) provides no defense against causes of action under AB 2839, which may be brought by defendant Weber, any candidate or even any *recipient* of political satire, codified at Cal. Elec. Code § 20012. Moreover, the carveout in AB 2655 is also inadequate because it imposes liability on platforms that do not swiftly respond to removal

Kohls uploaded his video under the title "Kamala Harris Campaign Ad PARODY," but this does not satisfy AB 2839's labeling safe harbor, which requires a specific message that runs the *entire duration* of the video in a typeface no smaller than the largest text visible in the video. His video, dozens of others on his channel, and likely countless thousands of other videos, memes, and graphics online, became actionable upon the governors' signature yesterday. Even if Plaintiff wished to comply with the onerous labelling requirement—which he does not— and even if he were willing to upload new labeled version of the video (which reduces his reach on platforms like YouTube), the required disclaimer literally could not fit on the video because the text would greatly exceed the space available on the screen. This is because the video includes prominent text to assist viewers watching it from a cellphone and it also includes a Kamala Harris logo at the end, and inclusion of large text makes it impossible to fit the required disclosure on the screen at equally-large font size, as the statute requires: "This [video] has been manipulated for purposes of satire or parody." Cal. Elec. Code § 20012(b)(3). AB 2839 therefore permits anyone to file suit against Kohls even though his videos are parody, and are labeled as such. This will harm Kohls in particular, whose videos are already in the cross-hairs for liberal activists thanks to the Governor calling out the video before Newsom's two million X followers—twice!

AB 2839 is also an unconstitutional content regulation, since it seeks to regulate only AI-generated content that is directed at a Presidential or California candidate/election and that is "likely to harm the reputation or electoral prospects" of a candidate or is "likely to falsely undermine confidence in the outcome of" an election. Most importantly, the Government's sole cited interest in passing AB 2839—ensuring "free and fair elections" by preventing AI deepfakes—does not justify, in any form, a government crackdown on political speech.

---

requests, causing them to err on the side of removing potentially satirical content. Plaintiff intends to bring a motion for preliminary injunction of AB 2655 in due course, which will explain the problems of that bill in advance of its January 1 effective date.

As a result of AB 2839, Kohls suffers material harm: He wishes to continue making and distributing AI generated content that mocks Vice President Harris and other politicians with whom he disagrees—perhaps Governor Newsom and Defendants themselves are in the cards for future jokes. As to his current videos of Vice President Harris, it is likely that they may attract an activist lawsuit under the statute—especially given that the Governor has already observed they are unlawful under the Act. The chill on future speech and likely threat to current speech impairs his ability to earn an income, which he does by monetizing viewership of his videos. Moreover, AB 2839 robs Kohls of the ability to spread his political message. This is bread and butter irreparable harm.

In addition, because of the strong public interest and equities that favor protecting constitutional rights, a preliminary injunction is warranted here to preserve the *status quo ante*. Accordingly, this Court should grant Plaintiff's Motion and enjoin AB 2839 for enforcement by Defendant Weber and her office.

## FACTUAL BACKGROUND

Plaintiff Christopher Kohls is a California resident currently traversing the world while living on income from monetizing digital content on his YouTube and X accounts. He posts under the moniker "@MrReaganUSA" on X and "Mr Reagan" on YouTube, a reference to both his own conservative views and the political nature of his content. Part of Kohls's persona as "Mr Reagan" is creating fake political ads that mimic Democratic Party politicians, where—rather than flattering or supportive language—they feature the politician mocking their own candidacies. Kohls creates this content by relying on generative artificial intelligence, a new technological development that exposes high-powered and advanced computer algorithms to swaths of data—as relevant here, sound clips of a particular politician's voice—to produce content that mimics the original speaker.

In late July, Kohls uploaded a video to his X and YouTube pages that featured Vice President and Democratic nominee Kamala Harris's AI-generated voice. "Harris" was featured as saying:

I, Kamala Harris, am your Democrat candidate for president because Joe Biden finally exposed his senility at the debate. Thanks Joe. I was selected because I am the ultimate diversity hire. I'm both a woman and a person of color. So if you criticize anything I say, you're both sexist and racist. I may not know the first thing about running the country, but remember, that's a good thing if you're a deep state puppet. I had four years under the tutelage of the ultimate deep state puppet; a wonderful mentor, Joe Biden. Joe taught me rule number one: carefully hide your total incompetence.

I take insignificant things and I discuss them as if they're significant. And I believe that exploring the significance of the insignificant is itself significant.

The video then features video and audio from a real Harris speech.[4] In the clip Harris says: "Talking about the significance of the passage of time, right? The significance of the passage of time. So when you think about it, there is great significance to the passage of time," the real video cuts here with a "swish" sound effect and concludes: "and there is such great significance to the passage of time." The AI-generated narration then continues:

Another trick is trying to sound black. I pretend to celebrate Kwanzaa, and in my speeches, I always do my best Barack Obama impression.

The video again excerpts a real Harris speech:[5] "So hear me when I say, I now Donald Trump's type." The narration by "Harris" continues:

And okay, look, maybe my work addressing the root causes of the border crisis were catastrophic, but my knowledge of international politics is truly shocking.

---

[4] The clip comes from a speech Harris gave on March 20, 2022 in Sunset, Louisiana concerning rural broadband access. https://www.katc.com/news/st-landry-parish/vice-president-kamala-harris-to-visit-st-landry-parish-monday (last visited August 30, 2024) (remarks about the "significance to the passage of time" at 8:32).

[5] Susan Davis, Ben Giles, *Harris says, as a former prosecutor, 'I know Donald Trump's type'*, NPR (Jul. 22, 2024) https://www.npr.org/2024/07/22/g-s1-12690/democrats-rally-behind-vice-president-harris (last visited August 30, 2024).

1   Again, the video illustrates the fake voiceover with a real speech,[6] where Harris said:

2   "The United States ["swish" cut] shares a very important relationship, which is an alliance with

3   the Republic of North Korea. ["swish" cut] It is an alliance that is strong and enduring." The

4   parody narration in the ad concludes:

5          And just remember, when voting this November, it is important to see
       what can be unburdened by what has been. And by what has been, I mean
6       Joe Biden.

7          You think the country went to [beeped out expletive] over the past four
       years? You ain't seen nothing yet. [Cackles].
8

9   Kohls entitled the ad "Kamala Harris Campaign Ad PARODY." It quickly took off on social

10  media, garnering hundreds of thousands of views. Governor Newsom decided Plaintiff's

11  political message was unacceptable—he replied to the tweet with a tweet of his own, to his

12  more than two million followers on X. That message read, "Manipulating a voice in an 'ad' like

13  this one should be illegal. I'll be signing a bill in a matter of weeks to make sure it is."

14  Complaint ¶¶ 2, 35.

15     The Legislature heard the Governor's message loud and clear, and the result is AB 2839,

16  the statute at issue. In accordance with the Governor's response to Kohls on X, the Legislature

17  shepherded AB 2839—which had been in markup in the Senate—and passed it "with urgency"

18  on August 30. Prior to the vote passing the amended bill, the bill's co-sponsor Rep. Gail

19  Pellerin confirmed Gov. Newsom's direct involvement in amending the bill. She said: "We've

20  worked with the Governor's office on Senate amendments that require deep fake parody

21  material to be labeled as being digitally manipulated for those purposes … Additionally, recent

22  amendments add an urgency clause—that was a great idea—so the bill can take effect before

23

24

25

26     [6] *Remarks by Vice President Harris After Tour of the Korean Demilitarized Zone*, THE WHITE

27  HOUSE (Sept. 29, 2022), https://www.whitehouse.gov/briefing-room/speeches-
   remarks/2022/09/29/remarks-by-vice-president-harris-after-tour-of-the-korean-

28  demilitarized-zone/ (striking through Harris's erroneous mention of "North" Korea).

the November 5, 2024 general election."[7] The amendments deleted the carveout for parody and satire that previously existed and replaced it with the "disclosure" safe harbor that requires "the disclosure shall appear in a size … no smaller than the largest font size of other text appearing in the visual media. … for the duration of the video," and added an urgency clause.[8] "Urgency" means the law went into effect immediately upon Governor Newsom's signature on September 17, when he theatrically signed the bills on stage at the Dreamforce 2024 conference in San Francisco. On stage, Newsom characterized the bills as "surgical" unlike other AI bills that could have a "chilling" effect on the development of AI. Chase DiFeliciantonio, Sophia Bollag, *In Dreamforce 'stunt,' Newsom signs AI bills to rein in election misinformation*, SAN FRANCISCO CHRONICLE (Sept. 17, 2024).[9] Newsom evidently expressed no concern about the laws' chilling effect on *speech*, which is of constitutional importance.

Within hours of the signing, Newsom reposted his earlier tweet targeting Kohls' video, this time declaring, "I just signed a bill to make this illegal in the state of California."[10]

AB 2839 purports to ensure "California elections are free and fair" by "prevent[ing] the use of deepfakes and disinformation meant to prevent voters from voting and to deceive voters based on fraudulent content" "for a limited time before and after elections." Cal. Elec. Code § 20012(a)(4). The touted "limited time" turns out to be *almost all the time* during election years— beginning 120 days before "any election in California" and extending to 60 days afterward, while covering every "candidate for any federal, state, or local elected office in California," including "any person running for the office of President of the United States or Vice President

---

[7] Remarks in support of Concurrence with Senate Amendments, Aug. 30, 2024, https://www.assembly.ca.gov/media/assembly-floor-session-20240830?time[media-element-3753]=16064.105438.

[8] The relevant Senate amendments can be viewed at legislature.ca.gov: https://leginfo.legislature.ca.gov/faces/billVersionsCompareClient.xhtml?bill_id=202320240AB2839&cversion=20230AB283994AMD.

[9] Available at: https://www.sfchronicle.com/election/article/newsom-signs-new-california-laws-rein-ai-election-19771932.php [archive.ph/uYbdp].

[10] https://x.com/GavinNewsom/status/1836188721663873324 [archive.ph/uYbdp].

of the United States who seeks to or will appear on a ballot issued in California." *Id.* at (c)(3) & (b)(1)(A). For example, if the bill had been in effect last year, it would have begun prohibiting Plaintiff's video on November 6, 2023 (120 days before California's presidential primary, where Kamala Harris appeared on the ballot as Vice Presidential nominee), continued through May 4, then picked up again on July 8, 2024 and running through January 4, 2025—which is 60 days after the Presidential election. Thus, out of the 425 days between these dates, AB 2836 only permits videos like Kohls's between May 5 and July 7—just 64 days in 2024!

Kohls intends to keep posting similar AI-generated content that makes fun of Vice President Harris's campaign and other political officials.[11] AB 2839 attempts to deter Kohls from making the videos he wants through the imposition of monetary liability and because the terms of service for his accounts with YouTube and X require that he post lawful content. As to Kohls's current material, Governor Newsom has twice targeted it as illegal under AB 2839. For this reason, left-leaning activists or state elections officials will likely challenge the content through the new cause of action furnished by AB 2839, thanks to the Governor's amplification. Finally, as to both Kohls's current and future postings implicated by the Act, Kohls is at serious risk of losing a source of his livelihood—if these posts are removed from his account, he loses out on monetization from engagement with these videos and his account. He is also precluded from sharing the political speech and thoughts that he wants to express on his social media accounts.

## LEGAL STANDARD

Four factors determine whether a court should issue a preliminary injunction: (1) whether the plaintiff is likely to succeed in the litigation; (2) whether the plaintiff will suffer irreparable harm absent the injunction; (3) the balance of equities; and (4) the public interest. *Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (*en banc*). In the context of a First Amendment claim, the test generally turns on the first factor. Where plaintiffs

---

[11] Kohls posted additional videos poking fun at Vice President Harris in the time period between Newsom's first tweet but before AB 2839 went into effect. Complaint ¶ 15.

"have a colorable First Amendment claim, they have demonstrated that they will suffer irreparable harm if the [law] takes effect." *Id.* at 758. And "the fact that plaintiffs have raised serious First Amendment questions compels a finding that the balance of hardships tips sharply in plaintiffs' favor." *Id.* (cleaned up). Likewise, the Ninth Circuit "has consistently recognized the significant public interest in upholding First Amendment principles." *Id.* (internal quotation omitted). "Indeed, it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotation omitted).

To determine whether a First Amendment plaintiff can demonstrate a likelihood of success, the Ninth Circuit has framed a burden-shifting approach where "the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). "Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings." *NRA of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 926 (C.D. Cal. 2019) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)). For example, a verified complaint like Plaintiff's before the Court, Dkt.1, is evidence that may support injunctive relief. *Thalheimer*, 645 F.3d at 1116.

## I.   Kohls has Article III standing to bring a suit to enjoin AB 2839.

Kohls demonstrates sufficient Article III injury from AB 2839 to adjudicate his claims. "When an individual is subject to [the] threat" of a law's enforcement, an "actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). It "is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *ACLU of Nev. v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004); *see also SBA List*, 573 U.S. at 158; *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). "[I]n the First Amendment

context" courts apply a relaxed standing analysis that "tilt[s] dramatically toward a finding of standing." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (internal quotation omitted); *accord Firearms Policy Coalition Second Amendment Defense Comm. v. Harris*, 192 F. Supp. 3d 1120, 1125 (E.D. Cal. 2016).

Kohls alleges that he wants to keep his current AI-generated Harris ads on his YouTube and X channels, without risking monetary liability. Governor Newsom's two tweets—both before and after the passage of the bill—directly target Kohls's content as illegal under AB 2839 and indicate that Kohls's speech is, in the view of the head executive of the state, more than arguably proscribed. Indeed, it shows that he and other meme creators like him are the "very object" of the regulation, and so have standing to sue to enjoin its enforcement. Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 894 (1983).

Because AB 2839 is new, there is no past enforcement history to carry weight in the "credible threat of enforcement" analysis. *Tingley*, 47 F.3d at 1069 (quoting *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021)). Thus, absent evidence to the contrary, courts will presume that recently enacted legislation will be enforced. *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023); *Speech First v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020). Yet again, the Newsom tweet bolsters the credibility of AB 2839 being used to enjoin and punish Kohls's constitutionally protected political speech. *See Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (noting among other factors, "whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings'") (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (*en banc*)); *see also SBA List*, 573 U.S. at 159 (giving such an example). Governor Newsom appointed Defendant Weber as California Secretary of State in December 2020, and AB 2839 authorizes her and other California elections officials to sue for damages and injunctive relief. AB 2839 also empowers an online army of volunteer commissars (Governor Newsom's X followers) to sue Kohls for his speech, bolstering the threat from the statute. *ACLU of Nev.*, 378 F.3d at 984; *SBA List*, 573 U.S. at 164.

Independently, AB 2839 objectively chills Kohls and other speakers from making other AI-generated political content that they'd like to. AB 2839 threatens the direct imposition of monetary liability, but also puts Kohls's content in breach of YouTube and X's terms of service, thus risking sanctions or removal from platforms. "Where a plaintiff alleges that he or she engaged in self-censorship as a result of a speech-restricting statute," that alone sustains "the requisite level of injury necessary to confer standing." *Firearms Policy Coalition*, 192 F. Supp. 3d at 1125 (citing *Az. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006–07 (9th Cir. 2003)). In addition to creating content, Kohls wishes to view political commentary that uses AI-deepfake technology but AB 2839 chills others from creating and posting it. Thus, Plaintiff has two independent Article III injuries to bring his claim.

The safe harbor label for satire and parody does not remedy Kohls's injury. Indeed, it compounds the First Amendment harm by compelling Kohls's speech and materially altering his underlying message by restricting his intended speech. *See* Complaint ¶ 98.

## II. Kohls is very likely to win his constitutional claims that AB 2839 violates the First and Fourteenth Amendments and the California Constitution's analogous free speech protections.

For multiple independent reasons, Kohls's constitutional claims are likely to succeed. *First*, the State has no interest in preventing the videos at issue (or any AI-generated content) about elections. *Second*, the Act is unconstitutional because it discriminates against political speech based on content. *Third*, AB 2839 suffers from both overbreadth and vagueness issues which are fatal to regulation of core political speech. *Fourth*, AB 2839's demanding requirements to label AI-generated content over the *entire duration* of a video do not resolve the overbreadth and vagueness of the statute but instead exacerbate it while independently infringing Plaintiffs' First Amendment right against compelled speech. *Fifth*, AB 2839 discriminates based on speakers, by allowing an exception for "candidates portraying themselves as doing or saying something the candidate did not do or say." Cal. Elec. Code § 20012(b)(2).

**A.   The State has no interest in preventing AI-generated political content about politicians or elections.**

The Supreme Court "has recognized only one permissible ground for restriction political speech: the prevention of *'quid pro quo'* corruption or its appearance." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 305 (2022); *accord Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013) (discussing *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 365 (2010)). It has "consistently rejected attempts to restrict campaign speech based on other legislative aims" because, "[h]owever well intentioned," they would "tamper with the right of citizens to choose who shall govern them." *FEC v. Cruz*, 596 U.S. at 305–06 (internal quotation omitted); *accord Progressive Democrats for Soc. Justice v. Bonta*, 73 F.4th 1118, 1133 (9th Cir. 2023) (Ikuta, J., concurring in the result). But as AB 2839 announces, it is intended to ensure "California elections are free and fair" by "prevent[ing] the use of deepfakes and disinformation meant to prevent voters from voting and to deceive voters based on fraudulent content" "for a limited time before and after elections." Cal. Gov. Code § 20012(a)(4). Thus, it targets political speech—but noticeably *not* for the purposes of "avoiding corruption or the appearance thereof." *Texans for Free Enter.*, 732 F.3d at 537. However noble a cause, the State cannot justify regulating or protecting truth—this is a timeless constitutional principle. *See Whitney v. California*, 274 U.S. 357, 377 (1927) ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence"); *United States v. Alvarez*, 567 U.S. 709 (2012). Because AB 2839 regulates political speech but not for avoiding corruption, it is unconstitutional.

This is not to say that states have no valid interest in protecting the integrity and reliability of the electoral process. They do. *See, e.g., Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 204 (2008). It *is* to say that this generally valid interest in "free and fair elections" has no application to political speech that does not affect the mechanics of the election. *See, e.g., FEC v. Cruz*. In other words, AB 2839 has no tailoring to its stated interest, let alone the narrow tailoring and least restrictive alternative that a content-based law requires under "demanding"

strict scrutiny. *X Corp. v. Bonta*, 2024 U.S. App. LEXIS 22456, at *26; *see also IMDB.com, Inc. v. Becerra*, 962 F.3d 1111, 1125–27 (9th Cir. 2020).

For example, on remand in *SBA List*, the Sixth Circuit held that Ohio's law against false political statements could not survive strict scrutiny. 814 F.3d 466, 473–76 (6th Cir. 2016). Although the court recognized that the general interest in election integrity is compelling, Ohio's law against speech was not narrowly tailored to that interest; "courts have consistently erred on the side of permitting more political speech than less." *Id.* at 476. So too in *281 Care Committee v. Arneson*, where the Eighth Circuit allowed First Amendment claims to proceed against a Minnesota law that proscribed false electoral speech. 766 F.3d 774 (8th Cir. 2014). "Directly regulating what is said or distributed during an election, as [AB 2839] does, goes beyond an attempt to control the process to enhance the fairness overall so as to carefully protect the right to vote." *Id.* at 787. Even if it served a compelling interest, it was neither necessary to nor the least restrictive means of achieving that interest. *Id.* at 787–96. "Especially as to political speech, counterspeech is the tried and true buffer and elixir," not speech restriction. *Id.* at 793*; accord Commonwealth v. Lucas*, 34 N.E.3d 1242, 1244 n.1, 1252, 1256 (Mass. 2015).

So too in *Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002). There, the Eleventh Circuit invalidated a judicial canon that punished even negligently false speech, which the State of Georgia had justified, in part, on its compelling interest in electoral integrity. *Id.* at 1320. But, again, that stated interest could not justify the canon's "dramatic chilling effect" on political speech. *Id.* And, again, the *Weaver* court noted that counterspeech, not proscription, was the correct solution: "The ability of an opposing candidate to correct negligent misstatements with more speech more than offsets the danger of a misinformed electorate that might result from tolerating negligent misstatements." *Id.*

"Free and fair elections" require "preserv[ing] an uninhibited marketplace of ideas in which truth will ultimately prevail,"[12] not closing it to content that the state deems "materially deceptive." It is exactly *for* the sake of free and fair elections, that we must live with "misinformation" (which is often nothing more than commentary or satire cavalierly branded by self-interested politicians as "misinformation").

### B.   AB 2839 is an unconstitutional content-based regulation.

"Content-based regulations—those that target speech based on its topic, idea, or message—are presumptively invalid." *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th Cir. 2020). A law is content-based if it "draws distinctions based on the message a speaker conveys" through either "subject matter," "function[,] or purpose." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). In other words, if "enforcement authorities [need] to examine the content of the message that is conveyed to determine whether a violation has occurred," then the law is facially content-based and presumptively unconstitutional. *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (internal quotation omitted).

AB 2839 only applies to two specific types of AI-generated content: that which is "likely to harm the reputation or electoral prospects" of a candidate, and that which is "likely to falsely undermine confidence in the outcome of" an election in California. § 20012(b). Furthermore, these depictions only apply to portrayals of candidates or portrayals in connected to an election in California of "elections officials," "elected officials," or a "voting machine, ballot, voting site, or other property or equipment." *Id.* AB 2839 thus targets speech "based on its topic," which is "presumptively invalid" as a content regulation. *Boyer*, 978 F.3d at 621. And illicit AI-generated content must portray the candidate or election official *themselves*; an AI-generated video of Taylor Swift endorsing Donald Trump, for example, does not implicate liability under the law. This type of arbitrary and underinclusive line drawing is plainly unconstitutional. *Grimmett v. Freeman*, 59 F.4th 689, 694–96 (4th Cir. 2023) (following *R.A.V. v. City of St.*

---

[12] *X Corp. v. Bonta*, 2024 U.S. App. LEXIS 22456, at *18 (quoting *McCullen v. Coakley*, 573 U.S. 464, 476 (2014)).

*Paul*, 505 U.S. 377 (1992)). And the content AB2839 targets—political speech—is the *most protected* form of expression under the First Amendment. *See Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1223 (9th Cir. 2019) (laws that single out political speech for disfavored treatment "strike[] at the heart of the First Amendment").

A law is also a "non-neutral" content regulation if it has been "adopted by the government because of disagreement with the message the speech conveys." *Reed*, 576 U.S. at 164 (simplified); *accord Victory Processing*, 937 F.3d at 1226. Precisely this occurred to Kohls. Governor Newsom tweeted that Kohls's AI-generated political content should not be allowed and promised to enact a bill to make it illegal. Within weeks the Legislature followed the Governor's lead and did so; while the bill advanced the Legislature before Newsom's tweet, lawmakers passed it "with urgency" after his public admonishing of Kohls's work to ensure the law took effect upon Newsom's signature. Worse, the bill's sponsors, in cooperation with the governor's office, deleted the exception for parody and satire. The passed version of AB 2839 instead confirms that parody and satire are targetable by the bill and actionable unless plastered with compelled labels no smaller than the largest text visible in the video. Then, after signing the bill, Governor Newsom tweeted again that the bill now makes Kohls' video illegal.

The motivation behind the law as applied to Kohls only further confirms AB 2839 is not content-neutral.

### C.   AB 2839's failure to define its material terms makes the law unconstitutionally vague.

To determine whether a law improperly regulates constitutionally protected conduct, "a court should evaluate the ambiguous as well as the unambiguous scope of the enactment." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n.6 (1982). In the First Amendment context, vagueness and overbreadth often go hand-in-hand. Ordinarily "when a law is facially challenged on [both] grounds, the court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected" speech. *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 835 (7th Cir. 2014) (citing *id.*). Because "political speech is at the core of

the First Amendment right," courts give no benefit of the doubt to the speech implicated by laws like AB 2839. *Id.* at 811.

AB 2839 relies on various subjective terms and awkwardly-phrased *mens rea* to implicate as much political speech as possible.

The law does not explain what might be meant by content that "would falsely appear to a reasonable person to be an authentic record of the content depicted in the media," which is the definition of "materially deceptive content." Does "authentic record" describe the candidate's voice in the ad or the ad itself? Does "falsely appear" mean the video looks or sounds like Kamala Harris (or a Harris ad), but a reasonable person knows it isn't, or does the reasonable person have to be tricked into believing it is a Harris ad? Governor Newsom apparently believes the former, because it's hard to believe Plaintiff's video could be taken as a genuine Harris ad, yet he said it the bill makes it illegal.

Next, consider what AB 2839 means in defining exemptions for "minor [AI-generated] modifications that do not significantly change the perceived contents or meaning of the content." What's a minor versus major modification? What does "not significantly" mean, if it's not surplusage? At what point does a modification "change the perceived [] meaning" of the content? Did Governor Newsom's endorsed candidate for President, Vice President Harris, make a "minor modification" or a "materially deceptive" one when her campaign manipulated media headlines with AI to appear to give her more favorable news coverage in advertisements?[13]

Perhaps the most damning example of vagueness is one of the prerequisites for liability, that AI-generated content be "reasonably likely to harm the reputation or electoral prospects of a candidate." "Reasonably likely" according to whom? A generic Democrat will tell you Trump's call for a border wall harms his electoral prospects; a generic Republican claims the opposite. The same concept applies to Harris's recent "price gouging" proposal, or Trump's

---

[13] David Bauder, *They look like — and link to — real news articles. But they're actually ads from the Harris campaign*, ASSOCIATED PRESS (Aug. 16, 2024) https://tinyurl.com/4kpx3erk.

mass deportations, or Harris's decriminalization of the border, and so on. Plaintiff can invent some hysterical policy examples his fans will find laughable—imagine a video where the voice of "Harris" announces that she will set the minimum wage to $50/hour—but some of Harris's supporters might very well be *more* inclined vote for the AI-generated Harris announcing them.

These are all classic terms of degree term that "vest[] virtually complete discretion in the hands of" those who bring suit against Kohls, whether it be an enforcement official like Defendants or a third party. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *see also Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) (finding unconstitutionally vague the distinction between "general" description and "with elaboration"); *Butcher v. Knudsen*, 38 F.4th 1163, 1173–78 (9th Cir. 2022) (determining that a campaign finance exemption for "*de minimis* acts" was unconstitutionally vague). In the First Amendment context, the void-for-vagueness doctrine disallows even the "real possibility" of "discriminatory enforcement"—the mere "opportunity for abuse." *Gentile*, 501 U.S. at 1051; *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018) (internal quotation omitted).

The discretion provided by AB 2839 is especially broad because the "enforcement officials" include not only the Secretary of State, but *any* "recipient of materially deceptive content …, candidate or committee participating in the election, or elections official." § 20012(d). Any person, activist, pundit, or delusional crank can file suit to seek injunction "prohibiting the distribution of the materially deceptive content" and "general or special damages," plus "reasonable attorney's fees and costs." *Id.* Moreover, Kohls bears the cost of defending against such suits—in time and in money—even if he's ultimately victorious.

Confusing, subjective, and broad language permeates AB 2839. The Legislature cast a wide net to regulate AI-generated speech which threatens "free and fair elections." And then it exacerbated its existing overbreadth problems by applying unintelligible definitions to the covered speech. The law is a quintessential example of a statute unconstitutionally plagued by vagueness.

### D.   AB 2839's onerous "labeling" requirement for parody compels speech in violation of the First Amendment.

Defendants may argue that AB 2839 exempts parody, but this is flatly untrue. The final amendment to the bill, made on August 23 with assistance from the governor's office, *deleted* the draft carveout for satire and parody. Satire and parody are thus swept under the statute, which provides only an exacting safe harbor for labeled content. The statute reads:

> Notwithstanding paragraph (1), this section does not apply to … election communication containing materially deceptive content that constitutes satire or parody if the communication includes a disclosure stating "This ____ has been manipulated for purposes of satire or parody." The disclosure shall comply with the requirements set forth in subparagraphs (A) and (B) of paragraph (2).

§ 20012(b)(3). Subparagraphs (A) and (B) in turn set forth unforgiving labeling requirements which in the case of video requires that "the text of the disclosure shall appear in a size that is easily readable by the average viewer and no smaller than the largest font size of other text appearing in the visual media," and that "the disclosure shall appear for the duration of the video." *Id.* at (b)(2)(B)(i).

The structure of the onerous safe harbor suggests that satire and parody do indeed run afoul of paragraph (b)(1) which sets forth the prohibition on distributing "materially deceptive content"—otherwise it would not be "notwithstanding." This is made even more clear by subparagraph (b)(4)(A), which prohibits speakers from "[r]emov[ing] and disclosure required by paragraph (2) or (3)" and from knowingly "republishing any content subject to paragraph (2) or (3) without the required disclosure." Subparagraph (b)(4)(B) says that "violation of subparagraph (A) is evidence of intent to knowingly distribute … election communication containing materially deceptive content, as prohibited by paragraph (1)."

The disclaimer requirement unconstitutionally compels speech. *See, e.g., Nat'l Inst. of Family and Life Advocates v. Becerra*, 585 U.S. 755 (2018). It is not subject to the lessened standard for a commercial speech labeling requirement. *See X Corp. v. Bonta*, 2024 U.S. App. LEXIS 22456. But even if it were subject to a lower standard, AB 2839 could not meet its

"burden to prove that the…notice is neither unjustified nor unduly burdensome." *NIFLA*, 585 U.S. at 776. The size requirements of the disclaimer "effectively rule[] out the possibility of [Kohl's video] in the first place." *Id.* at 778 (internal quotation omitted); *accord Am. Bev. Ass'n*, 916 F.3d at 757 (determining that labeling requirement that would occupy 20% of advertisement was "unjustified or unduly burdensome"). AB 2839's disclaimer would invade far more of Kohls's video that that. It would fully "drown out" his message. *Id.* at 757 (internal quotation omitted).

Moreover, while this disclaimer safe harbor provision is available to "satire or parody," the statute does not define those terms. Thus, this exemption—which Plaintiff does not wish to adhere to given that it materially impacts his underlying message—"simply exchanges [some] overbreadth for [more] vagueness." *Zarate v. Younglove*, 86 F.R.D. 80, 104 (C.D. Cal. 1980) (quoting Professor Lawrence Tribe, *American Constitutional Law* § 12-26); *see* Section II.C, *supra*. Even more so because Kohls will have to foot the costs to defend himself against any suit under AB 2839. As in *United States v. Stevens*, California's "attempt to narrow the statutory ban [in AB 2839] … requires an unrealistically broad reading of the exceptions clause," 559 U.S. 460, 478 (2010), *and* it puts the burden on Kohls to use California's preferred language. But the state can't "use[]" one class of protected speech (here parody and satire) "as a general precondition to protecting *other* types of speech in the first place." *Id.* at 479.[14] This is *especially* so because enforcement of the bill is outsourced to any recipient of allegedly misleading content who feels inspired to file suit.

Plus, Kohls labeled his first video at issue a "PARODY" and Governor Newsom responded by threatening to take it offline and then passing *this* law—enabling an army of commissars to bankrupt Kohls even without proving liability. *See 281 Care Committee*, 766 F.3d at 790, 796 ("it is immensely problematic that *anyone* may lodge a complaint" for violation of

---

[14] Justice Alito's dissent in *Alvarez* also points out that the Stolen Valor Act there did "not reach dramatic performances, satire, parody, hyperbole, or the like." 567 U.S. 709, 740 (2012). Since the majority still found the law unconstitutional, a carveout for satire and parody alone is insufficient to justify First Amendment regulations of "misinformation."

the statute; "[t]he statute itself actually opens a Pandora's box to disingenuous politicking"); *Lucas*, 34 N.E. 3d at 251 (noting "the statute may be manipulated easily into a tool for subverting its own justification").

### E.    AB 2839 unconstitutionally discriminates based on speaker

The First Amendment is "deeply skeptical of laws that 'distinguish among different, allowing speech by some but not others.'" *NIFLA*, 585 U.S at 777–78 (quoting *Citizens United v. FEC*, 558 U.S. 310, 340 (2010)). Such laws "run the risk that 'the State has left unburdened those speakers whose messages are in accord with its own views.'" *Id.* (quoting *Sorrell v IMS Health Inc.*, 564 U.S. 552, 580 (2011)). "[A]ll too often" speaker-based discrimination is merely "content-based discrimination in disguise." *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (2020) (quoting in part *Reed v. Town of Gilbert*, 576 U.S. 155, 170 (2015)). When it is, speaker-based distinctions invoke strict scrutiny just as any other content-based regulation.

Here, AB 2839 effects a speaker preference by offering a special safe harbor to candidates that use deepfakes to falsely portray themselves. *See* Cal. Elec. Code § 20012(b)(2).[15] This is content-based discrimination in disguise. The statute prefers laudatory lies about oneself—stolen valor, for example—over deprecatory lies about another. Yet a "free and fair election" is equally endangered (Kohl thinks not at all) by positive lies as by negative lies.

Moreover, the exemption for candidate speech is completely at odds with that purported aim of "free and fair elections" in another way. In an ideal world with a platonically perfect and accurate information-scape, it is *most* crucial that the candidates themselves not be purveyors of misinformation. Everything starts with them. After all, the candidates are the very people that voters are deciding upon. Voters are not electing Joe Schmo, social media Memeologist; they are electing the candidate. Yet, even though a candidate's truthful speech is most indispensable to a platonically "free and fair election," AB 2839 privileges candidate

---

[15] Private citizens are only allowed the equivalent safe harbor if they engage in satire or parody.

misinformation with a safe harbor that is not available to private speakers who are not engaged in parody or satire.

The speaker preference of AB 2839 is a further reason that the law violates the First Amendment.

## III.    Plaintiff is irreparably harmed by AB 2839.

"When an alleged deprivation of a constitutional right is involved, such as the right to free speech [], most courts hold that no further showing of irreparable injury is necessary." 11A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. Apr. 2020 update). Both the Ninth Circuit and the Supreme Court "have repeatedly held that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (internal quotation omitted; citing cases). "[A]ny First Amendment infringement that occurs with each passing day is irreparable." *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975). The "chill on … free speech rights—even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). "A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Am. Bev. Ass'n*, 916 F.3d at 758 (quoting *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)).

Because of AB 2839, Kohls is chilled from providing and receiving the political commentary that he wants. This is because (a) he and other speakers will likely face suit for his videos under AB 2839 (b) the costs they'll bear to defend themselves against such lawsuits deter their political speech; (c) their videos likely breach YouTube or X's terms of service because the content is unlawful under AB 2839; and, (d) the content could result in sanctions such as deplatforming or temporary suspensions by YouTube or X. This chilling effect materially impedes Kohls's ability to monetize his X and YouTube accounts and, more importantly for the purposes of a preliminary inunction, it inhibits him and others from

speaking their minds politically. While AB 2839 has not yet been enforced against Kohls, the *threat* of enforcement is clear and real. *See Cuviello*, 944 F.3d at 833.

## IV.   The public interest and the balance of the equities weigh in favor of granting a preliminary injunction.

The remaining two factors to be considered—the public interest and whether other interested persons would be benefited or harmed by an injunction—weigh in favor of granting Kohls's Motion. AB 2839 deters the uninhibited political speech of all Californians through its regulation of AI generated videos, and so "the balance of equities and the public interest thus tip sharply in favor of enjoining the [law]." *Klein*, 584 F.3d at 1208. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotations omitted); *accord Sammartano v. First Jud. Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).

On the other side of the equation and as discussed above, *supra* II.A, California lacks a valid interest in regulating Kohls's political speech to ensure "free and fair elections," however noble a cause that may be. Separately, if California is truly that concerned about Kohls's videos and others like it delegitimizing elections, then the antidote to that is the truth. "The response to the unreasoned is the rational; to the uninformed, the enlightened; to the straight-out lie, the simple truth." *Alvarez*, 567 U.S. at 727 (Plurality Op. of Kennedy, J.). That speech can be the government's own, delivered through, for example, a "public-information campaign." *NIFLA*, 585 U.S. at 775. California may promote its own content that points out Kohls's videos are AI-generated; it might author a "community note" on X, for example, which provides the public with important user-generated comments that add context to tweets. Or Gavin Newsom might assign one of his staffers to reply to every tweet Kohls makes with a message like "this video is AI generated and not actually Vice President Harris," to assist any California residents that might think otherwise. But the government may not "co-opt" private parties to act as the mouthpiece of the government's preferred message. *Id.* "If there be a time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of

education, the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).

**V.      Kohls should not be required to post a Rule 65(c) bond.**

Federal Rule of Civil Procedure 65(c) "invest[s] the district court with the discretion as to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). A bond is not appropriate or necessary here: Plaintiff has a high probability of success on the merits, *People ex rel. van de Kamp v. Tahoe Reg'l Plan*, 766 F.2d 1319, 1326 (9th Cir. 1985), the costs and damages from granting a preliminary injunction are insignificant, *U.S. v. State of Or.*, 675 F. Supp. 1249, 1253 (D. Or. 1987), and— most importantly—Kohls brings this claim to protect constitutional rights, both for himself and the people of California. *See, e.g.*, *Smith v. Board of Election Comm'rs*, 591 F. Supp. 70, 72 (N.D. Ill. 1984) (constitutional rights at stake). This is a public-interest case seeking declaratory and injunctive relief and there is no risk of monetary loss to the Defendant from the injunction. *See* 11A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2954 (3d ed. 2020) (collecting cases).

## CONCLUSION

The court should enjoin defendant Weber from enforcement of AB 2839.

## LR 231(d)(3) STATEMENT RE ARGUMENT

As LR 231(d)(3) requires, Kohls states he would be happy to present argument if the Court would find it helpful for whatever length of time most helpful to the Court.

Dated: September 18, 2024          Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
Adam E. Schulman (*pro hac vice* pending)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Christopher Kohls*