Theodore H. Frank (SBN 196332)
Adam E. Schulman (admitted *pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Plaintiff Christopher Kohls*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| CHRISTOPHER KOHLS,<br><br>*Plaintiff*,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, and SHIRLEY N. WEBER, in her official capacity as California Secretary of State,<br><br>*Defendants*. | No. 24-cv-02527-JAM-CKD<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>DATE: September 30, 2024<br>TIME: 1:00 PM<br>JUDGE: Hon. John A. Mendez |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii

ARGUMENT .......................................................................................................................................... 2

I.   Prohibiting political speech about candidates, issues, and government officials does not further the state's interest in electoral integrity. ............................................................. 2

    A.   AB 2839 is a novel content-based regulation of political speech subject to strict scrutiny. ........................................................................................................................... 2

    B.   AB 2839 cannot survive strict scrutiny. ........................................................................ 6

II.   AB 2839 is unconstitutionally vague. ......................................................................................... 9

III.  AB 2839's disclosure requirement for parody and satire unconstitutionally compels speech. ............................................................................................................................................ 9

IV.  There is no constitutional core of AB 2839 to preserve through severability. ................. 10

CONCLUSION .................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*281 Care Committee v. Arneson*,
    766 F.3d 774 (8th Cir. 2014) ............................................................................... *passim*

*Animal Legal Def. Fund v. Wasden*,
    878 F.3d 1184 (9th Cir. 2018) ............................................................................. 3, 6, 7, 8

*Baggett v. Bullitt*,
    377 U.S. 360 (1964) ............................................................................................. 9

*Bullfrog Films, Inc. v. Wick*,
    442 U.S. 289 (9th Cir. 2004) ............................................................................... 8-9

*Brown v. Entm't Merchs. Ass'n*,
    564 U.S. 786 (2011) ............................................................................................. 2

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ................................................................................................. 8

*Burson v. Freeman*,
    504 U.S. 191 (1992) ............................................................................................. 4, 6

*Commonwealth v. Lucas*,
    34 N.E.3d 1242 (Mass. 2015) ............................................................................. 3-4, 5

*Cramp v. Bd. of Pub. Instruction*,
    368 U.S. 278 (1961) ............................................................................................. 9

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
    489 U.S. 231 (1989) ............................................................................................. 4

*FEC v. Ted Cruz for Senate*,
    596 U.S. 289 (2022) ............................................................................................. 5-6

*Grosset v. Wenaas*,
    175 P.3d 1184 (Cal. 2008) ................................................................................... 7

*IMDB.com, Inc. v. Becerra*,
    962 F.3d 1111 (2020) ........................................................................................... 6, 7

*Italian Colors Rest. v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018) ................................................................................................ 6

*John Doe No. 1 v. Reed*,
   561 U.S. 186 (2009) ............................................................................................................ 4-5

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ...................................................................................................... 5, 7, 8

*Minn. Voters All. v. Ellison*,
   __F. Supp. 3d__, 2024 WL 4222829 (D. Minn. Sept. 17, 2024) ........................................ 5

*Minn. Voters All. v. Mansky*,
   585 U.S. 1 (2018) .................................................................................................................. 5

*Nat'l Inst. Of Family & Life Advocates v. Becerra (NIFLA)*,
   138 S. Ct. 2361 (2018) ......................................................................................................... 1

*NetChoice, LLC v. Bonta*
   __F.4th__, 2024 U.S. App. LEXIS 20755 (9th Cir. Aug. 16, 2024) .................................. 6

*PETA v. North Carolina Farm Bureau Fed'n, Inc.*,
   60 F.4th 815 (4th Cir. 2023) ............................................................................................ 2-3

*Richter v. Lake*,
   2023 Ariz. Super. LEXIS 628 (Sup. Ct. Maricopa Cty. Dec. 19, 2023) ........................... 6

*Rickert v. State Pub. Disclosure Comm'n*,
   168 P.3d 826 (Wash. 2007) ................................................................................................. 4

*Sackett v. EPA*,
   598 U.S. 651 (2023) ............................................................................................................. 9

*Susan B. Anthony List v. Driehaus*,
   814 F.3d 466 (6th Cir. 2016) ............................................................................................... 7

*Tollis Inc. v. County of San Diego*,
   505 F.3d 935 (9th Cir. 2007) ............................................................................................. 10

*United States v. Alvarez*,
   567 U.S. 709 (2012) ......................................................................................................... 3, 9

*United States v. Mackey*,
    652 F. Supp. 3d 309 (E.D.N.Y. 2023) ................................................................................4

*United States v. Stevens*,
    559 U.S. 460 (2010) ................................................................................................. 2-3, 9

*United States v. Tan Duc Nguyen*,
    673 F.3d 1259 (9th Cir. 2012) ........................................................................................5, 6

*Victory Processing LLC v. Fox*,
    937 F.3d 1218 (9th Cir. 2019) ............................................................................................7

*Vitagliano v. Cnty. of Westchester*,
    71 F.4th 130 (2d Cir. 2023) .............................................................................................

*Whitney v. Calirornia*,
    274 U.S. 357 (1927) ........................................................................................................

*Winter v. Wolnitzek*,
    834 F.3d 681 (6th Cir. 2016) ......................................................................................... 4-5

*Wis. Right to Life, Inc. v. FEC*,
    551 U.S. 449 (2007) ..........................................................................................................8

*Yim v. Seattle*,
    63 F.4th 783 (9th Cir. 2023) .............................................................................................6

**Statutes and Constitutional Provisions**

Assembly Bill 2839 ................................................................................................................*passim*

Cal. Elec. Code § 20012(b)(1)(B)-(D) ......................................................................................10

Cal. Elec. Code § 20512(f)(8) ....................................................................................................9

U.S. Const., Amend. I ......................................................................................................*passim*

U.S. Const., Amend. XIV ..........................................................................................................9

**Other Authorities**

*Aristophanes, Satirist versus Politician*,
    HARVARD–THE CENTER FOR HELLENIC STUDIES
    https://chs.harvard.edu/chapter/part-i-greece-14-aristophanes-satirist-versus-politician) ...................................................................................................................2

Aria, David S. & Evan Ringel
    *First Amendemtn Limits on State Laws Targeting Election Misinformation*,
    20 FIRST AMEND. L. REV. 291 (2002) ..................................................................................4

Franklin, Benjamin,
    *Supplement to the Boston Independent Chronicle*,
    FOUNDERS ONLINE, NATIONAL ARCHIVES (Apr. 22, 1782),
    https://founders.archives.gov/documents/Franklin/01-37-02-0132. ...........................2

Jones, Erin
    *Kamala Harris campaign ad shared by Elon Musk is not real*,
    VERIFY (Jul. 29, 2024)..........................................................................................................7

Mr. Reagan,
    *Gavin Newsom Parody*,
    YOUTUBE (Sept. 23, 2024),
    https://www.youtube.com/watch?v=drWhPBarXQw.....................................................10

*Satire and Political Humor in the Ratification Debate*,
    UNIV OF WISCONSIN-MADISON: CENTER FOR THE STUDY OF THE
    AMERICAN CONSTITUTION, https://csac.history.wisc.edu/document-
    collections/popular-culture-and-ratification/political-humor/ .......................................2

Shepardson, David
    *US political consultant indicted over AI-generated Biden robocalls*,
    REUTERS (MAY 23, 2024), https://www.reuters.com/world/us/us-
    political-consultant-indicted-over-ai-generated-biden-robocalls-2024-05-
    23/ ........................................................................................................................................3

Volokh, Eugene,
    *When are Lies Constitutionally Protected*,
    4 J. FREE SPEECH L. 685 (2024) ...........................................................................................4

The government does not dispute that Governor Newsom called for Kohls's speech to be made "illegal"; that the legislature—at Newsom's behest—amended the statute to encompass parody and satire to ban Kohls's speech; nor that they view Kohls's videos as illegal today. Complaint ¶¶ 2, 79; Frank Decl. ¶ 15; Mem. 15. They excuse this plainly inexcusable state of affairs by suggesting that all they want is "disclosure," but the disclosure Kohls has already made—labeling his videos "parody"—does not satisfy the statute. The government—except with the conclusory adjective "minimal" (Opp. 24)—does not dispute the extraordinary disclosure burden Kohls has demonstrated the statute creates, which would "rule out the possibility of Kohls's video in the first place." Mem. 19 (quoting *NIFLA*, 585 U.S. at 778). The statute requires a disclaimer that airs for the entire video in text that is no smaller than the largest font size used. Kohls's complaint illustrates the impossibility of complying with AB 2839's compelled disclosure, even if he were amenable to it. And the government does not dispute that a content creator complying with the statute risks demonetization by social-media firms. Frank Decl. ¶ 27.



**Complaint ¶ 98:** An illustrative effort to include the mandatory disclosure in video.

Strict scrutiny applies to AB 2839, a law that targets protected speech based on its content in several ways. Mem. 14–15. The government's argument that it can regulate falsehoods contradicts caselaw requiring a "tangible" harm, which has never been found to encompass harm to "electoral prospects." Mem. 12. Even much more tangible harms than the vague and amorphous societal interests alleged by the government do not excuse a speech-restrictive law from strict scrutiny. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194 (9th Cir. 2018) (invalidating law against "misrepresentations" to enter another's property).

This censorious law does not satisfy strict scrutiny and the Court should enjoin it.

# ARGUMENT

**I. Prohibiting political speech about candidates, issues, and government officials does not further the state's interest in electoral integrity.**

    **A. AB 2839 is a novel content-based regulation of political speech subject to strict scrutiny.**

Political speech born in impersonation is older than our Republic. In 1782, intending to influence the ongoing peace negotiations with Great Britain, Benjamin Franklin authored an elaborate hoax in a fake supplement to a Boston newspaper, containing multiple fabricated letters. *See* Benjamin Franklin, *Supplement to the Boston Independent Chronicle*, FOUNDERS ONLINE, NATIONAL ARCHIVES (Apr. 22, 1782).[1] One purported to be from a British officer (Crauford) transmitting a gift to the Crown from the Seneca Indians: "eight Packs of [colonial] Scalps, cured, dried, hooped and painted, with all the Indian triumphal marks." During the 1787 debates of the Constitutional Convention, pseudonymous authors penned dozens of tracts in the style of their opponent, ridiculing opposing arguments using humor and hyperbole.[2] The Western tradition of political parody is much older still: in several Fifth Century BC plays, Aristophanes repeatedly lampooned Athenian general Cleon as a petty and litigious bully.[3]

AI-aided deepfakes provide a new mode of engaging in this political impersonation, but "the First Amendment's command [does] not vary." *Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786, 790 (2011). When governments attempt "a novel restriction on content," they must present "persuasive evidence" it "is part of a long (if heretofore unrecognized) tradition of proscription." *Id.* at 792. Otherwise, "a legislature may not revise the 'judgment of the American people,' embodied in the First Amendment." *Id.* (quoting *United States v. Stevens*, 559

---

[1] https://founders.archives.gov/documents/Franklin/01-37-02-0132.

[2] *Satire and Political Humor in the Ratification Debate*, Univ. of Wisconsin-Madison: Center for the Study of the American Constitution, https://csac.history.wisc.edu/document-collections/popular-culture-and-ratification/political-humor/.

[3] *Aristophanes, Satirist versus Politician*, Harvard – The Center for Hellenic Studies, https://chs.harvard.edu/chapter/part-i-greece-14-aristophanes-satirist-versus-politician/.

U.S. 460, 470 (2010)). It is not enough for California to permit satire when "farfetched enough" Opp. 17. A legislature may not work backward from protected speech and then sweep all other speech into a prohibition. When Congress tried to outlaw animal crush videos but exempted works of "serious religious, political, scientific, educational, journalistic, historical, or artistic value," the Court held that legislatures cannot "use[]" one class of protected speech (here parody and satire) "as a general precondition to protecting other types of speech in the first place." *Stevens*, 559 U.S. at 479. There's no "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Id.* at 472. In other words, "[t]he First Amendment limits the government; the government does not limit the First Amendment." *PETA v. North Carolina Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 823 (4th Cir. 2023).

Considering the tradition of regulation with respect to false speech, *United States v. Alvarez* holds that, outside of historically unprotected categories of fraud and defamation, the government's power extends only to false speech that inflicts "legally cognizable harm" or speech made for "material gain" or "material advantage." 567 U.S. 709, 719, 723 (2012) (plurality op.); *accord Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194 (9th Cir. 2018) (same; also observing that the *Alvarez* concurrence employs a similar "tangible harm" test). But California justifies its political deepfake ban by pointing to decidedly *intangible* types of harm: harm to deepfake subject candidates' electoral prospects and the societal harm to "free and fair elections." Opp. 11–16. The Ninth Circuit in *Animal Legal Defense Fund* invalidated the provision of Idaho law that prohibited misrepresentations for the purpose of gaining entry to agricultural production facilities. 878 F.3d at 1194–99. Thus, defendants cannot be correct to claim that all "false statements meant to induce a person to act in a certain way contrary to their own detriment" are unprotected. Opp. 11. Nor would *Alvarez* have come out the way it did if vague "harms to society" (Opp. 12) were sufficient.

Everyone acknowledges electoral integrity is a compelling governmental interest in the abstract. Mem. 12. The problem is it does not apply to political speech beyond falsehoods about voting procedures that jeopardize individuals' right to vote. Case after case so holds. *See, e.g.*, *281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014); *Commonwealth v. Lucas*, 34 N.E.3d

1242 (Mass. 2015); *Rickert v. State Pub. Disclosure Comm'n*, 168 P.3d 826, 829–31 (Wash. 2007); *cf. also Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 231, 232 (1989) (CA Election Code infringement on free association not necessary to advance state's interest in preserving integrity of elections). Although Defendants would prefer to focus on the Biden deepfake robocall,[4] and AB 2839 elides the distinction, the First Amendment does not. One must contrast "lies about 'election procedures'"—an area where a "narrower restriction[] might pose fewer problems" with lies about election campaigns and government officials—areas that should be "categorically immune from liability." *See* Eugene Volokh, *When are Lies Constitutionally Protected*, 4 J. FREE SPEECH L. 685, 704–09 (2024); *see also* David S. Aria & Evan Ringel, *First Amendment Limits on State Laws Targeting Election Misinformation*, 20 FIRST AMEND. L. REV. 291, 346-50 (2022) (surveying laws from a dozen or so states proscribing false statements about voting requirements and procedures).

Caselaw too supports this distinction. For example, sustaining the well-known prosecution of a man who created a false ad encouraging Hillary Clinton voters to vote via text; against a First Amendment challenge, the district court distinguished between "content-based regulations of political speech…consistently subject to strict scrutiny," like AB 2839, and "speech that is not political in nature and is instead related to politics only in so far as it proscribes the procedures governing elections." *United States v. Mackey*, 652 F. Supp. 3d 309, 344 (E.D.N.Y. 2023). Most, if not all cases that favor the state, involve laws that safeguard the mechanics of casting a vote. For example, *Burson v. Freeman* (Opp. 13, 14), upheld a law that imposed a 100-ft buffer zone around the polling place, so that individual could "cast a ballot in an election free from the taint of intimidation and fraud." 504 U.S. 191, 211 (1992). *John Doe No. 1 v. Reed* (Opp. 13) upheld a state regime disclosing the names of referenda signers. 561

---

[4] Opp. 1, 13, 15. New Hampshire criminally indicted the alleged perpetrator of that call. David Shepardson, *US political consultant indicted over AI-generated Biden robocalls*, REUTERS (May 23, 2024), https://www.reuters.com/world/us/us-political-consultant-indicted-over-ai-generated-biden-robocalls-2024-05-23/. The indictment demonstrates the availability of less restrictive, more narrowly tailored, content-neutral alternatives for addressing the problem that California seeks to resolve. *See also infra* at 6–7 (discussing other less restrictive alternatives).

U.S. 186, 197 (2010). *Minnesota Voters Alliance v. Ellison* (Opp. 18) upheld a law which "prohibits making materially false statements with the intent to prevent someone from voting." That statute targets speech on voting mechanics; it did not involve "core political speech…about political candidates" like AB 2839 does. -- F. Supp. 3d --, 2024 WL 4222829, at n.6 (D. Minn. Sept. 17, 2024). As *Minnesota Voters* readily admits, laws which target "false information about a political candidate" and "prohibit robust debate" are subject to strict scrutiny and the First Amendment's most rigorous protection. Cases like *281 Care Committee*—inapplicable to the court's analysis in *Minnesota Voters*—are the relevant precedent here. (*Winter v. Wolnitzek* (Opp. 18) does not help Defendants because it involved a judicial election: "Kentucky's narrower interest in preserving public confidence in the honesty and integrity of its judiciary…is more compelling than Ohio's purported interest in protecting voters in other elected races from misinformation." 834 F.3d 681, 693 (6th Cir. 2016).)

Like the *281 Care Committee* defendants, Defendants overread (Opp. 13) the dicta from *McIntrye v. Ohio Elections Comm'n*, a case which invalidated the state's prohibition on anonymous pamphleting. 766 F.3d at 789. "[T]he more apt observation from *McIntyre* is this: '[t]he State may, and does, punish fraud directly. But it cannot seek to punish fraud indirectly by indiscriminately outlawing a category of speech, based on its content, with no necessary relationship to the danger sought to be prevented.'" *Lucas*, 34 N.E.3d at 1255 (quoting *McIntyre*, 514 U.S. 334, 357 (1995)). California knows how to pass laws that advance its interest in electoral integrity. *See United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1264–66 (9th Cir. 2012) (discussing three sections of the CA Election Code dealing with voting interference, coercion, and intimidation and refusing to apply strict scrutiny because the speech covered represents an unprotected true threat). "We do not doubt that the State may prohibit messages intended to mislead voters about voting requirements and procedures. But that interest does not align with the State's construction of 'political' to refer to messages 'about the electoral choices at issue in [the] polling place.'" *Minn. Voters All. v. Mansky*, 585 U.S. 1, 18 n.4 (2018). Like the laws in *281 Care Committee* and *Lucas*, AB 2839 is on wrong side of the line, restricting political speech

Case No. 24-cv-02527-JAM-CKD                                                                                                      5
REPLY ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

about candidates, campaigns and issues and "tamper[ing] with the right of citizens to choose who shall govern them." *FEC v. Cruz*, 596 U.S. 289, 305–06 (2022). Strict scrutiny applies.

### B. AB 2839 cannot survive strict scrutiny.

For several reasons, AB 2839 cannot pass constitutional scrutiny: (1) existing civil and criminal laws are less restrictive alternatives than AB 2839 because they do not target political speech; (2) counterspeech is a less restrictive alternative, particularly because AB 2839's temporal scope extends months before and after an election; (3) AB 2839's open invitation to politically-motivated lawsuits undermines the aim of free and fair elections; (4) AB 2839's preferential treatment for candidate speech and reputation-enhancing deepfakes makes the statute fatally underinclusive; and (5) the *mens rea* component of the law does not salvage it.

1. Under strict scrutiny, a state must use the "least restrictive means available for advancing [its] interest." *NetChoice, LLC v. Bonta*, __ F.4th __, 2024 U.S. App. LEXIS 20755, at *39 (9th Cir. Aug. 16, 2024) (internal quotation omitted). The First Amendment does not "permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech." *Imdb.com, Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (citing cases). That can be "existing criminal laws." *NetChoice*, 2024 U.S. App. LEXIS 20755 at *39; *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1178 (9th Cir. 2018). Or it can be generally applicable and content-neutral private civil remedies. *Animal Legal Def. Fund*, 878 F.3d at 1205 (tort remedies). As noted in the previous section, criminal law protections already safeguard against the Biden deepfake scenario. *See Tan Duc Nguyen* & n.1, *supra*.

So too do longstanding tort doctrines of defamation and false light. For example, when candidate Kari Lake disparaged Arizona elections official Stephen Richer, he sued for defamation, with his claims surviving Lake's motion to dismiss. *Richer v. Lake*, No. CV 2023-009418, 2023 Ariz. Super. LEXIS 628 (Sup. Ct. Maricopa Cty. Dec. 19, 2023). Indeed, Defendants seem to agree that defamation may be an available remedy. Opp. 10–11. They don't provide even a "tenuous explanation" for why that alternative regime is insufficient. *Yim v. Seattle*, 63 F.4th 783, 787 (9th Cir. 2023).

2. There is another less restrictive alternative: counterspeech. Mem. 13 (citing, *e.g., 281 Care Committee*, 766 F.3d at 793). Counterspeech is the particularly appropriate response for speech that occurs months before and months after elections and primaries. Because AB 2839 operates 120 days before *all* state elections and primaries, and 60 days after, only **64 days** this calendar year would be free from AB 2839's speech restriction for candidates on primary ballots like Kamala Harris. *See* Mem. 8. Like the statute in *McIntyre*, AB 2839 "applies not only to [speech] distributed on the eve of an election, when the opportunity for reply is limited, but also to [that] distributed months in advance." 514 U.S. at 352; *contrast Burson*, 504 U.S. 191 (election-day restriction). Defendants respond by pointing to one researcher who suggested that counterspeech to deepfakes "can be ineffective or even counterproductive." Opp. 19. If by counterproductive, they mean rebuttals would draw attention to the initial deepfake, that is true of all speech that intends to counter false speech. And there is no reason it would be ineffective: Kohls's Kamala video has been factchecked multiple times. *E.g.*, Erin Jones, *Kamala Harris campaign ad shared by Elon Musk is not real*, VERIFY (Jul. 29, 2024). No less in the internet era, courts side with more speech, not less. *SBA List*, 814 F.3d at 476.

3. By opening the floodgates to retaliatory, burdensome lawsuits against political opponents, AB 2839 "undermines the state's interest in promoting fair elections." *Id.* at 475; *accord* Mem. 19–20. Defendants respond that a plaintiff would need to establish standing and bear a burden to state a claim on the merits. Opp. 23.[5] But that's little comfort because attending to the lawsuit is itself punitive. Lawfare "damage is done at the time a complaint is filed." *281 Care Committee*, 766 F.3d at 792; *accord id.* at 791 (quoting Brief of the Ohio Attorney General in *SBA List*).

4. When the law is underinclusive because it neglects to address the major aspect of the conceived harm, courts consistently hold that fails narrow tailoring review. *E.g.*, *IMDB.com*, 962

---

[5] Defendants erroneously suggest that future plaintiffs suing deepfake creators under AB 2839 would need to meet the requirements of standing to proceed in state court. Opp. 23. "There is no similar requirement [to Article III] in [California's] state Constitution." *Grosset v. Wenaas*, 175 P.3d 1184, 1196 n.13 (Cal. 2008).

F.3d at 1127; *Victory Processing LLC v. Fox*, 937 F.3d 1218, 1229 (9th Cir. 2019); *Animal Legal Def. Fund*, 878 F.3d at 1205. AB 2839 is underinclusive because it is easy to imagine deepfakes that risk manipulating voters' perceptions about the election yet are not covered by the law. That could be a deepfake of Taylor Swift or Vladimir Putin endorsing Trump. Deepfakes of non-candidate, non-elected officials are not covered even if they are directly addressing the election. The same is true for deepfakes of the candidate that enhance, rather than injure, their reputation: imagine Harris piloting an F-16 or Trump taming a lion with his bare hands. And someone could duplicate Kohls's parody using a human impersonator without running afoul of the law.

Defendants mistakenly suggest that the exemption for news media is "consistent with existing case law." Opp. 19. In fact, *281 Care Committee* found that Minnesota's statute's exemption for news media was part of its fatal underinclusiveness, showing that the statute did not "advance a stated interest in preventing fraud on the electorate." 766 F.3d at 794–95.

The preferential treatment for candidates creating deepfakes of themselves is backwards vis-à-vis the state's interest in fairly informed elections. *McIntyre* criticized the Ohio law at issue because it "applie[d] not only to the activities of candidates and their organized supporters, but also to individuals acting independently and using only their own modest resources." 514 U.S. at 351. Thus, *McIntyre* recognizes the core of the fair election rationale comprises candidate speech. Campaign finance law (Opp. 19) is no analog because, in that arena, third party contributions present a risk of corruption concerns not present with a candidate's own expenditures. *Buckley v. Valeo*, 424 U.S. 1, 52–54 (1976).

5. Lastly, *contra* Opp. 17, the "knowing" *mens rea* requirement of AB 2839 is insufficient to tailor it. *281 Care Committee*, 766 F.3d at 794. It does nothing "to realistically stop the potential for abuse of [AB 2839's] mechanism." *Id.* It "does not eliminate the threat by [the statute's] staggering reach." *Animal Legal Def. Fund*, 878 F.3d at 1197–98. "First Amendment freedoms need breathing space to survive. An intent test provides none." *Wisconsin Right to Life v. FEC*, 551 U.S. 449, 468–69 (2007). It is unclear how a speaker could even "know" that the statute's vague qualifications would be satisfied. *See* Section II, *infra*. Defendants protest (Opp. 17–18)

that they are just tracking the liability standard from *N.Y. Times v. Sullivan*, but that is exactly the methodology that the Supreme Court rejected in *Stevens*. And in fact, *Alvarez* rejects the very same governmental rationale for the knowing falsehood proscription of the Stolen Valor Act: "A rule designed to tolerate certain speech ought not blossom to become a rationale for a rule restricting it." 567 U.S. at 720.

## II. AB 2839 is unconstitutionally vague.

Because it implicates constitutional rights, AB 2839 is subject to a "more stringent" test for vagueness, even though it is not a criminal law. *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 513 (9th Cir. 1988); *contra* Opp. 23. Kohls never suggested that statutes restricting "false" statements or advertisements were impermissibly vague. *Contra* Opp. 22. AB 2839's vagueness lies in the perception of a "reasonable person" as to whether content appears to be an "authentic record." *Cf. Bullfrog Films*, 847 F.2d at 513 (treaty affording favorable treatment to materials deemed "representative," "authentic," and "accurate" was "unquestionably vague"). AB 2839's vagueness lies in what constitutes acceptable "minor" modifications. It is no answer to say that it's small changes that "do not alter its substantive meaning" (Opp. 22) because "substantive meaning" itself is a matter of subjective interpretation, as is whether the modifications "significantly change the perceived contents or meaning of the content." Cal. Elec. Code § 20012(f)(8)(B). *Cf. Sackett v. EPA*, 598 U.S. 651, 681 (2023) ("the boundary between a 'significant' and an insignificant nexus is far from clear"). Defendants claim that the central phrase—"reasonably likely to harm the reputation or electoral prospects of a candidate"—is "well-established" from the common law "definition of defamation." Opp. 23. But traditional defamation standards have nothing to say about harm from unconstitutional vagueness if the object of that intent is vague. *See, e.g., Baggett v. Bullitt*, 377 U.S. 360, 369 (1964); *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 286–87 (1961).

## III. AB 2839's disclosure requirement for parody and satire unconstitutionally compels speech.

AB 2839's disclosure requirement for parody is tantamount to requiring comedians to

preface every joke with an announcement that they are making a joke or requiring teachers to preface every sensitive subject with a trigger warning. This is unconstitutional compelled speech (Mem. 18–19); this mandated speech is non-commercial so whether it is a "noncontroversial and factual statement" (Opp. 21) has no bearing.

But it's worse than that. What Defendants call without support a "minimal burden" (Opp. 24) is actually a disclaimer that airs for the entire video with text no smaller than the largest font size used in the video—a requirement that rules "out the possibility of Kohls's video in the first place," as shown in the complaint and reproduced on page 1 above. Mem. 19 (quoting *NIFLA*, 585 U.S. at 778). And the government does not dispute that compliance would be burdensome and risk Kohls's standing with social-media companies. Frank Decl. ¶¶ 26–27.

### IV.    There is no constitutional core of AB 2839 to preserve through severability.

Defendants' fallback is severing the "candidate" prong, to save the ban for elections officials, elected officials, and voting machines, ballot, voting site, or other election equipment. Cal. Elec. Code § 20012(b)(1)(B)–(D). Defendants question whether Kohls is impacted by those subsections. Opp. 25. But Kohls's latest video lampoons an elected official, Governor Newsom himself. Mr Reagan, *Gavin Newsom Parody*, YOUTUBE (Sept. 23, 2024).[6] A severability clause only saves portions of a statute that pass constitutional muster. "[S]everance is inappropriate if the remainder of the statute would still be unconstitutional." *Tollis Inc. v. County of San Diego*, 505 F.3d 935, 943 (9th Cir. 2007). And favoring incumbents over challengers is plainly impermissible.

### CONCLUSION

For these reasons, Kohls's motion for a preliminary injunction should be granted.

---

[6] https://www.youtube.com/watch?v=drWhPBarXQw.

Dated: September 26, 2024     Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (SBN 196332)
Adam E. Schulman (admitted *pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Christopher Kohls*