UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER KOHLS, | No.  2:24-cv-02527 JAM-CKD |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| ROB BONTA, in his official capacity as Attorney General of the State of California, and SHIRLEY N. WEBER, in her official capacity as California Secretary of State, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Christopher Kohls (aka "Mr. Reagan") is an individual who creates digital content about political figures. His videos contain demonstrably false information that include sounds or visuals that are significantly edited or digitally generated using artificial intelligence ("AI").  Complaint, ¶ 5, ECF No. 1.  Plaintiff's videos are considered by him to be parody or satire.  In response to videos posted by Plaintiff parodying

1  presidential candidate Kamala Harris and other AI generated
2  "deepfakes,"[1] the California legislature enacted AB 2839.
3  AB 2839, according to Plaintiff, would allow any political
4  candidate, election official, the Secretary of State, and
5  everyone who sees his AI-generated videos to sue him for damages
6  and injunctive relief during an election period which runs 120
7  days before an election to 60 days after an election.  Motion for
8  Prelim. Inj. ("Mot."), p. 2, ECF No. 6-1.

9        On September 17, 2024 - the day AB 2839 was signed by the
10 Governor – Plaintiff filed this lawsuit and the instant motion
11 for a preliminary injunction.  See Mot., ECF Nos. 1, 6.
12 Plaintiff seeks an Order enjoining Defendants from enforcing
13 AB 2839.  Plaintiff contends that AB 2839 violates the First and
14 Fourteenth Amendments, both facially and as applied.
15 Specifically, Plaintiff argues that the statute infringes on his
16 right to free speech and is unconstitutionally vague.
17 Defendants, on the other hand, contend that AB 2839 is
18 constitutional under the First Amendment as a restriction on
19 knowing falsehoods that cause tangible harm.  See Defendant's
20 Opposition ("D. Opp'n"), ECF No. 9.  They argue that this statute
21 meets the strict scrutiny standard, contains a safe harbor
22 provision for parody and satire that is constitutional, and is
23 not unconstitutionally vague.  Plaintiff filed a Reply brief ("P.
24 Reply") responding to the State's counterarguments.  See
25 Plaintiff's Reply Brief, ECF No. 10.

26 ─────────────────────
27 [1] Defendants define "deepfake" as a "manipulated piece of media
   where a person's likeness, image or void is digitally created or
   swapped with another person's."  Opposition to Prelim. Injunction
28 Motion, p. 3, fn. 5.  ECF No. 9.

1     AB 2839 does not pass constitutional scrutiny because the

2   law does not use the least restrictive means available for

3   advancing the State's interest here.  As Plaintiffs persuasively

4   argue, counter speech is a less restrictive alternative to

5   prohibiting videos such as those posted by Plaintiff, no matter

6   how offensive or inappropriate someone may find them.

7   '"Especially as to political speech, counter speech is the tried

8   and true buffer and elixir," not speech restriction.'  Motion for

9   Prelim. Inj., p. 13 (citations omitted), ECF No. 6-1.

10     While California has a valid interest in protecting the

11   integrity and reliability of the electoral process, AB 2839 is

12   unconstitutional because it lacks the narrow tailoring and least

13   restrictive alternative that a content based law requires under

14   strict scrutiny.  Motion for Prel. Inj., pp. 12-13, ECF No. 6-1.

15   For all the reasons discussed below, the Court finds that

16   Plaintiff is entitled to a preliminary injunction.[2]

17                          II.  BACKGROUND

18     A.   Plaintiff

19     Plaintiff Kohls is a social media influencer with roughly

20   80,000 followers on X and 360,000 subscribers on YouTube.  Compl.

21   ¶¶ 4, 17, ECF No. 1.  Kohls owns accounts on various platforms,

22   including the X account "@MrReaganUSA" and the screen name "Mr.

23   Reagan" on YouTube and Facebook, where he posts (what he alleges

24   is) humorous political content often featuring politicians

25   mocking their own candidacies.  Mot. at 4.  For example, on July

26

27   [2] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for September 30, 2024.

                                3

26, 2024, Kohls posted a video titled "Kamala Harris Campaign Ad PARODY" to X and YouTube which depicts Vice President Kamala Harris in her campaign ad with artificially altered audio. Id. Significantly, Vice President Harris's voice has been manipulated to say things she has not said including that she is "the ultimate diversity hire," and that she has spent "four years under the tutelage of the ultimate deep state puppet." Id. That same day, Elon Musk shared the video to his X account where his post generated over 100 million views. Compl., ¶ 8. On July 28, 2024 California Governor Gavin Newsom responded to the video on X stating that "[m]anipulating a voice in an 'ad' like [Plaintiff's] should be illegal." Compl., ¶ 9. Following this incident, the California legislature passed two bills addressing artificially manipulated election content, which the Governor signed into law on September 17, 2024. Compl. ¶ 11. One of these bills, AB 2839 "Elections: deceptive media in advertisements," is the focus of Plaintiff's Complaint and the motion for injunctive relief pending before this Court.

     B.   Overview of AB 2839

    AB 2839 aims to regulate a broad spectrum of election-related content that is "materially deceptive." Cal. Elec. Code § 20012(b)(1). In relevant part, AB 2839 provides that "[a] person, committee, or other entity shall not . . . with malice, knowingly distribute an advertisement or other election communication containing materially deceptive content" of a candidate for office "portrayed as doing or saying something that the candidate did not do or say if the content is reasonably likely to harm the reputation or electoral prospects of a

candidate." Id. § 20012(b)(1)(A).  Distribution of materially deceptive content of "[a]n elections official" or "[a]n elected official . . . doing or saying something in connection with an election in California that the elected official did not do or say" is also restricted "if the content is reasonably likely to falsely undermine confidence in the outcome of one or more election contests." Id. § 20012(b)(1)(B),(C).

Materially deceptive content is defined as content that has been "digitally created or modified" such that it "would falsely appear to a reasonable person to be an authentic record of the content depicted in the media." Id. § 20012(f)(8).  These restrictions apply for the 120 days before any election in California and, except for depictions of a candidate, for 60 days after the election.  Id. § 20012(c).  The statute permits any recipient of the specified election-related materially deceptive content to bring suit against the distributor for general or special damages.  Id. § 20012(d).

In terms of carveouts, the statute contains a safe harbor for candidates portraying themselves as long as these videos are labelled with a disclosure "no smaller than the largest font size of other text appearing in the visual media."  Id. § 20012(b)(2). This safe harbor also exempts deceptive content that constitutes satire or parody as long as these media are labelled in compliance with the same aforementioned disclosure requirement. Id. § 20012(b)(3).

///

///

///

1    C.    Motion for Preliminary Injunction

2        Because AB 2839 is the subject of the motion before this

3    Court, the Court analyzes this motion for preliminary injunction

4    based on the relevant allegations contained in Counts IV through

5    VIII of Plaintiff's Complaint.  The Court finds that Plaintiff

6    has sufficiently met the standard for preliminary injunction

7    based on the free speech claims in Count IV (First Amendment

8    facial challenge), Count VII (First Amendment compelled speech

9    claim), and Count VIII (state constitutional challenge).

10   Accordingly, the Court need not reach the remaining as applied

11   challenge (Count V) or the Fourteenth Amendment void for

12   vagueness challenge (Count VI).

13                          III. OPINION

14   A.    Legal Standard

15       Plaintiff seeks a preliminary injunction of the statute

16   because it violates his First and Fourteenth Amendment rights by

17   suppressing his speech or compelling unduly burdensome speech.

18   "A party can obtain a preliminary injunction by showing that

19   (1) it is 'likely to succeed on the merits,' (2) it is 'likely

20   to suffer irreparable harm in the absence of preliminary

21   relief,' (3) 'the balance of equities tips in [its] favor,' and

22   (4) 'an injunction is in the public interest.'"  Disney

23   Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir.

24   2017) ("VidAngel") (quoting Winter v. Nat. Res. Def. Council,

25   Inc., 555 U.S. 7, 20 (2008)).

26       Because Plaintiff's content is subject to the threat of

27   AB 2839's enforcement and Defendants do not dispute Plaintiff's

28   standing to challenge the statute, the Court finds that

1   Plaintiff has standing to challenge AB 2839 and proceeds to the

2   preliminary injunction analysis.  See Mot. at 9.

3         B.    Likelihood of Success on the Merits

4               1.    Kohls is Likely to Succeed in Showing that

5                     AB 2839 Facially Violates the First Amendment

6         "To provide breathing room for free expression," the

7   Supreme Court has "substituted a less demanding though still

8   rigorous standard" for facial challenges.  Moody v. NetChoice,

9   LLC, 144 S.Ct. 2383, 2397 (2024) (cleaned up) (quoting United

10  States v. Hansen, 599 U.S. 762, 769 (2023)); see also Tucson v.

11  City of Seattle, 91 F.4th 1318, 1327 (9th Cir. 2024).  "[I]f the

12  law's unconstitutional applications substantially outweigh its

13  constitutional ones," then a court may sustain a facial

14  challenge to the law and strike it down.  Moody, 144 S. Ct. at

15  2397.  As Moody sets forth, a First Amendment facial challenge

16  has two parts: first, the courts must "assess the state laws'

17  scope"; and second, the courts must "decide which of the laws'

18  applications violate the First Amendment, and . . . measure them

19  against the rest."  Id. at 2398.

20        Plaintiff argues that AB 2839 is unconstitutional because

21  it discriminates against political speech based on content and

22  is overbroad.  See Mot. at 11.  Defendants argue that AB 2839 is

23  a restriction on knowing falsehoods that fall outside of the

24  category of false speech protected by the First Amendment as

25  articulated in United States v. Alvarez, 567 U.S. 709 (2012).

26  See D. Opp'n at 9.

27        While Defendants attempt to analogize AB 2839 to a

28  restriction on defamatory statements, the statute itself does

7

not use the word "defamation" and by its own definition, extends beyond the legal standard for defamation to include any false or materially deceptive content that is "reasonably likely" to harm the "reputation **or** electoral prospects of a candidate."  Cal. Elec. Code § 20012(b) (emphasis added).  At face value, AB 2839 does much more than punish potential defamatory statements since the statute does not require actual harm and sanctions any digitally manipulated content that is "reasonably likely" to "harm" the amorphous "electoral prospects" of a candidate or elected official, Id. § 20012(b)(1)(A), (C).

Moreover, all "deepfakes" or any content that "falsely appear[s] to a reasonable person to be an authentic record of the content depicted in the media" are automatically subject to civil liability because they are categorically encapsulated in the definition of "materially deceptive content" used throughout the statute.  Id. § 20012(f)(8).  Thus, even artificially manipulated content that does not implicate reputational harm but could arguably affect a candidate's electoral prospects is swept under this statute and subject to civil liability.

The statute also punishes such altered content that depicts an "elections official" or "voting machine, ballot, voting site, or other property or equipment" that is "reasonably likely" to falsely "undermine confidence" in the outcome of an election contest.  Id. § 20012(b)(1)(B), (D).  On top of these provisions lacking any objective metric and being difficult to ascertain, there are many acts that can be "do[ne] or [words that can be] sa[id]" that could harm the "electoral prospects" of a public official or "undermine confidence" in an election.  Id.

8

1  § 20012(b)(1)(A)-(D).  Almost any digitally altered content,

2  when left up to an arbitrary individual on the internet, could

3  be considered harmful.  For example, AI-generated approximate

4  numbers on voter turnout could be considered false content that

5  reasonably undermines confidence in the outcome of an election

6  under this statute.  On the other hand, many "harmful"

7  depictions when shown to a variety of individuals may not

8  ultimately influence electoral prospects or undermine confidence

9  in an election at all.  As Plaintiff persuasively points out, AB

10  2839 "relies on various subjective terms and awkwardly-phrased

11  *mens rea*," which has the effect of implicating vast amounts of

12  political and constitutionally protected speech.  Mot. at 16.

13       Defendants further argue that AB 2839 falls into the

14  possible exceptions recognized in Alvarez for lies that involve

15  "some . . . legally cognizable harm."  567 U.S. 709, 719 (2012).

16  However, the legally cognizable harms Alvarez mentions does not

17  include the "tangible harms to electoral integrity" Defendants

18  claim that AB 2839 penalizes.  See D. Opp'n at 2.  Instead, the

19  potentially unprotected lies Alvarez cognized were limited to

20  existing causes of action such as "invasion of privacy or the

21  costs of vexatious litigation"; "false statements made to

22  Government officials, in communications concerning official

23  matters"; and lies that are "integral to criminal conduct," a

24  category that might include "falsely representing that one is

25  speaking on behalf of the Government, or . . . impersonating a

26  Government officer."  567 U.S. at 719-722 (2012).  AB 2839

27  implicates none of the legally cognizable harms recognized by

28  Alvarez and thereby unconstitutionally suppresses broader areas

1 of false but protected speech.

2     Even if AB 2839 were only targeted at knowing falsehoods

3 that cause tangible harm, these falsehoods as well as other

4 false statements are precisely the types of speech protected by

5 the First Amendment.  In <u>New York Times v. Sullivan</u>, the Supreme

6 Court held that even deliberate lies (said with "actual malice")

7 about the government are constitutionally protected.  376 U.S.

8 254, 283 (1964).  The Supreme Court further articulated that

9 "prosecutions for libel on government" — including civil

10 liability for such libel — "have [no] place in the American

11 system of jurisprudence."  376 U.S. 254, 291 (1964) (quoting

12 <u>City of Chicago v. Tribune Co.</u> 307 Ill. 595 (Sup. Ct. 1923));

13 see also <u>Rosenblatt v. Baer</u>, 383 U.S 75, 81 (1966) (holding that

14 "the Constitution does not tolerate in any form" "prosecutions

15 for libel on government").  These same principles safeguarding

16 the people's right to criticize government and government

17 officials apply even in the new technological age when media may

18 be digitally altered: civil penalties for criticisms on the

19 government like those sanctioned by AB 2839 have no place in our

20 system of governance.

21           a.   <u>AB 2839 Does Not Pass Strict Scrutiny and is</u>

22                  <u>Not Narrowly Tailored</u>

23     AB 2839 specifically targets speech within political or

24 electoral content pertaining to candidates, electoral officials,

25 and other election communication, making it a content-based

26 regulation that seeks to limit public discourse.  A content-

27 based regulation "target[s] speech based on its communicative

28 content," restricting discussion of a subject matter or topic.

1  Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015).  "As a

2  general matter," a content-based regulation is "presumptively

3  unconstitutional and may be justified only if the government

4  proves that [it is] narrowly tailored to serve compelling state

5  interests."  Nat'l Inst. of Fam. & Life Advocs., 585 U.S. at 766

6  (quoting Reed, 576 U.S. at 163).  Here, AB 2839 delineates

7  acceptable and unacceptable content based on its purported truth

8  or falsity and is an archetypal content-based regulation that

9  our constitution considers dubious and subject to strict

10  scrutiny.

11       Under strict scrutiny, a state must use the "least

12  restrictive means available for advancing [its] interest."

13  NetChoice, LLC v. Bonta, 113 F.4th 1102, 1121 (9th Cir. 2024)

14  (internal quotation omitted).  The First Amendment does not

15  "permit speech-restrictive measures when the state may remedy

16  the problem by implementing or enforcing laws that do not

17  infringe on speech."  IMDb.com, Inc. v. Becerra, 962 F.3d 1111,

18  1125 (9th Cir. 2020) (citing cases).

19       While the Court gives substantial weight to the fact that

20  the California Legislature has a "compelling interest in

21  protecting free and fair elections," this interest must be

22  served by narrowly tailored ends.  Cal. Elec. Code

23  § 20012(a)(4).  One of the First Amendment's core purposes is

24  "to preserve an uninhibited marketplace of ideas in which truth

25  will ultimately prevail."  McCullen v. Coakley, 573 U.S. 464,

26  476 (2014) (quoting FCC v. League of Women Voters of Cal., 468

27  U.S. 364, 377 (1984)).  It is essential to a healthy democracy

28  that "debate on public issues [] be uninhibited, robust, and

1   wide-open" which may create a necessary sacrifice that such

2   dialogue "include[s] vehement, caustic, and sometimes

3   unpleasantly sharp attacks on government and public officials."

4   <u>New York Times v. Sullivan</u>, 376 U.S. 254, 270 (1964).  "If there

5   be time to expose through discussion the falsehood and

6   fallacies, to avert the evil by the processes of education, the

7   remedy to be applied is more speech, not enforced silence."

8   <u>Whitney v. California</u>, 274 U.S. 357, 377 (1927).

9       Supreme Court precedent illuminates that while a well-

10  founded fear of a digitally manipulated media landscape may be

11  justified, this fear does not give legislators unbridled license

12  to bulldoze over the longstanding tradition of critique, parody,

13  and satire protected by the First Amendment.  YouTube videos,

14  Facebook posts, and X tweets are the newspaper advertisements

15  and political cartoons of today, and the First Amendment

16  protects an individual's right to speak regardless of the new

17  medium these critiques may take.  Other statutory causes of

18  action such as privacy torts, copyright infringement, or

19  defamation already provide recourse to public figures or private

20  individuals whose reputations may be afflicted by artificially

21  altered depictions peddled by satirists or opportunists on the

22  internet.  Additionally, AB 2839 by its own terms proposes other

23  less restrictive means of regulating artificially manipulated

24  content in the statute itself.  The safe harbor carveouts of the

25  statute attempt to implement labelling requirements, which if

26  narrowly tailored enough, could pass constitutional muster.

27  Ultimately, as Plaintiff's motion points out, despite AB 2839's

28  attempts at a limited construction, the statute encompasses a

broad range of election-related content that would be
constitutionally protected even if false and cannot withstand
First Amendment scrutiny.

In addition to encumbering protected speech, there is a
more pressing reason to meet statutes that aim to regulate
political speech, like AB 2839 does, with skepticism.  To quote
Justices Breyer and Alito in Alvarez, "[t]here are broad areas
in which any attempt by the state to penalize purportedly false
speech would present a grave and unacceptable danger of
suppressing truthful speech" 567 U.S. 709, 731 (2012) (Breyer,
J., concurring in the judgment).  In analyzing regulations on
speech, "[t]he point is not that there is no such thing as truth
or falsity in these areas or that the truth is always impossible
to ascertain, but rather that it is perilous to permit the state
to be the arbiter of truth" in certain settings.  Id. at 751-52
(Alito, J., dissenting).

The political context is one such setting that would be
especially "perilous" for the government to be an arbiter of
truth in.  AB 2839 attempts to sterilize electoral content and
would "open[] the door for the state to use its power for
political ends."  Id.  "Even a false statement may be deemed to
make a valuable contribution to public debate, since it brings
about 'the clearer perception and livelier impression of truth,
produced by its collision with error.'"  Id. (quoting New York
Times Co., supra, at 279, n. 19).  When political speech and
electoral politics are at issue, the First Amendment has almost
unequivocally dictated that Courts allow speech to flourish
rather than uphold the State's attempt to suffocate it.

1      Upon weighing the broad categories of election related

2  content both humorous and not that AB 2839 proscribes, the Court

3  finds that AB 2839's legitimate sweep pales in comparison to the

4  substantial number of its applications, as in this case, which

5  are plainly unconstitutional.  Therefore, the Court finds that

6  Plaintiff is likely to succeed on a First Amendment facial

7  challenge to the statute.

8          b.   AB 2839's Disclosure Requirement Constitutes

9               Compelled Speech that is Unduly Burdensome

10     For parody or satire videos, AB 2839 requires a disclaimer

11  to air for the entire duration of a video in text that is no

12  smaller than the largest font size used in the video.  Cal.

13  Elec. Code § 20012(b).  In Plaintiff Kohls' case, this

14  requirement renders his video almost unviewable, obstructing the

15  entirety of the frame.  Compl. ¶ 98.  The obstructiveness of

16  this requirement is concerning because parody and satire have

17  relayed creative and important messages in American politics.

18  As the Supreme Court has noted, "[d]espite their sometimes

19  caustic nature, from the early cartoon portraying George

20  Washington as an ass down to the present day, graphic depictions

21  and satirical cartoons have played a prominent role in public

22  and political debate."  Hustler Magazine v. Falwell, 485 U.S.

23  46, 54 (1988).

24     Defendants do not argue that Plaintiff Kohls' video

25  qualifies as commercial speech and the Court does not find

26  Plaintiff's parody to be an actual advertisement.  While an

27  argument could be made that some parodies or satire are in

28  effect commercial speech, a vast majority of these creations are

14

1 simply humorous artistic endeavors which are not subject to

2 commercial speech regulations.  In a non-commercial context like

3 this one, AB 2839's disclosure requirement forces parodists and

4 satirists to "speak a particular message" that they would not

5 otherwise speak, which constitutes compelled speech that dilutes

6 their message.  See Nat'l Inst. Of Family and Life Advocates v.

7 Becerra, 585 U.S. 755, 766 (2018); X Corp. v. Bonta, 2024 WL

8 4033063, at *6 (9th Cir. Sept. 4, 2024).

9     Even if some artificially altered content were subject to a

10 lower standard for commercial speech or "exacting scrutiny"

11 instead of strict scrutiny as the Defendants argue (D. Opp'n at

12 20) AB 2839 could not meet its "burden to prove that the . . .

13 notice is neither unjustified nor unduly burdensome" under

14 NIFLA, 585 U.S. at 776, or that the disclosure is "narrowly

15 tailored" pursuant to the standard articulated for political

16 speech disclosures in Smith v. Helzer, 95 F.4th 1207, 1214 (9th

17 Cir. 2024).  AB 2839's size requirements for the disclosure

18 statement in this case and many other cases would take up an

19 entire screen, which is not reasonable because it almost

20 certainly "drowns out" the message a parody or satire video is

21 trying to convey.  Thus, because AB 2839's disclosure

22 requirement is overly burdensome and not narrowly tailored, it

23 is similarly unconstitutional.  Id. at 778.

24           2.   Kohls is Likely to Succeed on His California

25               State Constitutional Free Speech Claim

26     Art. 1 Section 2(a) of California's Constitution states

27 that "[e]very person may freely speak, write and publish his or

28 her sentiments on all subjects," and "[a] law may not restrain

1  or abridge liberty of speech. . . ." Cal. Const. art I, § 2(a).

2  Federal courts in California considering state and federal free

3  speech claims have interpreted these rights as largely

4  coextensive, with California's Liberty of Speech Clause

5  providing broader protections than the First Amendment. <u>See</u>

6  <u>e.g.</u>, <u>Bolbol v. City of Daly City</u>, 754 F. Supp. 2d 1095, 1105

7  (N.D. Cal. 2010) (citing <u>Kuba v. 1-A Agr. Ass'n</u>, 387 F.3d 850,

8  856 (9th Cir. 2004) and <u>Los Angeles Alliance for Survival v.</u>

9  <u>City of Los Angeles</u>, 22 Cal.4th 352, 366 (2000)); <u>Campbell v.</u>

10  <u>City of Milpitas</u>, 2015 WL 1359311 at *13 (N.D. Cal. 2015);

11  <u>Citizens for Free Speech, LLC v. Cnty. of Alameda</u>, 114 F. Supp.

12  3d 952, 971-72 (N.D. Cal. 2015).

13      Under current case law, the California state right to

14  freedom of speech is at least as protective as its federal

15  counterpart.  Given that Plaintiff is likely to succeed on the

16  federal First Amendment facial challenge, it follows that

17  Plaintiff is also likely to succeed on his state free speech

18  claim.  In accordance with the First Amendment facial analysis

19  discussed above, the Court finds that AB 2839 is also

20  unconstitutional under California's free speech provision and

21  finds that Plaintiff is likely to succeed on his state

22  constitutional claim.

23      C.   <u>Remaining Preliminary Injunction Factors</u>

24      Plaintiff asserts that the remaining <u>Winter</u> factors -

25  irreparable harm, balance of equities, and the public interest -

26  weigh in favor of granting the motion for preliminary

27  injunction.  Mot. at 21, 22.  Defendants argue that the burden

28  to Plaintiff is minimal and that a balance of the equities and

16

1   public interest factors would only weigh in favor of injunctive

2   relief if Plaintiff were able to show a constitutional

3   violation.  <u>See</u> D. Opp'n at 24.  Once again, Plaintiff's

4   arguments carry the day.

5       As set forth in the initial analysis, Plaintiff has shown a

6   likelihood of success in mounting a First Amendment

7   constitutional challenge to AB 2839.  In terms of irreparable

8   harm, Plaintiff Kohls has also demonstrated that his content is

9   a target of AB 2839 which exposes him to potential civil

10  liabilities and that he faces an imminent and ongoing First

11  Amendment constitutional violation.  Compl. ¶¶ 99-102; Mot. at

12  21.  Both the Ninth Circuit and the Supreme Court "have

13  repeatedly held that the loss of First Amendment freedoms, for

14  even minimal periods of time, unquestionably constitutes

15  irreparable injury." <u>Klein v. City of San Clemente,</u> 584 F.3d

16  1196, 1207-08 (9th Cir. 2009) (internal quotation omitted;

17  citing cases).  Thus, the Court finds that Plaintiff Kohls would

18  experience irreparable harm because his speech would be

19  unconstitutionally chilled if the motion for preliminary

20  injunction were not granted.

21      Once Plaintiff satisfies the first two factors (likelihood

22  of success on the merits and irreparable harm), the traditional

23  injunction test calls for assessing the harm to the opposing

24  party and weighing the public interest.  <u>Winter</u>, <u>supra</u>, at 20.

25  Defendants seem to hedge their analysis of these remaining

26  factors on the assertion that Plaintiff Kohls has not shown a

27  likelihood of success on the merits and do not address whether a

28  balancing of the equities or public interest analysis in the

1  alternative case where a constitutional violation is found would

2  weigh in their favor.  <u>See</u> D. Opp'n at 24.  Thus, the Court is

3  not persuaded that a balance of equities or public interest

4  analysis does not weigh in favor of a preliminary injunction.

5  While a preliminary injunction is pending, there may be some

6  hardship on the State.  The record demonstrates that the State

7  of California has a strong interest in preserving election

8  integrity and addressing artificially manipulated content.

9  However, California's interest and the hardship the State faces

10 are minimal when measured against the gravity of First Amendment

11 values at stake and the ongoing constitutional violations that

12 Plaintiff and other similarly situated content creators

13 experience while having their speech chilled.

14      Even though these last two injunctive factors may merge

15 when the Government is the opposing party," <u>Nken v. Holder</u>, 556

16 U.S. 418, 435 (2009), because Plaintiff Kohls has demonstrated

17 that he is likely to succeed on a facial challenge to AB 2839,

18 it follows that the public interest weighs in favor of a

19 preliminary injunction since "it is always in the public

20 interest to prevent the violation of a party's constitutional

21 rights." <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir.

22 2012) (internal quotations omitted); accord <u>Sammartano v. First</u>

23 <u>Jud. Dist. Court</u>, 303 F.3d 959, 974 (9th Cir. 2002).  As a

24 general matter, the Court recognizes the "significant public

25 interest in upholding free speech principles" where "the ongoing

26 enforcement of [a] potentially unconstitutional regulation[]

27 would infringe not only the free expression interests of

28 plaintiffs, but also the interests of other people subjected to

1    the same restrictions."  Klein, 584 F.3d at 1208 (cleaned up).

2         D.   Severability

3         Defendants argue that AB 2839's severability clause allows

4    the Court to salvage portions of the statute.  However, a

5    severability clause only saves portions of a statute that pass

6    constitutional muster and under California law, the Court can

7    only sever provisions if they are (1) "grammatically

8    functionally and volitionally separable," (2) the "invalid parts

9    can be removed as a whole without affecting the wording or

10   coherence of what remains," and (3) if the "remainder of the

11   statute is complete in itself."  Vivid Ent., LLC v. Fielding,

12   774 F.3d 566, 574 (9th Cir. 2014).

13        As discussed above, critical portions of AB 2839 are

14   invalid because Cal. Elec. Code § 20012(b)(1)(A)-(D) penalizes

15   constitutionally protected speech.  In this instance, the Court

16   finds that the only provision of AB 2839 that could survive

17   constitutional scrutiny or would "have been adopted by the

18   legislative body had the [body] foreseen the partial

19   invalidation of the statute," Vivid Ent., LLC at 576, is the

20   portion of AB 2839 not raised explicitly by either party: the

21   audio only disclosure requirement codified at Cal. Elec. Code

22   § 20012(b)(2)(B)(ii).  This audio only requirement may

23   constitute compelled speech, but under the factors in Helzer, a

24   verbal disclosure at the outset and conclusion of a recording

25   combined with interspersed disclosures in two-minute intervals

26   is on its face reasonable and not unduly burdensome.  95 F.4th

27   1207, 1214 (9th Cir. 2024).

28        Nevertheless, the Court has preliminarily determined that

                                   19

1  the rest of AB 2839 is still unconstitutional.  Contrary to

2  Defendants assertions, Plaintiff contends that he is impacted by

3  the other prohibitions in AB 2839 outside of the "candidate"

4  prong which are codified at Cal. Elec. Code § 20012(b)(1)(B)-

5  (D).  Plaintiff alleges that because he has already posted a new

6  video "lampoon[ing] an elected official," he is also impacted by

7  the "elected official" prong of AB 2839.  See P. Reply at 10.

8  The only portion of AB 2839 Plaintiff might arguably not yet be

9  impacted by is § 20012(b)(1)(B) or (D), but even those

10  provisions are constitutionally suspect on their face because

11  they contain the same content-based language that restricts the

12  mere false depiction of elections officials or voting machines,

13  ballots, voting sites, or other property or equipment.  As

14  Plaintiff points out, "severance is inappropriate if the

15  remainder of the statute would still be unconstitutional,"

16  Tollis Inc. v. County of San Diego, 505 F.3d 935, 943 (9th Cir.

17  2007), and the Court finds that no other parts of AB 2839,

18  except for the audio only disclosure requirement, pass

19  constitutional muster.

20                    IV. CONCLUSION

21      The Court acknowledges that the risks posed by artificial

22  intelligence and deepfakes are significant, especially as civic

23  engagement migrates online and disinformation proliferates on

24  social media.  Against this backdrop, the Court does not enjoin

25  the state statute at issue in this motion lightly, even on a

26  preliminary basis.  However, most of AB 2839 acts as a hammer

27  instead of a scalpel, serving as a blunt tool that hinders

28  humorous expression and unconstitutionally stifles the free and

1  unfettered exchange of ideas which is so vital to American

2  democratic debate.

3      Just as the Court is mindful that legislative leaders

4  enacted AB 2839 and that the State may have a legitimate

5  interest in protecting election integrity, it is equally mindful

6  that the First Amendment was designed to protect citizens

7  against prior restraints and encroachments of speech by State

8  governments themselves.  "[W]hatever the challenges of applying

9  the Constitution to ever-advancing technology, the basic

10  principles" of the First Amendment "do not vary" and Courts must

11  ensure that speech, especially political or electoral speech, is

12  not censored for its ideas, subject matter, or content.  Brown

13  v. Entertainment Merchants Assn., 564 U.S. 786, 790 (2011).

14                          V. ORDER

15      For the reasons set forth above, the Court GRANTS

16  Plaintiff's Motion for a Preliminary Injunction (ECF No. 6-1).

17  Defendants Rob Bonta and Shirley N. Weber and their agents,

18  employees, public servants, officers and persons acting in

19  concert with them are HEREBY ENJOINED from enforcing AB 2839

20  except for the audio only severed portion of the statute.  The

21  bond requirement under Federal Rule 65(c) is waived.

22      IT IS SO ORDERED.

23  Dated: October 2, 2024

24

25  _____

26  JOHN A. MENDEZ
    SENIOR UNITED STATES DISTRICT JUDGE

27

28