Brian R. Chavez-Ochoa (CA Bar No. 190289)*
Chavez-Ochoa Law Offices, Inc.
4 Jean Street, Suite 4
Valley Springs, CA 95252
Telephone: (209) 772-3013
brianr@chavezochoalaw.com

Johannes Widmalm-Delphonse (VA Bar No. 96040)**
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
jwidmalmdelphonse@adflegal.org

Jonathan A. Scruggs (AZ Bar No. 030505)**
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
jscruggs@ADFlegal.org

*Counsel for Plaintiffs The Babylon
Bee, LLC and Kelly Chang Rickert*

Theodore H. Frank (CA Bar 196332)
Adam E. Schulman (DC Bar No. 1001606)**
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: 703-203-3848
ted.frank@hlli.org
adam.schulman@hlli.org

*Counsel for Plaintiff Christopher Kohls*

* *Local Counsel*
**Admitted pro hac vice*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christoper Kohls, | Case No. 2:24-cv-02527-JAM-CKD |
| *Plaintiff,* | **Plaintiffs' Memorandum in Support of Motion for Summary Judgment Against AB 2839** |
| v. | |
| Rob Bonta, et al., | |
| *Defendants.* | **Judge:** John A. Mendez |
| The Babylon Bee, LLC, et al. | Case No. 2:24-cv-02787-JAM-CKD |
| *Plaintiffs,* | |
| v. | |
| Rob Bonta, et al., | |
| *Defendants.* | |
| Rumble Inc., et al. | Case No. 2:24-cv-03315-JAM-CKD |
| *Plaintiffs,* | |
| v. | |
| Rob Bonta, et al. | |
| *Defendants.* | |
| X Corp, | Case No. 2:24-cv-03162-JAM-CKD |
| *Plaintiff,* | |
| v. | |
| Rob Bonta, et al. | |
| *Defendants.* | |

**INTRODUCTION**

History may not repeat itself, but it frequently rhymes. In 1798, John Adams's Federalist administration passed the Sedition Act to prohibit false speech about the government. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 273–74 (1964). That partisan tool to censor speech that the government did not like was thankfully repudiated in the "court of history." *Id.* Now, more than two centuries later, California seeks to prohibit "materially deceptive" speech about candidates, elected officials, and elections with the same misguided zeal as the Federalists. At the preliminary injunction stage, this Court saw the dangerous parallels of allowing "the government to be an arbiter of truth." Order Granting Pls.' Mot. Prelim. Inj. ("Order") 13, Doc. 14. That same analysis applies at the summary judgment stage, warranting a permanent injunction against AB 2839.

Plaintiffs Christopher Kohls, The Babylon Bee ("The Bee"), and Kelly Rickert want to speak about politicians and politics. They regularly create and post articles, videos, and memes on their online accounts about figures like Donald Trump and Gavin Newsom. Much of their content parodies candidates and elected officials to criticize, ridicule, or poke fun. This type of satire has "played a prominent role in public and political debate." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 54 (1988). But AB 2839 regulates or prohibits these posts before and after elections because they qualify as "materially deceptive" and are "likely to harm the … electoral prospects of a candidate." Cal. Elec. Code § 20012(b)(1).

"[W]hatever the challenges of applying the Constitution to ever-advancing technology" like digitally altered content, "the basic principles of the First Amendment do not vary." Order 21 (cleaned up). And AB 2839 suffers from a host of constitutional infirmities. It restricts and compels core political speech based on content, viewpoint, and speaker identity. It ignores less-restrictive alternatives that don't stifle free expression. It's overbroad, prohibiting much protected speech like

hyperbole and parody campaign ads. It's also vague, policing what's true or false based on subjective terms, like "materially deceptive" and "reasonably likely to harm … electoral prospects" that give enforcement officials unbridled discretion to suppress speech that's critical of the government.

"[S]ettled principles about freedom of expression … have served the Nation well over many years, even as one communications method has given way to another." *Moody v. NetChoice, LLC*, 603 U.S. 707, 733–34 (2024). But California seeks awesome powers to regulate "disinformation or misinformation" and shows no signs of relenting. *X Corp. v. Bonta*, 116 F.4th 888, 896, 904 (9th Cir. 2024) (ordering injunction against enforcement of California law mandating disclosures by social media companies); *McDonald v. Lawson*, 94 F.4th 864, 868 (9th Cir. 2024) (mooting challenge against California law censoring speech about COVID-19). This Court already preliminary enjoined California's misguided efforts to censor political speech here. It should grant Plaintiffs summary judgment, declare AB 2839 facially invalid, and permanently enjoin Defendants from enforcing it against Plaintiffs or against anyone else.

## STATEMENT OF FACTS

### I.    Plaintiffs speak and post about politics.

Kohls, The Bee, and Rickert speak and post content about political candidates, elected officials, and elections. Statement of Undisputed Facts Supp. Pls.' Mots. Summ. J. ("PSUF") ¶¶ 16, 24, 53, 75. Under the handle "MrReagan," Kohls is a content-creator who posts parody videos on YouTube, Rumble, and X, commenting on and satirizing political figures and policies. *Id.* ¶¶ 54–60. The Bee operates a news site, babylonbee.com, with the tagline "Fake news you can trust." *Id.* ¶¶ 15–16. The Bee writes satirical articles about faith, politics, and culture on its website, and publishes its articles on X, Facebook, and Instagram, in addition to

posting videos on Rumble and YouTube. *Id.* ¶¶ 16–18. Rickert is an attorney residing in California who writes a blog commenting on politics, elections, and culture. *Id.* ¶¶ 66, 69–75. She also posts and reposts content like memes, videos, and other satirical (and not satirical) content about candidates and elected officials on X, Facebook, and Instagram to thousands of subscribers and followers. *Id.* ¶¶ 77–81. Plaintiffs all utilize satire and parody to expose absurdity, mock foolishness, and highlight hypocrisy in politics and culture.

## II. Plaintiff Kohls's first Harris Parody Video catalyzes AB 2839's passage.

On July 26, 2024, Kohls posted a fictitious ad parodying Kamala Harris's campaign ("Harris Parody Video") on X, Rumble, and YouTube. *Id.* ¶ 56. Kohls created the video using Artificial Intelligence ("AI") to mimic then-Vice President Harris's voice and by using real clips of Harris speaking at campaign rallies, news conferences, and other events. *Id.* ¶ 57. In the video, "Harris" makes exaggerated and hyperbolic statements, like thanking President Biden for exposing "his senility at the debate" and claiming she doesn't "know the first thing about running the country." *Id.*

That same day, Elon Musk, the owner of X, reposted Kohls's video, causing it to go viral. *Id.* ¶¶ 56, 150. Two days later, Governor Newsom posted a screenshot of a news story discussing Musk's repost of the Harris Parody Video, asserting that the video "should be illegal" and promising to sign "a bill in a matter of weeks to make sure it is." *Id.* ¶ 151.

## III. AB 2839 targets political speech.

Taking its cue from Governor Newsom, the California legislature quickly passed AB 2839. *Id.* ¶¶ 152–53. On September 17, Newsom signed AB 2839 into law, and it immediately went into effect. *Id.* ¶ 154. On that same day, Newsom made another X post reposting his comment from July and declaring that he had

"just signed a bill to make [the Harris Parody Video] illegal in the state of California." *Id.* ¶ 155. AB 2839 prohibits certain speech about politics and politicians and threatens those who post prohibited content with significant penalties.

### A.    AB 2839 prohibits speech related to elections.

AB 2839 prohibits "materially deceptive content," meaning "audio or visual media that is intentionally digitally created or modified, … such that the content would falsely appear to a reasonable person to be an authentic record of the content depicted in the media." Cal. Elec. Code § 20012(f)(8)(A). AB 2839 bans any person or entity from "knowingly" distributing with "malice" "an advertisement or other election communication containing materially deceptive content of":

(A) "A candidate for … office in California portrayed as doing or saying something that the candidate did not do or say if the content is reasonably likely to harm the reputation or electoral prospects of a candidate";

(B) "An elections official portrayed as doing or saying something in connection with an election in California that the elections official did not do or say if the content is reasonably likely to falsely undermine confidence in the outcome of one or more election contests";

(C) "An elected official portrayed as doing or saying something in connection with an election in California that the elected official did not do or say if the content is reasonably likely to harm the reputation or electoral prospects of a candidate or is reasonably likely to falsely undermine confidence in the outcome of one or more election contests"; or

(D) "A voting machine, ballot, voting site, or other property or equipment related to an election in California portrayed in a materially false way if the content is reasonably likely to falsely undermine confidence in the

outcome of one or more election contests." *Id.* § 20012(b)(1).

"Advertisement" and "election communication" include "any general or public communication … that is broadcast by or through television, radio, telephone, or text, distributed through the internet, or disseminated by print media, including billboards, video billboards or screens, and other similar types of communications" that concern candidates, ballot measures, or voting. *Id.* § 20012(f)(1), (5).

## B.    AB 2839 prohibits satire or parody without a disclaimer.

An early version of AB 2839 exempted "satire or parody." PSUF ¶ 163. But after Gov. Newsom's X post condemning the Harris Parody Video, the Senate struck the exemption. *Id.* ¶¶ 162–63.

For satirical or parodic content to comply with the law, "the communication" must "include[] a disclosure stating 'This ____ has been manipulated for purposes of satire or parody.'" Cal. Elec. Code § 20012(b)(3). The disclaimer must "appear in a size that is easily readable by the average viewer and no smaller than the largest font size of other text appearing in the visual media." *Id.* § 20012(b)(2)(B)(i). It must "appear for the duration of the video." *Id.* And for audio-only content, "the disclosure shall be read in a clearly spoken manner and in a pitch that can be easily heard by the average listener, at the beginning of the audio, at the end of the audio, and, if the audio is greater than two minutes in length, interspersed within the audio at intervals of not greater than two minutes each." *Id.* § 20012(b)(2)(B)(ii).

## C.    AB 2839 threatens speakers with lawsuits, damages, equitable relief, and attorney's fees.

AB 2839 threatens violators with several forms of punishment. It allows any "recipient of materially deceptive content … , candidate or committee participating in the election, or elections official" to sue someone who posts or reposts prohibited content. *Id.* § 20012(d). The definition of "recipient" extends to a "person who views, hears, or otherwise perceives an image or audio or video file" prohibited by AB 2839.

1    *Id.* § 20012(f)(9). A plaintiff may seek equitable relief and request "general or

2    special damages." *Id.* § 20012(d)(1), (2). Further, the court "shall … award a

3    prevailing plaintiff reasonable attorney's fees and costs." *Id.*

### D.    AB 2839 applies differently to different speakers.

4

5    AB 2839 applies differently depending on who is speaking. *Id.* § 20012(a)(4).

6    First, candidates can portray "themself as doing or saying something that the

7    candidate did not do or say if the content includes a disclosure stating 'This ____ has

8    been manipulated.'" *Id.* § 20012(b)(2). The disclaimer must meet the same size and

9    duration requirements described above for satire and parody. *Id.* § 20012(b)(2)(B).

10    Second, AB 2839 places relaxed requirements on broadcasting stations

11    covering news events. AB 2839 "does not apply to a broadcasting station" covering a

12    news activity if it "clearly acknowledges … in a manner that can be easily heard or

13    read by the average listener or viewer, that the materially deceptive content does

14    not accurately represent any actual event, occurrence, appearance, speech, or

15    expressive conduct." *Id.* § 20012(e)(1). AB 2839 also doesn't apply to broadcasters

16    "paid to broadcast materially deceptive content" so long as the broadcaster has

17    "prohibition and disclaimer requirements" consistent with AB 2839 and provides

18    those disclaimer requirements to its advertisers. *Id.* § 20012(e)(2). Broadcasters are

19    also exempt if federal law requires them to air the prohibited content. *Id.* Finally,

20    broadcasters and "internet websites" are exempt from "general or special damages"

21    if they publish prohibited content that they "did not create." *Id.* § 20012(d)(2).

22    Third, AB 2839 exempts print or online periodicals "if the publication clearly

23    states that the materially deceptive content does not accurately represent any

24    actual event, occurrence, appearance, speech, or expressive conduct." *Id.*

25    § 20012(e)(3).

26    Fourth, the law does not apply to "an interactive computer service, as defined

27

28

Memorandum in support of Plaintiffs' Motion for Summary Judgment

in Section 230(f)(2) of Title 47 of the United States Code." *Id.* § 20012(e)(4).

**IV.    AB 2839 regulates Plaintiffs' speech.**

The Bee, Kohls, and Rickert have all posted content covered by AB 2839 and intend to do so during future elections. PSUF ¶¶ 24–27, 29, 56, 58–60, 64, 98–102. Before, during, and after the 2024 election, The Bee posted satirical articles about Presidential candidates Donald Trump and Kamala Harris, Vice Presidential candidates J.D. Vance and Tim Walz, President Biden, and voting in California, among other topics. *Id.* ¶¶ 25–26. Those articles include digitally altered images of the candidates or other elected officials discussing the candidates. *Id.* ¶¶ 21, 27.

Many have mistaken The Bee's satirical articles for news articles. *Id.* ¶ 31. For example, Donald Trump once presumed an article titled "Twitter Shuts Down Entire Network to Slow Spread Of Negative Biden News" was a real news article and retweeted it. *Id.* ¶ 32. The Bee's articles have also spurred outlets like Snopes and USA Today to check them for factual accuracy. *Id.* ¶¶ 33–36. Snopes and USA Today have fact-checked dozens of satirical articles posted by The Bee, including articles titled "Ocasio-Cortez Appears on 'Price Is Right,' Guesses Everything is Free"; "CNN Purchases Industrial-Sized Washing Machine To Spin News Before Publication"; and "Ninth Circuit Court Overturns Death of Ruth Bader Ginsburg." *Id.* USA Today consulted fifteen different sources before concluding that the Justice Ginsburg article was, in fact, satire. *Id.* ¶ 37.

During the 2024 election, Kohls posted six Kamala Harris parody campaign ads featuring the AI-generated "voice" of Kamala Harris. *Id.* ¶ 58. Kohls also posted other political videos, many (but not all) containing AI-generated content, like a parody of a Kamala Harris/Tim Walz phone call, a satirical speech by Elizabeth Warren endorsing Kamala Harris, another parody campaign ad featuring Joe Biden gaffes, and a satirical video of Governor Newsom defending California's attempts to

censor satire and parody. *Id.* ¶¶ 59–60. Except for the fictitious Biden ad, Kohls labeled all of these videos as "parody," while none of them have (or reasonably can have) AB 2839's required disclaimer. *Id.* ¶¶ 56, 58–59.

Before Gov. Newsom signed AB 2839, Rickert posted or reposted digitally altered memes and other content about Kamala Harris, Tim Walz, politics, society, and cultural and moral issues. *Id.* ¶ 81. She discovered Kohls's video from Gov. Newsom's September 17 X post. *Id.* ¶ 86. She wanted to repost this and other Kohls videos about Kamala Harris. *Id.* ¶¶ 83–85. But she refrained because of AB 2839. *Id.* ¶¶ 82, 87. After the election, and after this Court preliminarily enjoined enforcement of AB 2839, Rickert reposted a digitally altered video depicting a fictitious conversation between President Trump and former President Obama at former President Carter's funeral. *Id.* ¶ 103a. She also reposted The Bee's article *Gavin Newsom Demands Answers from Whoever's in Charge of California*, which features a digitally altered image of Governor Newsom. *Id.* ¶ 103b.

The Bee, Kohls, and Rickert intend to post content similar to the content described above during future elections—including content about elected officials and candidates appearing on the ballot in California. *Id.* ¶¶ 29, 64, 99–102. Should former Vice President Harris run for California governor in 2026, *see id.* ¶ 104, Kohls's parody campaign ads, The Bee's satirical articles and memes about Harris, and Rickert's social media posts about Harris, all of which remain publicly available online, will again violate AB 2839.

Neither The Bee, Kohls, nor Rickert want to, nor intend to, include AB 2839's required disclaimer in their future posts. *Id.* ¶¶ 191–95. Nor do The Bee or Kohls intend to refrain from posting satirical or other content that violates AB 2839. *Id.* ¶¶ 196–97.

**V.    The California legislature acknowledges that AB 2939 restricts core political speech.**

Through the legislative process, California's legislature acknowledged AB 2839's regulation of speech. *E.g.*, *Id.* ¶ 156. For example, the Assembly Committee on the Judiciary published an analysis of the bill, acknowledging that AB 2839 "implicates both the right to speak about elections, as well as the right to receive information regarding them," attempted to regulate "political speech," and would be subject to "strict scrutiny." *Id.* ¶ 157. The bill still advanced with supermajorities in both houses. *Id.* ¶ 165.

**VI.    This Court preliminarily enjoined AB 2839 because it attempts to "bulldoze" the First Amendment.**

Kohls, The Bee, and Rickert all filed suit and moved for a preliminary injunction against AB 2839. *See generally* V. Compls., Docs. 1, 21. This Court granted Kohls's motion to facially enjoin enforcement of AB 2839 (Order 21) and later expressly extended this preliminary injunction to protect The Bee and Rickert. *See* Order on Inj., Doc. 22 at 3.

In its initial Order, this Court held that AB 2839 facially restricts speech by "specifically target[ing] speech within political or electoral content pertaining to candidates, electoral officials, and other election communication." Order 10. This was a "content-based regulation that seeks to limit public discourse." *Id.* Further, California's interest in "free and fair elections … does not give legislators unbridled license to bulldoze over the longstanding tradition of critique, parody, and satire protected by the First Amendment." *Id.* at 11–12. The Court also ruled that California has less-restrictive means to achieve its interest, like counter-speech, showing that AB 2839 fails to satisfy strict scrutiny. *Id.* at 10–14.

The Court also preliminarily enjoined the satire-or-parody disclaimer requirement. *Id.* at 15. That "requirement forces parodists and satirists to speak a

9

Memorandum in support of Plaintiffs' Motion for Summary Judgment

particular message that they would not otherwise speak, which constitutes

compelled speech that dilutes their message." *Id.* at 15 (cleaned up). The disclaimer

rule also fails narrow tailoring because its "size requirements for the" disclaimer

"would take up an entire screen," drowning out the speaker's message. *Id.*

After entry of the preliminary injunction, the parties agreed to proceed to

summary judgment. *See* Order Re: Stipulation for Summ. J. Briefing Schedule, Doc.

26; Order to Modify Summ. J. Briefing Schedule, Doc. 43.

## STANDARD OF REVIEW

The Court "shall grant summary judgment" if the Plaintiffs show "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

AB 2839 is unconstitutional. (I) It regulates core political speech protected

under the First Amendment and Article 1, Section 2 of the California Constitution

and fails strict scrutiny. (II) It's overbroad and vague on its face and as applied. (III)

Plaintiffs can also show they're entitled to permanent relief. For these reasons, the

Court should enter summary judgment in favor of Plaintiffs, permanently enjoin

Defendants' enforcement of AB 2839, and declare AB 2839 unconstitutional facially

and as applied to Plaintiffs.

## I.    AB 2839 unconstitutionally regulates protected speech.[1]

AB 2839 restricts certain speech about politics and politicians, discriminating

---

[1] AB 2839 violates Article I, Section 2, of the California Constitution for all of the same reasons that it violates the First Amendment of the United States Constitution. *See, e.g.,* Order 16 ("Under current case law, the California state right to freedom of speech is at least as protective as its federal counterpart."); *City of Montebello* v. *Vasquez*, 1 Cal. 5th 409, 421 n.11 (2016) ("[T]he California liberty of speech clause is broader and more protective than the free speech clause of the First Amendment."); *Delano Farms Co.* v. *Cal. Table Grape Comm'n*, 4 Cal. 5th 1204,

based on content, viewpoint, and speaker. It compels speech too. All of which calls for the strictest of scrutinies. *E.g., Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 791 (9th Cir. 2022) (explaining content-based speech compulsion warrants strict scrutiny); *Boyer v. City of Simi Valley*, 978 F.3d 618, 621–23 (9th Cir. 2020) (explaining ordinance that "prefers speakers likely to spread [government-favored] messages" triggers strict scrutiny). Here, the law is "presumptively invalid," and California "bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816–17 (2000) (cleaned up). Because it cannot meet this high bar, this Court should enjoin the statute on this basis alone.

## A.    AB 2839 restricts core political speech.

"Political speech … is at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (cleaned up). It "is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United v. Fed. Election Comm'n*, 339 (2010). So the First Amendment broadly protects speech about political candidates, ballot measures, and controversial political topics "to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (cleaned up). Laws that single out political speech for disfavored treatment "strike[] at the heart of the First Amendment." *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1223 (9th Cir. 2019).

AB 2839 facially restricts political speech. It prohibits "materially deceptive" audio or visual communications that portray a candidate or elected official doing or saying things he or she didn't do or say and that is likely to harm a candidate's

---

1221 (2018) ("[O]ur case law interpreting California's free speech clause has given respectful consideration to First Amendment case law for its persuasive value.").

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1    reputation or electoral prospects. Cal. Elec. Code § 20012(b)(1)(A), (C). It also

2    prohibits similarly deceptive content of certain public officials, ballots, or voting

3    mechanisms that is "reasonably likely to falsely undermine confidence in the

4    outcome" of an election. *Id.* § 200012(b)(1)(B), (C), (D).

5        This prohibition covers satire and parody by explicitly requiring such speech

6    to include a disclaimer. *Id.* § 20012(b)(3). For example, Kohls and The Bee created

7    fictitious ads parodying Kamala Harris, Gavin Newsom, and Elizabeth Warren

8    during the 2024 election. PSUF ¶¶ 21, 56, 59. Because these ads used generative-AI

9    to reproduce the candidate or official's voice, they "falsely appear[ed] … authentic."

10   Cal. Elec. Code § 20012(f)(8); *see*, *e.g.* PSUF ¶ 62. And because the videos portrayed

11   these politicians saying things they did not say without the prescribed disclaimer,

12   they violated the law. Cal. Elec. Code § 20012(b).

13       Defendants agree. According to the State, a "voter who encountered [the

14   Harris Parody Video] … *could have* concluded … that it was real." Opp'n Pls.' Mot.

15   Prelim. Inj. ("Opp'n to MPI") 21, Doc. 9 (emphasis added). Thus, a "parody or satire

16   that falls within the scope of AB 2839" must include "express notice" by including a

17   disclaimer that the "content has been manipulated." *Id.*

18       Worse still, AB 2839 deems parody and satire "materially deceptive" even

19   when most people understand it's a joke. After all, a "reasonable person"

20   understands that a satire or parody cannot "reasonably [be] interpreted as stating

21   actual facts." *Hustler*, 485 U.S. at 50. But the law does not care whether the parody

22   actually fools someone. Instead, content need only "falsely appear … authentic" *in*

23   *some respect* to violate the law. Cal. Elec. Code § 20012(f)(8). Since parody "imitates

24   the characteristic style of an author or a work for comic effect or ridicule," much

25   digitally created parody will run afoul of the law. *Campbell v. Acuff-Rose Music,*

26   *Inc.*, 510 U.S. 569, 580 (1994).

27       Restricting political satire and parody campaign ads regulates speech that

28

lies at the heart of the First Amendment. "Nothing is more thoroughly democratic than to have the high-and-mighty lampooned and spoofed." *Falwell v. Flynt*, 805 F.2d 484, 487 (4th Cir. 1986) (Wilkinson, J., dissenting from denial of rehearing). At its core, speech ridiculing politicians and elected officials is one form of criticizing the government. And "civil penalties for criticisms on the government like those sanctioned by AB 2839 have no place in our system of governance." Order 10.

Defendants seem to believe that false speech isn't generally protected. But that's incorrect. As this Court already recognized, there is no categorical First Amendment exception for false speech. Order 9–10 (citing *United States v. Alvarez*, 567 U.S. 709, 719–22 (2012) (plurality)). Parody and satire are the most obvious examples of protected speech that isn't literally true. *Hustler,* 485 U.S. at 50. Same goes for hyperbole and even "innocent mistake[s] of fact." *Old Dominion Branch No. 496*, *Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 277 (1974). "[S]ome false statements are inevitable if there is to be an open and vigorous expression of views…." *Alvarez*, 567 U.S. at 718 (plurality).

Indeed, false speech can be regulated *only* if it falls within historical exceptions to the First Amendment for things like defamation or fraud. *Id.* at 717 (plurality). These "traditional categories [of expression] long familiar to the bar" are "well-defined and narrowly limited." *United States v. Stevens*, 559 U.S. 460, 468–69 (2010). And they "typically require proof of specific or tangible harm" or "a material benefit to the speaker." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194–95 (9th Cir. 2018); *Alvarez*, 567 U.S. at 719 (Breyer, J., concurring) (same). But California justifies its political deepfake ban by pointing to decidedly *intangible* types of harm: unquantifiable harm to a depicted candidates' electoral prospects and the vague harm to "free and fair" elections. Cal. Elec. Code § 20012(a). *Alvarez* would not have come out the way it did if vague "harms to society" (Opp'n to MPI 12) were sufficient.

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1    And AB 2839 goes far beyond any historical exceptions. Take defamation.

2  California's law "extends beyond the legal standard for defamation" in several ways.

3  Order 8. It doesn't just protect a candidate's reputation—the "essence of libel."

4  *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 275 (1971). Instead, it seeks to protect the

5  "reputation *or* electoral prospects of a candidate," as well as the public's "confidence"

6  in an election. Cal. Elec. Code § 20012(b)(1) (emphasis added). The law covers

7  content like satire that isn't even "reasonably capable of sustaining a defamatory

8  meaning." *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005) (cleaned up). It

9  doesn't require proof of an "actual injury" either. *Gertz v. Robert Welch, Inc.*, 418

10  U.S. 323, 349 (1974). It's enough if content is "'reasonably likely' to 'harm' the

11  amorphous 'electoral prospects' of a candidate or elected official." Order 8.

12    That is a far-reaching and unbounded standard. Unlike defamation law, AB

13  2839 doesn't limit potential plaintiffs to persons actually harmed by false

14  statements. Instead, it deputizes the government or any "recipient of materially

15  deceptive content" to sue. Cal. Elec. Code § 20012(d)(1). Giving the government this

16  type of "broad censorial power" is "unprecedented in [the Supreme] Court's cases or

17  in our constitutional tradition." *Alvarez*, 567 U.S. at 723 (plurality). Plus, allowing

18  "any person with knowledge of the [false statement] to file a complaint" creates the

19  "real risk" of malicious lawsuits that chill protected speech. *Susan B. Anthony List

20  v. Driehaus*, 573 U.S. 149, 164 (2014) (cleaned up).

21    Analogizing to fraud doesn't work either. Idaho attempted a similar

22  rhetorical move when it sought to outlaw misrepresentations made to gain entry to

23  agricultural production facilities. *Wasden*, 878 F.3d at 1194. But the Ninth Circuit

24  recognized that "some lies" to gain entry to a building "quite simply do not inflict

25  any material or legal harm on the deceived party." *Id.* at 1196. So too here. Fraud

26  typically requires proof of materiality *plus* reliance *plus* an actual injury. *Alvarez*,

27  567 U.S. at 734 (Breyer, J., concurring) (citing Restatement (Second) of Torts § 525

28

14

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1   (1976)). But unlike fraud to "secure moneys," "obtain records or gain employment,"

2   AB 2839 prohibits lies that don't have any material effect let alone cause any

3   material harm to the portrayed subject. *Wasden*, 878 F.3d at 1194–95.

4       For example, it's implausible that Kohls's fictitious campaign ads or The

5   Bee's satirical news articles materially affected Kamala Harris's electoral prospects

6   by duping voters into believing something false about her. To be sure, someone

7   somewhere may have missed the joke. *See Farah v. Esquire Mag.*, 736 F.3d 528, 536

8   (D.C. Cir. 2013) ("[I]t is the nature of satire that not everyone 'gets it'

9   immediately."). But that's not the test. *Id.* What matters is that a reasonable person

10  understands that the videos aren't meant to be taken literally. *Id.* at 538 (protecting

11  satire because reader "could not reasonably have taken the story literally"); *Hustler*,

12  485 U.S. at 50 (protecting parody that "could not reasonably have been interpreted

13  as stating actual facts").

14      Given that these analogies don't work, California is really arguing for

15  "government authority to compile a list of subjects about which false statements are

16  punishable." *Alvarez*, 567 U.S. at 723 (plurality). Accepting that argument would

17  lead to the slipperiest of slopes. It would allow the state to prohibit misinformation

18  about the COVID-19 pandemic that might harm the public health. *See Wash.*

19  *League for Increased Transparency & Ethics v. Fox News*, 19 Wash. App. 2d 1006

20  (2021) (rejecting argument that false news about pandemic is "analogous" to

21  defamation and other unprotected speech). It could perhaps sanction false

22  statements about public figures that cause emotional distress. *Hustler*, 485 U.S.

23  at 50 (rejecting this type of claim). And it might even permit the State to enact

24  modern-day blasphemy laws prohibiting "misinformation" about religion or gender

25  ideology, "not to force conscience by punishment, but to preserve the peace of the

26  country." *Updegraph v. Commonwealth*, 11 Serg. & Rawle 394, 1824 WL 2393, at

27  *12 (Pa. 1824) (describing blasphemy as "licentiousness, endangering the public

28

15

Memorandum in support of Plaintiffs' Motion for Summary Judgment

peace").[2] California seeks power that "has no clear limiting principle"—something the Constitution does not tolerate. *Alvarez*, 567 U.S. at 723 (plurality).

At base, California is arguing, as have a precious few states before it cracking down on "election misinformation," that "the election context gives the government broader authority to restrict speech." *Commonwealth v. Lucas*, 34 N.E.3d 1242, 1253–54 (Mass. 2015) (calling this argument "remarkable"). In fact, "[t]he opposite is true." *Id.*; *accord 281 Care Comm. v. Arneson*, 766 F.3d 774, 782–83 (8th Cir. 2014) (applying a higher standard of scrutiny to election misinformation regulation than to regulation of other falsehoods). "[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (cleaned up). "It is essential to a healthy democracy that 'debate on public issues be uninhibited, robust, and wide-open.'" Order 11–12 (quoting *Sullivan*, 376 U.S. at 270). "Regulations of political speech therefore trench upon an area in which the importance of First Amendment protections is at its zenith." *Wash. Post v. McManus*, 944 F.3d 506, 513–14 (4th Cir. 2019) (cleaned up). In fact, "it might be maintained that political speech simply cannot be banned or restricted as a categorical matter." *Citizens United*, 558 U.S. at 340. Yet California wants to police the public discourse using powers that can be "manipulated easily into a tool for subverting its own justification … through the chilling of core political speech."

---

[2] Or, consider the case of Rodrigo Iván Cortés of Mexico, who was convicted of "gender-based political violence" for misgendering someone. *See* https://adfinternational.org/news/mexican-civil-society-leader-found-guilty-of-gender-based-political-violence-for-tweets. Or, consider that in Germany, citizens can be arrested for online "hate speech." *See* Strafgesetzbuch [StGB] [Code of Criminal Procedure], § 130, https://www.gesetze-im-internet.de/englisch_stgb/englisch_stgb.html#p1333 [Ger.], *see* https://www.cbsnews.com/news/policing-speech-online-germany-60-minutes-transcript/ (describing police raid because suspect "post[ed] a racist cartoon online").

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1   *Lucas*, 34 N.E.3d at 1255. Like the laws in *281 Care Committee* and *Lucas*, AB 2839

2   restricts political speech about candidates, campaigns, and issues and so "tamper[s]

3   with the right of citizens to choose who shall govern them." *FEC v. Cruz*, 596 U.S.

4   289, 305–06 (2022) (cleaned up).

   **B.    AB 2839 regulates speech based on content, viewpoint, and**
5          **speaker.**

6       AB 2839's selective application to certain types of speech spells certain doom.

7   Even if AB 2839 regulated *only* unprotected false speech, it still unconstitutionally

8   "singles out certain speech within that category for special opprobrium based on"

9   content, "the speaker's viewpoint," and the speaker's identity. *Chaker v. Crogan*,

10  428 F.3d 1215, 1227 (9th Cir. 2005). Viewpoint discrimination is "uniquely harmful

11  to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187

12  (2024). Thus, if a law is "viewpoint-based, it is unconstitutional." *Iancu v. Brunetti*,

13  588 U.S. 388, 393 (2019); *accord Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018)

14  ("prohibited"); *Matal v. Tam*, 582 U.S. 218, 243 (2017) (plurality) ("forbidden"); *see*

15  *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1124 (9th Cir. 2023) (VanDyke, J.,

16  concurring) (collecting cases suggesting viewpoint discrimination is "per se

17  invalid"). But, at the very least, it triggers strict scrutiny. *Boyer*, 978 F.3d at 621.

18      First, the law facially regulates based on content because the "law applies to

19  particular speech because of the topic"—a political candidate, elected official,

20  elections official, ballot, or voting mechanism. *Reed v. Town of Gilbert*, 576 U.S. 155,

21  163 (2015). Targeting "political or electoral content" like this makes the law a

22  "content-based regulation that seeks to limit public discourse." Order 10.

23      Second, AB 2839 regulates based on viewpoint, an "egregious form of content

24  discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–

25  830 (1995). Political content that is "positive about a person" and bolsters their

26  reputation—like memes of Trump praying or playing professional football—are

27

28

                                    17

        Memorandum in support of Plaintiffs' Motion for Summary Judgment

allowed, but "derogatory" political content that harms a candidate's prospects for election—like memes of Harris in a red communist uniform—are not. *Iancu*, 588 U.S. at 393 (cleaned up); *see* PSUF ¶¶ 88, 227. Similarly, AB 2839 countenances AI-generated videos that *promote* confidence in elections but prohibits those that "undermine confidence" in those elections. These distinctions are the "essence of viewpoint discrimination." *Id.* (citation omitted); *Grimmett v. Freeman*, 59 F.4th 689, 694–96 (4th Cir. 2023) (invalidating law prohibiting "derogatory reports" about political candidate).

Third, AB 2839 draws distinctions based on the speaker. Candidates themselves can post fake content portraying themselves by attaching a short disclaimer. *See* Cal. Elec. Code § 20012(b)(2). Broadcasters can share fake content with a disclaimer in their own words rather than California's. *Id.* § 20012(e)(1). And "broadcast[] station[s]" and "internet website[s]" that distribute but do not create prohibited content are exempt from "general or special damages." *Id.* § 20012(d)(2)(B). Plaintiffs, on the other hand, can create or post similar content only if it qualifies as parody or satire and only if they also include the prescribed disclaimer that matches the State's word, font, and duration requirements, *id.* § 20012(b)(2)–(3).

The "Court's precedents are deeply skeptical of laws that distinguish among different speakers." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra* (*NIFLA*), 585 U.S. 755, 777–78 (2018) (cleaned up). They "are all too often simply a means to control content." *Reed*, 576 U.S. at 170 (quoting *Citizens United*, 558 U.S. at 340). California suggested as much when it lamented the declining role of "traditional media outlets serving as gatekeepers of information." PSUF ¶ 157. By giving special treatment to candidates who are presumably speaking highly about themselves, California favors "happy-talk." *Matal*, 582 U.S. at 246 (plurality). Plus, "quite apart from the purpose or effect of regulating content" it's also "wrong" to prefer certain

18

Memorandum in support of Plaintiffs' Motion for Summary Judgment

speakers over others. *Citizens United*, 558 U.S. at 340. "By taking the right to speak from some and giving it to others," the government upsets the marketplace of ideas and "deprive[s] the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Id*. at 340–41.

### C.  AB 2839 compels speech.

AB 2839 doesn't just restrict speech—it also compels it. The state compels speech when it requires someone to say something that affects the speaker's message. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572–73 (1995). And a speaker's right to choose her own message applies "equally to statements of fact the speaker would rather avoid." *Hurley*, 515 U.S. at 573.

Forced disclaimers—even purely factual ones—are a form of compelled speech. Requiring pregnancy clinics to post "government-scripted" notices about the services they provide compels speech. *NIFLA*, 585 U.S. at 777. So does forcing professional fundraisers to disclose what percentage of donations go to charitable causes. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797–98 (1988) ("[W]e would not immunize a law … requiring a speaker favoring an incumbent candidate to state during every solicitation that candidate's recent travel budget.").

AB 2839's forced disclaimer similarly compels speech. Every "materially deceptive" satirical piece about political candidates or elected officials must include a disclaimer that the image "has been manipulated for purposes of satire or parody." Cal. Elec. Code § 20012(b)(3). The disclaimer must be "no smaller than the largest font size of other text," "shall appear for the duration of [a] video," and must be "read in a clearly spoken manner and … pitch … at the beginning of the audio, at the end of the audio, and … interspersed within the audio" every two minutes. *Id*. § 20012(b)(2). This compelled disclaimer regulates based on content. "When a state

compels individuals to speak a particular message, the state alters the content of their speech, and engages in content-based regulation." *X Corp.*, 116 F.4th at 900 (holding law requiring social media companies to disclose content-moderation policies was content-based) (cleaned up).

AB 2839 thus forces Plaintiffs to say things they don't want to say. Order 15. Take The Bee's fake campaign ad of Governor Newsom endorsing Kamala Harris. PSUF ¶ 21. It depicts alternating images of smiling citizens and trash-littered streets, overlaid with Newsom's over-the-top reassurances that the ad contains his "authentically recorded" "100% real message" "without the assistance of any AI whatsoever." *Id.* AB 2839 requires The Bee to include California's government-scripted disclaimer, which would ruin the "perception of incongruity" that gives the video its comedic effect. Gilbert Highet, *The Anatomy of Satire* 67 (1962). It's "the pretense of reality" juxtaposed with the patently absurd that allows parody to "convey an underlying critical message" in a humorous way. *Farah*, 736 F.3d at 537 (citation omitted); *see San Francisco Bay Guardian, Inc. v. Super. Ct.*, 21 Cal. Rptr. 2d 464, 466 (Ct. App. 1993) ("[T]he very nature of parody . . . is to catch the reader off guard at first glance, after which the 'victim' recognizes that the joke is on him to the extent that it caught him unaware.").

Parody doesn't need a disclaimer to receive First Amendment protection. It has the same "socially significant value as" other protected speech. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997). Courts regularly distinguish between protected parody and unprotected speech in many contexts, like libel, defamation, and copyright infringement, without requiring a disclaimer. *E.g., Farah*, 736 F.3d at 539 (rejecting defamation claim against parody); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 811 (9th Cir. 2003) (rejecting copyright infringement claim against satire).

Defendants may argue that AB 2839 is "directed only at disclosure of political

20

speech … subject to exacting scrutiny." *Smith v. Helzer*, 95 F.4th 1207, 1214 (9th Cir. 2024) (cleaned up). But that's wrong. Invoking a general interest in transparency isn't a magic wand to avoid strict scrutiny. *McIntyre*, 514 U.S. at 348. For example, states can't prohibit anonymous pamphleteering advocating against ballot measures. *Id.* (applying strict scrutiny). And states can't require social media companies to disclose their content-moderation policies on controversial issues. *X Corp.*, 116 F.4th at 902 (also applying strict scrutiny). Even if AB 2839 "concern[s] only transparency, the relevant question here is: transparency into what?" *Id.*

Worse, the size requirements of the disclaimer "effectively rule[] out the possibility of [plaintiffs' videos] in the first place." *NIFLA*, 585 U.S. at 778 (internal quotation omitted); *accord Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (*en banc*) (cleaned up) (determining that labeling requirement that would occupy 20% of advertisement was "unjustified or unduly burdensome"). AB 2839's disclaimer would invade far more of plaintiffs' videos that that. *E.g.*, PSUF ¶ 192 (see below). As this Court has already found with respect to




Kohls, the disclaimer would fully "drown[] out" their message. Order 15.

"[T]he predictable result" of forced disclaimers like these is that speakers will "refrain" from saying anything at all. *Riley*, 487 U.S. at 800. But "[t]he preferred

First Amendment remedy" for disfavored speech is "more speech, not enforced silence." *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (cleaned up).

AB 2839 compels the speech of everyday Americans who just want to talk about politics. As already explained, "[n]o form of speech is entitled to greater constitutional protection…." *McIntyre*, 514 U.S. at 347.

### D.    AB 2839 fails strict scrutiny.

As already explained, AB 2839's viewpoint discrimination is all this Court needs to facially enjoin enforcement of the law. *See Iancu*, 588 U.S. at 398–99 (rejecting government's argument that a viewpoint discriminatory law can be saved by "permissible applications"). But at the very least, AB 2839's selective application to certain content, viewpoints, and speakers makes it "presumptively invalid." *R.A.V v. City of St. Paul*, 505 U.S. 377, 394 (1992). And that presumption is heightened here because California explicitly seeks to police political discourse. *Citizens United*, 558 U.S. at 340 (suggesting "political speech simply cannot be banned or restricted as a categorical matter"). At minimum, AB 2839 must advance a compelling state interest through the least-restrictive means possible. *Reed*, 576 U.S. at 173. California "bears the burden of proving the [law] meets this standard. *Pierce v. Jacobsen*, 44 F.4th 853, 862 (9th Cir. 2022). It fails.

### 1.    California has less restrictive alternatives to protect its legitimate interests.

"Because restricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive" and unconstitutional. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020). "The First Amendment does not "permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech." Order 11 (citing *IMDB.com*, 962 F.3d at 1125). But California has many alternative ways to protect the integrity of California

22

elections, and California has not shown that it considered these alternatives and found them ineffective. *McCullen v. Coakley*, 573 U.S. 464, 494 (2014).

First, "the ordinary course in a free society" is to remedy false speech with "speech that is true." *Alvarez*, 567 U.S. at 727 (plurality). "Especially as to political speech, counterspeech is the tried and true buffer and elixir." Order 3; *281 Care Comm.*, 766 F.3d at 793. California could counter deceptive speech with factual speech of its own in a number of ways. It could create a "Government-created database" that tracks deepfakes and "verif[ies] and expos[es] false claims." *Alvarez*, 567 U.S. at 729 (plurality). It could launch "educational campaigns" on how to spot deceptive deepfakes. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507 (1996) (citing "educational campaigns" as alternative to First Amendment restriction); *NIFLA*, 585 U.S. at 775 (same). It could start its own committee dedicated to flagging deceptive content on networks like X, and now Facebook, Threads, and Instagram, writing Community Notes to help expose false and misleading content. PSUF ¶¶ 116, 121, 123. In fact, Governor Newsom already fact-checks statements on his social media account and on his website.[3] Plenty of media outlets do this, too.[4] In fact, The Bee has been subject to much fact-checking in the past, like a USA Today article saying that the satirical "article about the 9th Circuit 'overturning' Supreme Court Justice Ruth Bader Ginsburg's death has no basis in fact." *Id*. ¶ 37. Multiple outlets issued "fact checks" about Kohls's Harris video. *Id*. ¶ 63. If media outlets have time to fact-check articles like these, there's little reason to doubt that

---

[3] Gavin Newsom (@GavinNewsom), X (Sept. 17, 2024), https://perma.cc/Q2DN-6JCG; *ICYMI: Big Oil Misleading Californian (Again), Fact Check Finds*, Governor Gavin Newsom (Feb. 8, 2023), https://perma.cc/LLW6-FXLH.

[4] Reuters Fact Check, https://www.reuters.com/fact-check/; PolitiFact, https://www.politifact.com/california/; Factcheck.org, https://www.factcheck.org/location/california/; *see also* Melissa Goldin, *Fact Focus: A look at false claims made by Trump in California*, Associated Press (Sept. 13, 2024), https://bit.ly/4eKNSg5.

Memorandum in support of Plaintiffs' Motion for Summary Judgment

California can publicly debunk false claims that pose a real threat.

Second, California could limit AB 2839's reach to false speech that causes legally cognizable harms. *See Wasden*, 878 F.3d at 1198 (citing law targeting "statements that cause a particular harm" as less restrictive alternative). Like false speech that actually dupes citizens into voting for the "wrong" candidate. California knows how to pass laws that advance its interest in this arena. *See United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1264–66 (9th Cir. 2012) (discussing three sections of the Election Code dealing with voting interference, coercion, and intimidation and refusing to apply strict scrutiny because the speech covered represents an unprotected true threat). Other states do too. *E.g.*, Ariz. Rev. Stat. Ann. § 16-1006 (2025) (prohibiting person from "knowingly by … any corrupt means … defraud[ing] an elector by deceiving and causing him to vote for a different person for an office or for a different measure than he intended or desired to vote for"); N.J. Stat. Ann. § 19:34-29 (2024) (prohibiting any "fraudulent device" to "induce … any voter … to vote or refrain from voting for any particular person or persons at any election"); N.Y. Elec. Law § 17-150(2) (2024) (same); W. Va. Code Ann. § 3-8-11(a) (2025) (same). These types of measures would be limited in scope "by requiring proof of specific harm to identifiable victims." *See Alvarez*, 567 U.S. at 734 (Breyer, J., concurring).

Third, California could limit the statute's reach to factual statements that are provably false, like "false information about the time, date, place, or means of voting." Haw. Rev. Stat. § 19-3(12) (2021); Va. Code Ann. § 24.2-1005.1 (2021) (same); *see generally* Eugene Volokh*, When are Lies Constitutionally Protected?,* 4 J. Free Speech L. 685, 704–09 (2024) (contrasting lies about "'election procedures'"— an area where a "narrower restriction[] might pose fewer problems" with lies about election campaigns and government officials—areas that should be "categorically immune from liability."). Adopting this language wouldn't necessarily mean the

Memorandum in support of Plaintiffs' Motion for Summary Judgment

statute is constitutional, but "these alternatives simply … demonstrate the deficiency of the statute as currently written." *Daily Herald Co. v. Munro*, 838 F.2d 380, 385 (9th Cir. 1988). For example, the State could likely prohibit "an artificial robocall in the Governor's voice telling millions of Californians their voting site has changed" if it could show actual reliance. Cal. Elec. Code § 20012(a)(2). At the very least, limiting the statute to this type of false speech would eliminate subjective enforcement terms like "reasonably likely to harm … electoral prospects," that can be exploited by malicious activists or partisan government officials. *Id.* § 20012(b)(1).

Fourth, California could limit potential plaintiffs to political candidates actually harmed by unprotected false speech. This would mirror defamation law, which permits claims only by the person harmed—not anyone who hears the defamation. *See* Restatement (Second) of Torts § 564A (1977). This would also decrease the risk of selective enforcement and frivolous lawsuits that would chill protected speech. *E.g.*, *Driehaus*, 573 U.S. at 164; *Alvarez*, 567 U.S. at 723 (plurality).

California must show that alternative methods "would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495. That's in addition to "[o]ther statutory causes of action" that already exist, like "privacy torts, copyright infringement, or defamation." Order 12. California hasn't shown that it has considered, much less tested, these other options. And because the First Amendment is "[p]remised on mistrust of governmental power," California gets no deference here. *Citizens United*, 558 U.S. at 340. For these reasons, AB 2839 fails narrow tailoring and should be enjoined.

### 2.    AB 2839 fails to further a compelling State interest and is over- and underinclusive.

While the less-restrictive alternatives described above are low-hanging fruit,

25

California must also "show that the statute furthers a compelling governmental interest." *IMDb.com*, 962 F.3d at 1125 (cleaned up). Even assuming California has a "compelling interest in protecting free and fair elections," Cal. Elec. Code § 20012(a)(4), "selective limitations upon speech" don't further that interest, *R.A.V.*, 505 U.S. at 392. Plus, AB 2839 is underinclusive and overinclusive as well, providing even more reasons to find the statute invalid.

"It is rare that a regulation restricting speech because of its content will ever be permissible." *Playboy*, 529 U.S. at 818. *R.A.V.* is instructive. There, the Court invalidated a law against certain race-based hate crimes. *Id.* at 380. The state's interest in protecting "basic human rights" was undoubtedly compelling. *Id.* at 395. But the law's content-based distinctions were not necessary to prohibit "reprehensible" acts like cross burnings. *Id.* at 395–96. Instead, "the only interest distinctively served by the content limitation" was displaying the city's "special hostility towards the particular biases thus singled out." *Id.* at 396.

Other courts have applied *R.A.V.*'s logic to invalidate political speech regulations, like California's, that apply to selective topics, viewpoints, and speakers. For example, in *Grimmett v. Freeman*, the Fourth Circuit held unconstitutional a North Carolina law that prohibited false "derogatory reports" about political candidates that were "calculated or intended to affect the chances of such candidate for nomination or election." 59 F.4th at 691. In *Susan B. Anthony List v. Driehaus*, the Sixth Circuit invalidated a law prohibiting false speech "designed to promote the election, nomination, or defeat of the candidate." 814 F.3d 466, 470 (6th Cir. 2016). And in *Rickert v. State*, an en banc Washington Supreme Court invalidated a law that prohibited false statements about candidates but exempted statements "made by a candidate (or his supporters) about himself." 168 P.3d 826, 831 (Wash. 2007) (en banc). All of these laws ran "headlong into *R.A.V.*" because they only covered content-, viewpoint-, or speaker-based subsets of false

1  speech. *Grimmett*, 59 F.4th at 694.

2      California repeats the same mistake. Start with its prohibition on false

3  content "likely to harm the … electoral prospects of a candidate." Cal Elec. Code

4  § 20012(b). That does not prohibit *all* false content, only false content that includes

5  "statements about a certain subject"—candidates for office. *Grimmett*, 59 F.4th at

6  694. And AB 2839 applies only to statements "of a particular nature"—content

7  likely to harm a candidate's election chances. *Id.* So "speakers may lie with

8  impunity about businesspeople, celebrities, purely private citizens, or even

9  government officials" who are not candidates for office or speaking about the

10  election. *Id.*

11      The prohibition on false content likely to harm a candidate's reputation is

12  similarly selective because it prohibits quasi-defamatory statements only against

13  political candidates. While "the government may proscribe libel," "it may not make

14  the further content discrimination of proscribing *only* libel critical of" political

15  figures. *R.A.V.*, 505 U.S. at 384; *Grimmett*, 59 F.4th at 694 (same); *see also Chaker*,

16  428 F.3d at 1226–27 (invalidating law prohibiting false statements "limited to

17  criticism of government officials"). These content and viewpoint-based limitations

18  don't further the State's interest in preserving free and fair elections "because [a

19  law] not limited to speech about current political candidates would have precisely

20  the same beneficial effect." *Grimmett*, 59 F.4th at 696. (cleaned up).

21      "While generic content-based regulations strain our commitment to free

22  speech, content-based regulations that target political speech are especially

23  suspect." *McManus*, 944 F.3d at 513 (cleaned up). And the fact that California has

24  less-restrictive "content-neutral alternatives … undercuts significantly any defense

25  of such a statute." *R.A.V.*, 505 U.S. at 395 (cleaned up).

26      Next, AB 2839 is underinclusive, revealing that it "does not actually advance

27  a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). And AB

28

2839's regulatory patchwork leaves inexplicable gaps in enforcement that also raises serious "doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 448 (cleaned up).

Again, start with AB 2839's focus on deceptive content portraying only political candidates, elected officials, election officials, ballots, or voting mechanisms. In the last election, countless election-related deepfakes like ones portraying "Swifties for Trump" were allowed so long as they did not depict a candidate or official.[5] So are many other false posts that "undermine the perception of electoral integrity"—like allegations about Russian



disinformation—so long as they do not specifically reference a candidate, ballot measure, or other proscribed topic. *Grimmett*, 59 F.4th at 696 n.9. If the State's goal is to protect election integrity, prohibiting satirical memes about a candidate while failing to regulate deepfakes that *actually* fool people makes little sense. *Id.*

Also consider AB 2839's broad exemption for "interactive computer service[s]," which "does not impose liability" on them. Cal. Elec. Code § 20012(e)(4) (citing 47 U.S.C. § 230(f)(2)). That means *all* interactive computer services escape *any* regulation under AB 2839, inexplicably exempting many interactive blogs and news websites. They can post whatever they want, including maliciously distributed deepfakes that cause actual harm. This discrepancy is irrational because "the

---

[5] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 18, 2024), https://bit.ly/4drwhZA.

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1    exempted speech implicates the very same concerns as the regulated speech."

2    *Chaker*, 428 F.3d at 1226–27.

3        Add to this that AB 2839 imposes different requirements on different

4    speakers. Candidates can post fake content portraying themselves by attaching the

5    prescribed disclaimer. *See* Cal. Elec. Code § 20012(b)(2). Plaintiffs can post similar

6    content only if it's parody or satire. *Id.* § 20012(b)(3). But politicians promoting

7    "self-aggrandizing falsehoods" are just as, or perhaps even more likely, to

8    undermine elections as citizens posting similar content. *Grimmett*, 59 F.4th at 696

9    n.9; *accord Rickert*, 168 P.3d at 831–32. Trump, for example, has tens of millions of

10   followers on his X account. Rickert has far less; she has about 25,000 followers on

11   Instagram and less than 2,000 on X. PSUF ¶ 78. Not just because of audience size

12   either; allowing politicians greater speech rights than independent commentators

13   gets the First Amendment backwards. *See McIntyre*, 514 U.S. at 351.

14       Or, consider the different disclaimer requirements for broadcasters. They can

15   show prohibited content as long as they "clearly acknowledge[]" it's fake. Cal. Elec.

16   Code § 20012(e)(1). But here too, Plaintiffs can only post similar content if it's satire

17   and parody. But The Bee, Kohls, and Rickert don't have the same audience as CNN

18   or Fox. And even then, it isn't enough for Plaintiffs to "clearly acknowledge[]" that

19   something is fake *E.g.*, PSUF ¶¶ 56, 58–59, 155. They have to include California's

20   specifically worded and burdensome disclaimer throughout the content they post.

21   Cal. Elec. Code § 20012(b)(1)(A). This "speaker-based disclosure requirement … is

22   wholly disconnected from California's informational interest." *NIFLA*, 585 U.S. at

23   777.

24       AB 2839 is also overinclusive for the all of the same reasons that its

25   unconstitutionally overbroad. *See infra* § II.A (describing overbreadth). To take the

26   most glaring example, AB 2839 doesn't further any interest as applied to Plaintiffs'

27   speech involving satirical memes and parody campaign ads. In the Harris Parody

28

Video, for example, Harris brags that she served under "the ultimate deep state puppet" Joe Biden. PSUF ¶ 57. An "average" viewer grasps that, however authentic appearing, this is a joke. *Knievel*, 393 F.3d at 1074. So California's restrictions on political speech to prevent confusion among voters is unnecessary.

The disclaimer requirement is also particularly onerous. In fact, the disclaimer requirement "effectively rules out the possibility of" Kohls' parody campaign ads "in the first place." *NIFLA,* 585 U.S. at 778 (cleaned up). Below is a still from the Harris Parody Video next to the same ad with California's required disclaimer, which occupies the entire screen. PSUF ¶ 194. If a forced label occupying 20% of an advertisement (which receives lower First Amendment scrutiny) is "unjustified or unduly burdensome," *Am. Beverage Ass'n*, 916 F.3d at 757 (cleaned up), there's no question that AB 2839's forced disclaimer would "drown out" Plaintiffs' protected political messages, *id.* at 757 (cleaned up); *see* Order 15.

 

## II.    AB 2839 is overbroad and vague.

When a statute regulates speech, the Supreme Court has "lowered [the] very high bar" to facial challenges. *Moody*, 603 U.S. at 723. If a "statute prohibits a substantial amount of protected speech relative to its plainly legitimate sweep, then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up).

Memorandum in support of Plaintiffs' Motion for Summary Judgment

A law can also be overbroad if it's vague. Yet the test for vagueness is distinct: a law is facially void-for-vagueness when it (1) fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly;" or (2) fails to "provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *accord Edge v. City of Everett*, 929 F.3d 657, 664–665 (9th Cir. 2019). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).

Here, AB 2839 applies to much protected speech (below § A). But it's unclear whether it applies to other protected speech (below § B). Plus, its vague proscriptions give officials unbridled enforcement discretion. So, in addition to bringing overbreadth claims, Plaintiffs bring as-applied and facial vagueness claims too. *Tucson v. City of Seattle*, 91 F.4th 1318, 1329 (9th Cir. 2024) ("[F]acial vagueness challenges are appropriate if the statute clearly implicates free speech rights." (cleaned up)); *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. District of Columbia.*, 846 F.3d 391, 410 (D.C. Cir. 2017) (allowing as-applied First Amendment and facial vagueness arguments when law provided "standardless enforcement discretion").

### A.    AB 2839 explicitly covers a substantial amount of speech.

"The first step in the proper facial [overbreadth] analysis is to assess the state laws' scope." *Moody*, 603 U.S. at 724. Here, of course, "AB 2839 specifically targets speech" by facially regulating images, videos, and audio recordings about proscribed topics. Order 10. Also importantly, it does **not** regulate any non-expressive conduct. In other words, every application of the law regulates speech.

At step two, the "question is whether a substantial number of the law's

Memorandum in support of Plaintiffs' Motion for Summary Judgment

applications are unconstitutional, judged in relation to the statute's plainly

legitimate sweep." *Moody*, 603 U.S. at 723 (cleaned up). Here, the answer is yes.

Start with parody—fictitious speech protected under the First Amendment. *Hustler*

*Mag.*, 485 U.S. at 54–56. The law sweeps up Kohls's parodic Kamala Harris

campaign ads, The Bee's video of Governor Newsom mockingly endorsing Harris,

and Rickert's post of Trump's fictitious exchange with Barack Obama (if it had been

posted during the election). *See* PSUF ¶ 103a. It would even cover Kohls's "Honest

Ad" containing Biden gaffes, even though all of the statements and videos of Biden

are real. *See id.* ¶ 60. But weave them into a fictitious ad with the Biden/Harris

campaign slogan slapped on at the end, and it "falsely appear[s] … authentic" in

violation of the law. Cal. Elec. Code § 20012(f)(8).

        The law's application to satire generally sweeps up even more content, like

the fake news articles below just because The Bee cropped and edited real images to

make them "falsely appear … authentic." *Id.*





PSUF ¶¶ 26w, aa. In fact, the law goes even further to cover a person who

republishes these images just because they think they're funny, even though they

didn't create them. Cal. Elec. Code § 20012(b)(4).

        The law also sweeps up much exaggeration and "rhetorical hyperbole which

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1  has traditionally added much to the discourse of our Nation." *Knievel*, 393 F.3d at

2  1074 (cleaned up). Like memes of Kamala Harris in a red uniform addressing a

3  communist party rally. PSUF ¶ 88. Or, suppose J.D. Vance's 2028 presidential

4  campaign creates an ad featuring AI-generated images of Alexandra Ocasio Cortez

5  (the Democratic nominee) speaking at a lectern while Vance narrates that "she

6  promises to fly all the homeless people from every third-world country on the planet

7  into our country." This would obviously be protected speech. Again, a reasonable

8  person would understand it not as a quotation from Ocasio Cortez's campaign page,

9  but an exaggeration of her immigration policies. But AB 2839 prohibits this ad

10  because the image "falsely appear[s] … authentic" and the narration suggests

11  Ocasio Cortez said something she did not say. Cal. Elec. Code. § 20012(b)(1)(A),

12  (f)(8)(A).

13  The law also sweeps up content that isn't materially harmful. It doesn't

14  require covered content to have a material *effect* on a candidate's electoral

15  prospects. Suppose Ocasio Cortez's hypothetical presidential campaign runs an ad

16  accurately criticizing the Trump/Vance administration's foreign policy while using

17  "deepfake" images of Trump talking to NATO officials with whom he never spoke.

18  The images are fake and violate the law. But they're not materially harmful to the

19  Republican nominee.

20  The broad definition of "election communication" extends AB 2839's reach in

21  staggering ways too. It covers "any

22  general or public communication"

23  sent through "telephone," "text" or

24  the "internet" that addresses a

25  "candidate," "ballot measure," or

26  "voting." Cal. Elec. Code.

27  § 20012(f)(5). That includes general



28

Memorandum in support of Plaintiffs' Motion for Summary Judgment

posts on private social-media accounts, text messages and emails to friend groups, and billboards like this one.[6] Regulating social-media accounts with few followers or billboards seen from rural one-lane roads reinforces how overbroad the law is. *Cf. Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011) (finding law "geographically overinclusive"). AB 2839 "applies to a broad range of content that does not pose a realistic threat to the maintenance of fair and free elections." *Lucas*, 34 N.E.3d at 1255; *see also Alvarez*, 567 U.S. at 722–23 (plurality) ("Here the lie was made in a public meeting, but the statute would apply with equal force to personal, whispered conversations within a home.").

What's more, AB 2839's liberal enforcement provisions are a recipe for chilling untold amounts of speech, including speech that does not clearly fall within the statute. *Infra* § II.B (explaining vagueness). It isn't just offended candidates or elected officials who can sue—any "recipient of materially deceptive content" can "seek injunctive or other equitable relief." Cal. Elec. Code § 20012(d)(1). That includes any "person who views, hears, or otherwise perceives" the content. *Id.* § 20012(f)(9). Plus, that person can seek "general or special damages" and "attorney's fees and costs," even against a person who merely "republishe[s]" prohibited content. *Id.* § 20012(d)(2). Laws like these that allow "[a]nyone [to] file a complaint" drastically increase the chances of rivals and activists filing lawsuits, regardless of whether the content falls under AB 2839's scope. *281 Care Comm.*, 766 F.3d at 792; *Lucas*, 34 N.E.3d at 1256 (same). And as soon as such a suit is filed, "damage is done." *281 Care Comm.*, 766 F.3d at 792. Thus, AB 2839 is "overbroad because … there is nothing to prohibit the filing of a complaint against speech that

---

[6] If this billboard was put up in California, and Biden had still been the presidential candidate on September 17, 2024, it would have violated the law. It still arguably violated the law on September 17, 2024, when Kamala Harris was the candidate, by harming Harris' electoral chances through her association with Biden (an elected official). *See* Cal. Elec. Code § 20012(b)(C).

1    may later be found wholly protected." *Id.*

2        "[T]he state does not have carte blanche to regulate the dissemination of false

3    statements during political campaigns." *281 Care Comm.*, 766 F.3d at 787. But that

4    is essentially what California asks for—even if the speech isn't "material, negative,

5    defamatory, or libelous," *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th

6    Cir. 2016), and even if it doesn't fool anyone or have any effect on an election. For

7    these reasons, this Court has already correctly held that "AB 2839's legitimate

8    sweep pales in comparison to the substantial number of its applications." Order 14.

9        **B.    AB 2839's vagueness covers even more protected speech.**

10       A law is unconstitutionally vague "if its prohibitions are not clearly defined."

11   *Grayned*, 408 U.S. at 108. The doctrine requires fair notice about what the law

12   proscribes plus guardrails to ensure that "those enforcing the law do not act in an

13   arbitrary or discriminatory way." *Fox Television.*, 567 U.S. at 253. While these

14   requirements spring from the Due Process Clause, "vagueness concerns are more

15   acute when a law implicates First Amendment rights" because of the risks of chilled

16   speech and discriminatory enforcement. *Butcher v. Knudsen*, 38 F.4th 1163, 1169

17   (9th Cir. 2022). In this context, there is an "enhanced standard" requiring "an even

18   greater degree of specificity and clarity of laws." *Edge*, 929 F.3d at 664–65. "These

19   concerns are magnified even further when a law regulates political speech."

20   *Butcher*, 38 F.4th at 1169.

21       AB 2839's problems start with malleable terms like "materially deceptive."

22   Cal. Elec. Code. § 20012(f)(8)(A). As already explained, this does not require

23   showing that content actually fools a reasonable person. It's enough to "falsely

24   appear … authentic" in some respect. *Id.* § 20012(f)(8)(A). That means satirists,

25   bloggers, or social media users "must necessarily guess at" what types of political

26   satire and parody appear authentic enough to violate the law. *Fox Television*, 567

27

28

Memorandum in support of Plaintiffs' Motion for Summary Judgment

1  U.S. at 253; *cf. Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 513 (9th Cir. 1988) (treaty

2  affording favorable treatment to materials deemed "representative," "authentic,"

3  and "accurate" was "unquestionably vague"). After all, "[p]arody needs to mimic an

4  original to make its point." *Dr. Seuss*, 109 F.3d at 1400. Consider that The Bee's

5  satirical posts are regularly fact-checked.

6  PSUF ¶ 33. Snopes, for instance, thought it

7  necessary to "fact-check" this satirical post

8  The Bee wrote about United States

9  Representative Alexandria Ocasio-Cortez. *Id.*

10  ¶¶ 34–35. If websites like Snopes, USA

11  Today, and other news organizations believe



12  these articles need a fact-check, an activist or the Secretary of State could easily

13  conclude that this and other similar content violates the law.

14  AB 2839 seemingly reaches commonplace "'half-truths' and 'misinformation'"

15  too. *Sullivan*, 376 U.S. at 273. For example, during the 2024 election, @KamalaHQ

16  (an account run by the Harris campaign), posted a short video on X of then

17  candidate JD Vance stating: "Democrats want to attack Republicans as being anti-

18  union and sometimes the shoe fits." PSUF ¶ 214. The clip leaves out the second part

19  of Vance's statement: "but not me, and not Donald Trump." *Id.* AB 2839 seemingly

20  prohibits this and similar posts because deleting certain contextual statements

21  makes it "digitally … modified" and "deceptive," falsely suggesting that Vance

22  admitted to being anti-union. Cal. Elec. Code § 20012(f)(8). But campaigns do this

23  type of electioneering *all the time*. As the legislature's Judiciary Committee

24  recognized, "the use of questionable tactics to win an election are as old as

25  America's democracy." PSUF ¶ 157.

26  Next, AB 2839's prohibition on content "reasonably likely to harm the

27  reputation or electoral prospects of a candidate" is vague. Cal. Elec. Code

28

36

Memorandum in support of Plaintiffs' Motion for Summary Judgment

§ 20012(b)(1)(A), (C). That's because the term "likely to harm" is inherently

subjective. Take a satirical AI-generated campaign ad of Ocasio Cortez calling for

open borders and blanket amnesty for illegal

immigrants. If the ad appeals to her party's

base, is it "reasonably likely to harm" her

electoral chances? Or take an AI-generated

memes of Taylor Swift endorsing Trump. *See*

PSUF ¶ 209b. What about a fake endorsement

from a B-list celebrity instead? Or, consider a

fake image of a candidate that just makes the

candidate appear unattractive? The law



provides "no principle for determining when" speech will "pass from the safe harbor

… to the forbidden." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1049 (1991); *see*

*Flomo v. Firestone Nat. Rubber Co., LLC*, 643 F.3d 1013, 1022 (7th Cir. 2011)

(observing that law prohibiting practices "likely to harm" was "pretty vague, in part

because no threshold of actionable harm is specified").

Equally problematic is the statutory language singling out content that is

"reasonably likely to falsely undermine confidence in the outcome" of an election.

Cal. Elec. Code § 20012(b)(1)(C). Consider one video posted by the Republican

National Committee that contains "12 Minutes of Democrats Denying Election

Results," featuring elected officials denying the legitimacy of the 2016 election

results because of Russian disinformation. PSUF ¶ 209a. That might "falsely

undermine confidence" in the outcome of an election. The answer, once again,

depends on whether the enforcement official perceives the video as sufficiently

deceptive.

Additionally, vagueness lies in what constitutes acceptable "minor"

modifications. Cal. Elec. Code § 20012(f)(8)(B). It is no answer to say that they are

37

small changes that "do not alter [the content's] substantive meaning" (Opp'n to MPI 22) because "substantive meaning" itself is a matter of subjective interpretation, as is whether the modifications "significantly change the perceived contents or meaning of the content." Cal. Elec. Code § 20012(f)(8)(B). *Cf. Sackett v. EPA*, 598 U.S. 651, 681 (2023) ("the boundary between a 'significant' and an insignificant nexus is far from clear").

The law's vagueness also violates the content and viewpoint neutrality requirements, making the law facially invalid, because it gives enforcement authorities "unbridled discretion." *Kaahumanu v. Haw.*, 682 F.3d 789, 806 (9th Cir. 2012). Simply, "an indeterminate prohibition carries with it the opportunity for abuse." *Minn. Voters All.*, 585 U.S. at 21 (cleaned up). Enforcement officials "must be guided by objective, workable standards." *Id.* Return to "materially deceptive." Run-of-the-mill campaign ads attacking "a candidate's voting record," for example, often contain exaggerations. *Lucas*, 34 N.E.3d at 1256 (explaining that "distinguishing between truth and falsity may prove exceedingly difficult" in this context). If courts must undertake an "in-depth analysis of legislative history" to determine the truth or falsity of digitally altered content, that gives enforcement authorities much discretion to determine which posts violate the law. *Id.* Or take a meme of Trump running from police. PSUF ¶ 212. It's ambiguous whether it is "reasonably likely to harm" his candidacy because some will view this meme favorably while others will not. Or, it may depend on whether someone somewhere thinks it's "materially deceptive." Cal. Elec. Code § 20012(f)(8). Or, it may depend on the poster's "subjective intent." *Berger v. City of Seattle*, 569 F.3d 1029, 1047 (9th Cir. 2009) (cleaned up). "[T]his myriad of factors lends itself to discriminatory enforcement," where activists and government officials alike "resort to enforcing the [law] only against those messages the officer or the public dislikes." *Id.* at 1048 (cleaned up).

Memorandum in support of Plaintiffs' Motion for Summary Judgment

At bottom, what's deceptive or "'misleading' is unconstitutionally vague and in the eyes of the beholder." *See* Richard L. Hasen, *A Constitutional Right to Lie in Campaigns and Elections?*, 74 Mont. L. Rev. 53, 71–72 (2013) (targeting "'deceptive' or 'misleading' election speech … could chill legitimate speech given the elasticity of the terms"). A speech-targeting enforcement scheme built on these amorphous and vague terms "contains more than the possibility of censorship through uncontrolled discretion." *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 133 (1992). "Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' … than if the boundaries of the forbidden areas are clearly marked." *Grayned*, 408 U.S. at 109 (citation omitted).

## III.    This Court should grant Plaintiffs' requested relief.

Because Plaintiffs have shown that AB 2839 is unconstitutional, this Court should grant a permanent injunction and declaratory relief.

Permanent injunctive relief requires a showing of (1) irreparable injury, (2) that other remedies are inadequate; and that (3) the balance of hardships and (4) the public interest favor an injunction. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023). Plaintiffs satisfy these factors. At the preliminary injunction stage, this Court already recognized that chilled speech is the quintessential example of irreparable harm. Order 17. And "constitutional violations cannot be adequately remedied through damages." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted)). Indeed, "[t]he harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Rickert reasonably chilled her speech during the 2024 election. PSUF ¶¶ 82–91. She will likely do so again unless Defendants are permanently enjoined from enforcing the law. Further, California's interests here are "minimal when measured against

Memorandum in support of Plaintiffs' Motion for Summary Judgment

the gravity of First Amendment values at stake." Order 18. Governments simply don't have an interest in enforcing discriminatory, overbroad, and vague laws. *Id.* And because the law threatens the rights of both Plaintiffs and the public at large, the balance of equities and public interest "tip sharply in favor of enjoining [the law]." *Klein*, 584 F.3d at 1208. In this case, "all citizens have a stake in upholding the Constitution." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up).

And for all the reasons given above, this Court should grant declaratory relief too. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995) (explaining court always has discretion to enter declaratory relief).

## CONCLUSION

Plaintiffs want to post satirical news articles, parody videos, and other digitally altered images and memes poking fun at politicians. This type of speech "is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). The democratic experiment is, at its core, the freedom to criticize candidates, elected officials, and government policies with which we disagree.

So California's "claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them" deserves much skepticism. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 228 (1989) (citations omitted). In fact, accepting California's arguments would give it the power to prohibit speech it deems harmful untethered from history and unchecked by the courts. American history going back to the Sedition Act teaches that governments simply cannot be trusted to wield this much power. "In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us." *Meyer v. Grant*, 486 U.S. 414, 419–20 (1988) (cleaned up).

Digitally altered memes and parody campaign ads are the "political cartoons

40

of today." Order 12. Plaintiffs need permanent relief from this Court to prevent the state's "use [of] its power for political ends." *Id.* (cleaned up). They respectfully ask that this Court enter summary judgment for Plaintiffs, declare AB 2839 invalid facially and as-applied, permanently enjoin Defendants from enforcing it.

DATED:        March 7, 2025

*s/ Adam E. Schulman*
(authorized 03.07.2025)
Adam E. Schulman
DC Bar No. 1001606
adam.schulman@hlli.org
Telephone: (610) 457-0856
Theodore H. Frank
CA Bar No. 196332
ted.frank@hlli.org
Telephone: (703) 203-3848
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006

*Counsel for Plaintiff Christopher Kohls*

*s/ Johannes Widmalm-Delphonse*
Johannes Widmalm-Delphonse
VA Bar No. 96040
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
jwidmalmdelphonse@adflegal.org

Jonathan A. Scruggs
AZ Bar No. 030505
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jscruggs@ADFlegal.org

Brian R. Chavez-Ochoa
CA Bar No. 190289
Chavez-Ochoa Law Offices, Inc.
4 Jean Street, Suite 4
Valley Springs, CA 95252
Telephone: (209) 772-3013
brianr@chavezochoalaw.com

*Counsel for Plaintiffs The Babylon Bee, LLC and Kelly Chang Rickert*

Memorandum in support of Plaintiffs' Motion for Summary Judgment

**PROOF OF SERVICE**

I hereby certify that I filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all counsel of record.

DATED this 7th day of March, 2025.

_s/ Johannes Widmalm-Delphonse_
Johannes Widmalm-Delphonse
_Counsel for Plaintiffs The Babylon
Bee, LLC and Kelly Chang Rickert_

Memorandum in support of Plaintiffs' Motion for Summary Judgment