1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER KOHLS, THE              No.  2:24-cv-02527-JAM-CKD
     BABYLON BEE, LLC, and KELLY
12   CHANG RICKERT,

13            Plaintiffs,               **ORDER GRANTING PLAINTIFFS'**
                                        **MOTION FOR SUMMARY JUDGMENT**
14        v.                                      **(AB 2839)**

15   ROB BONTA, in his official
     capacity as Attorney General
16   of the State of California,
     and SHIRLEY N. WEBER, in her
17   official capacity as
     California Secretary of
18   State,

19            Defendants.

20

21                I.   INTRODUCTION AND BACKGROUND

22        Plaintiffs Christopher Kohls (aka "Mr. Reagan"), The Babylon

23   Bee, LLC ("The Bee") and Kelly Chang Rickert are parodists and

24   humorists who create digital content about politics on various

25   internet platforms and social media websites.  See P. Statement

26   of Undisputed Facts ("PSUF") ¶¶ 14-17, 53-54, 69-80, ECF. No. 47.

27   Plaintiffs' posts contain demonstrably false, exaggerated, and

28   hyperbolic information.  Id. ¶¶ 26, 29, 62, 100.  They contend

                                    1

1  that their videos, posts, and articles are part of a long-held

2  American tradition of ridiculing and criticizing candidates and

3  elected officials across the political spectrum.  However, their

4  satirical media poses a challenge of first impression to courts:

5  how to grapple with content that is synthetically edited or

6  digitally generated using artificial intelligence ("AI").

7  Compl., ¶ 5, ECF No. 1.

8      Motivated to combat the potential dangers associated with

9  the type of artificially manipulated media procured by

10 Plaintiffs, California passed AB 2839.  AB 2839 regulates a broad

11 spectrum of election-related content that is "materially

12 deceptive" and permits any recipient of this content to sue for

13 general or special damages.  Cal. Elec. Code §§ 20012(b)(1),

14 20012(d).  AB 2839 defines "materially deceptive" content as

15 "audio or visual media that is intentionally digitally created or

16 modified, . . . such that the content would falsely appear to a

17 reasonable person to be an authentic record of the content

18 depicted in the media."  Id. § 20012(f)(8)(A).  AB 2839 includes

19 exceptions for candidates who make and share deepfake content of

20 themselves and for satire or parody.  Id. §§ 20012(b)(2),

21 20012(b)(3).  In both these cases, the content must include a

22 disclaimer that meets AB 2839's formatting requirements and must

23 state that the content has been digitally manipulated.  Id.

24 §§ 20012(b)(2)(B), 20012(b)(3).

25     In a written order on October 2, 2024, the Court enjoined AB

26 2839 on a preliminary basis.  See Order Granting P.'s Mot.

27 Prelim. Inj. ("Order"), ECF No. 14.  The Court found that AB 2839

28 likely facially violated the First Amendment because the law was

1  not narrowly tailored enough and because the law impermissibly

2  compelled speech.

3      After the Court granted the preliminary injunction, several

4  cases were consolidated whereupon Plaintiffs The Babylon Bee and

5  Kelly Chang Rickert joined the action.  See ECF Nos. 20, 21.  At

6  this juncture, the relevant facts and legal issues remain the

7  same.  All three Plaintiffs (Christopher Kohls, The Babylon Bee,

8  and Kelly Chang Rickert) and Defendants filed cross motions for

9  summary judgment on whether AB 2839 violates the First and

10 Fourteenth Amendments as well as Article 1, Section 2 of the

11 California Constitution.  See P. Mot. for Summary Judgment ("P.

12 MSJ"), ECF No. 45; D. Mot. for Summary Judgment ("D. MSJ"), ECF

13 No. 49.  Both sides also submitted oppositions.  See P. Opp'n,

14 ECF No. 78; D. Opp'n, ECF No. 81.  Plaintiffs seek a permanent

15 injunction prohibiting California from enforcing AB 2839.  See P.

16 MSJ, ECF No. 45.  For the reasons specified herein, the Court

17 grants Plaintiffs' motion for summary judgment and denies

18 Defendants' motion, finding that Plaintiffs are entitled to a

19 permanent injunction.[1]

20                          II.  OPINION

21     A.  Legal Standard

22     Summary judgment is appropriate "if the pleadings,

23 depositions, answers to interrogatories, and admissions on file,

24 together with the affidavits, if any, show that there is no

25 genuine issue as to any material fact and that the moving party

26 is entitled to a judgment as a matter of law."  Fed. R. Civ.

27

28 [1] A hearing on these cross motions was held on August 5, 2025.

1  Pro. 56(a).  The moving party bears the initial burden of

2  establishing that there is no genuine issue of material fact.

3  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden

4  on the moving party is discharged by showing that there is an

5  "absence of evidence to support the nonmoving party's case."

6  Id. at 325.  A factual dispute is genuine where "the evidence is

7  such that a reasonable jury could return a verdict for the non-

8  moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

9  252 (1986).  "Where the record taken as a whole could not lead a

10 rational trier of fact to find for the nonmoving party, there is

11 no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v.

12 Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

13      B.    Analysis

14            1.    First Amendment Facial Challenge

15                  a. Content, Viewpoint, and Speaker-Based

16                     Distinctions

17      Plaintiffs bring a facial attack against AB 2839, arguing

18 that the statute is unconstitutional because it restricts core

19 political speech while simultaneously discriminating based on

20 content, viewpoint, and speaker.  See P. MSJ at 11.  California

21 defends the statute by highlighting AB 2839's exemptions for

22 parody and satire and arguing that the statute only regulates

23 content that purports to be an authentic record of actual

24 events.  See D. MSJ at 2.  The Court finds that AB 2839

25 discriminates based on content, viewpoint, and speaker and

26 targets constitutionally protected speech.

27      The Court's preliminary injunction Order recognized that AB

28 2839 was likely unconstitutional because it was content-based.

1   <u>See</u> Order at 10.  By its terms, AB 2839 prohibits "materially

2   deceptive" (defined as content that would falsely appear to a

3   reasonable person to be an authentic record) audio or visual

4   communications that portray a candidate or elected official

5   doing or saying things he or she didn't do or say and that are

6   likely to harm a candidate's reputation or electoral prospects.

7   Cal. Elec. Code § 20012(b)(1)(A).  The statute also punishes

8   such altered content that depicts an "elections official" or

9   "voting machine, ballot, voting site, or other property or

10  equipment" that is "reasonably likely" to falsely "undermine

11  confidence" in the outcome of an election contest.  <u>Id.</u>

12  § 20012(b)(1)(B), (D).  As evidenced by the statutory language,

13  AB 2839 facially regulates based on content because the "law

14  applies to particular speech because of the topic" — a political

15  candidate, elected official, elections official, ballot, or

16  voting mechanism.  <u>Reed v. Town of Gilbert</u>, 576 U.S. 155, 163

17  (2015).  Moreover, it delineates acceptable and unacceptable

18  speech based on its purported truth or falsity meaning that non-

19  materially deceptive content is excluded.  <u>See</u> Order at 11.

20      On top of the content-based distinctions, AB 2839 regulates

21  speech based on viewpoint and speaker.  The state law only

22  punishes content that could "harm" a candidate's electoral

23  prospects or content that could "undermine confidence" in the

24  outcome of an election while leaving positive representations

25  unregulated.  <u>See</u> P. MSJ at 18.  In other words, materially

26  deceptive content that helps a candidate or promotes confidence

27  would not be subject to penalty under AB 2839.  These

28  distinctions are the "essence of viewpoint discrimination."  <u>See</u>

1  <u>Iancu v. Brunetti</u>, 588 U.S. 388, 393 (2019); <u>Grimmett v.</u>

2  <u>Freeman</u>, 59 F.4th 689, 694-96 (4th Cir. 2023) (invalidating law

3  prohibiting "derogatory reports" about political candidate).

4      Moreover, AB 2839 also engages in speaker-based

5  discrimination because the law imposes different obligations on

6  different speakers depending on who they are.  Under AB 2839,

7  candidates posting about themselves, broadcasters, and internet

8  websites are subject to more lenient rules while other speakers,

9  such as Plaintiffs, are categorically barred.  Candidates and

10  broadcasters can post "materially deceptive" content as long as

11  they attach disclaimers.  <u>See</u> Cal. Elec. Code §§ 20012(b)(2),

12  20012(e)(1).  Additionally, broadcasters and internet sites are

13  exempt from "general or special damages."  <u>Id.</u> § 20012(d)(2)(B).

14  AB 2839 treats different speakers dissimilarly, subjecting

15  certain individuals to stricter rules and other speakers to more

16  lenient rules.  All together, these content, viewpoint, and

17  speaker-based distinctions at minimum trigger strict scrutiny.

18  <u>Green v. Miss U.S. of Am., LLC</u>, 52 F.4th 773, 791 (9th Cir.

19  2022) (explaining content-based speech compulsion warrants

20  strict scrutiny); <u>Boyer v. City of Simi Valley</u>, 978 F.3d 618,

21  621-23 (9th Cir. 2020).

22      Attempting to avoid the content, viewpoint, and speaker-

23  based problems with AB 2839, Defendants analogize the statute to

24  narrow categories of historically recognized exceptions to the

25  First Amendment such as defamation or fraud.  <u>See</u> D. MSJ at 12-

26  14.  These "traditional categories [of expression] long familiar

27  to the bar" are "well-defined and narrowly limited."  <u>United</u>

28  <u>States v. Stevens</u>, 559 U.S. 460, 468-69 (2010).  However, AB

1    2839 goes beyond these historical categories.  For example, the

2    statute diverges from defamation law because it proscribes

3    content that is merely "reasonably likely" to cause harm, which

4    is speculative and prophylactic rather than remedial or

5    concrete.  Moreover, the statute also goes beyond reputational

6    harms to include amorphous harms to the "electoral prospects" of

7    a candidate.  See P. MSJ at 13-15; P. Opp'n at 3-7.

8        So too do AB 2839's regulations go beyond the definition of

9    fraud because unlike fraud, AB 2839 does not require reliance or

10   actual injury.  See United States v. Alvarez, 567 U.S. 709, 734

11   (2012) (Breyer, J., concurring) (citing Restatement (Second) of

12   Torts § 525 (1976)).  California responds that falsehoods "meant

13   to deceive viewers and manipulate voters to change their voting

14   behavior" do cause legally cognizable harm, but intent to

15   "deceive and manipulate" alone is not sufficient under Alvarez,

16   which recognized that even knowing falsehoods are

17   constitutionally protected.  567 U.S. at 714.  One of

18   Defendants' *amicus curiae* points out that AB 2839 may resemble

19   laws against impersonating government officials and

20   misappropriating someone's image and likeness, but ultimately

21   concedes that "AB 2839 sweeps more broadly."  See Br. *Amicus*

22   *Curiae* Elec. Privacy Info. Ctr. Supp. Defs.' Mot. S.J. on AB

23   2839 at 12-15, ECF No. 72.

24       Notably, the most significant manner in which AB 2839 goes

25   beyond historically recognized exceptions to the First Amendment

26   is by deputizing a much more expansive category of plaintiffs.

27   Unlike defamation or other tort remedies that limit plaintiffs

28   to persons actually harmed, the category of plaintiffs AB 2839

cognizes is almost boundless because it allows the government as well as any recipient of materially deceptive content to "seek injunctive or other equitable relief."  Cal. Elec. Code § 20012(d)(1).  Plus, these recipients can seek "general or special damages" and "attorney's fees and costs," even against a person who merely "republishe[s]" prohibited content.  Id. § 20012(d)(2).  Allowing almost any person to file a complaint creates the "real risk" of malicious lawsuits that could chill protected speech.  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 164 (2014).

Rather than targeting content that procures tangible harms or materially benefits a speaker, AB 2839 attempts to stifle speech before it occurs or actually harms anyone as long as it is "reasonably likely" to do so and it allows almost anyone to act as a censorship czar.  See Animal Legal Def. Fund v. Wasden, 878 F.3d 1184, 1194–95 (9th Cir. 2018) (explaining that exceptions to the First Amendment "typically require proof of specific or tangible harm" or "a material benefit to the speaker"); Alvarez, 567 U.S. at 719 (Breyer, J., concurring) (same).  The far-reaching prior restraints AB 2839 implements have not been recognized by First Amendment caselaw thus far and have no historically accepted analogs.  Having found that AB 2839 goes beyond historical exceptions to the First Amendment and is a statute that discriminates based on content, the Court proceeds to conduct a strict scrutiny analysis.

### b. Strict Scrutiny

Plaintiffs and Defendants both agree that at minimum, strict scrutiny is the appropriate standard for a content-based

1   restriction that implicates political expression like AB 2839.

2   See D. MSJ at 10; P. MSJ at 22.  The First Amendment affords the

3   "broadest protection" to the "discussion of public issues" and

4   "political expression in order to assure the unfettered

5   interchange of ideas for the bringing about of political and

6   social changes desired by the people." McIntyre v. Ohio

7   Election Comm'n, 514 U.S. 334 (1997).  To withstand strict

8   scrutiny, AB 2839 must advance a compelling state interest

9   through the least-restrictive means possible.  Reed v. Town of

10  Gilbert, 576 U.S. 155, 173 (2015).  A content-based law is

11  subject to strict scrutiny and "is justified only if the

12  government demonstrates that [the law] is narrowly tailored to

13  serve a compelling state interest." Twitter, Inc. v. Garland,

14  61 F.4th 686, 698 (9th Cir. 2023).  California "bears the burden

15  of proving the [law] meets this standard.  Pierce v. Jacobsen,

16  44 F.4th 853, 862 (9th Cir. 2022).

17                  (i) Compelling State Interest

18       The first step in a strict scrutiny analysis is for the

19  Court to assess whether the State has a compelling interest in

20  regulating the particular area it seeks to regulate.  Reed, 576

21  U.S. at 173.  Plaintiffs argue that AB 2839 does not advance a

22  compelling state interest because its selective limitations upon

23  speech do not further California's interest in "protecting free

24  and fair elections."  Cal. Elec. Code § 20012(a)(4).  Defendants

25  retort that the kind of deepfakes that AB 2839 prohibits pose a

26  risk to California's interests in electoral integrity and

27  preventing fraud on voters.  See D. MSJ at 16.

28       The Court previously found that California's interests are

9

1   compelling.  See Order at 11.  Indeed, the U.S. Supreme Court

2   has recognized that "[a] State indisputably has a compelling

3   interest in preserving the integrity of its election process."

4   Eu v. S.F. Cnty. Democratic Cent. Comm., 489 U.S. 214, 231

5   (1989).  And "a State has a compelling interest in protecting

6   voters from confusion and undue influence."  Burson v. Freeman,

7   504 U.S. 191, 199 (1992) (plurality op.).  For example, the

8   State's legislative findings referenced actual examples of

9   deepfakes that have deceived voters and impaired free and fair

10  elections, such as the robocalls allegedly from former President

11  Biden before the 2024 New Hampshire primary that explicitly

12  encouraged voters not to go to the polls.  See Liska Decl., Ex.

13  8, at 6-7; Ex. 11 at 8-9; see also Liska Decl., Ex. 14-19.

14      Research and studies confirm what California's legislative

15  findings detail: political deepfakes have proliferated online

16  and can influence voters' behavior, choices, and trust in the

17  electoral process and electoral outcomes.  See Alvarez Decl.

18  ¶¶ 10-17, 21, ECF No. 49-3.  Deepfakes online may alter voters'

19  behavior and sow confusion that can lead voters to refrain from

20  voting altogether.  Id. ¶¶ 10-17.  And those who encounter

21  materially deceptive content about the voting process may find

22  their confidence in the electoral process undermined erroneously

23  — especially if the fraudulent content is a government official

24  allegedly telling voters to doubt electoral outcomes.  Id.

25  ¶¶ 10-17.  Thus, the Court finds that political deepfakes pose a

26  risk to election integrity and that California has a compelling

27  interest in regulating this arena.

28  ///

1        (ii) <u>Least Restrictive Means</u>

2        While the Court acknowledges that California may have a

3   compelling interest in protecting election integrity, the tools

4   it deploys to achieve its interest must be the least restrictive

5   means of achieving such goal when significant speech issues are

6   at stake.  As Plaintiffs argue, the most glaring issue with AB

7   2839 is that the statute is not narrowly tailored because it

8   captures even constitutional deepfakes and all "materially

9   deceptive content."  The First Amendment does not "permit

10  speech-restrictive measures when the state may remedy the

11  problem by implementing or enforcing laws that do not infringe

12  on speech."  <u>IMDb.com, Inc. v. Becerra</u>, 962 F.3d 1111, 1125 (9th

13  Cir. 2020) (citing cases).  "Because restricting speech should

14  be the government's tool of last resort, the availability of

15  obvious less-restrictive alternatives renders a speech

16  restriction overinclusive" and unconstitutional.  <u>Id.</u>

17       As the Court previously recognized in its preliminary

18  injunction Order, existing statutory causes of action, including

19  "privacy torts, copyright infringement, or defamation already

20  provide recourse to public figures or private individuals whose

21  reputations may be afflicted by artificially altered depictions

22  peddled by satirists or opportunists on the internet."  Order at

23  5; <u>see also</u> <u>IMDb.com, Inc.</u>, 962 F.3d at 1126 ("Because the State

24  'has various other laws at its disposal that would allow it to

25  achieve its stated interests while burdening little or no

26  speech,' it fails to show that the law is the least restrictive

27  means to protect its compelling interest.  That failure alone

28  dooms [the law].").

1    Indeed, several other narrower constructions might allow

2 the statute to align with historically recognized First

3 Amendment exceptions.  See P. Opp'n at 14-15.  For instance,

4 California could limit AB 2839's reach to false speech that

5 causes legally cognizable harms like false speech that actually

6 causes voter interference, coercion, or intimidation.  See

7 Wasden, 878 F.3d at 1198 (suggesting similar narrowing).

8 California could also limit the statute's reach to factual

9 statements that are demonstrably false like the time, date,

10 place, or manner of voting.  See generally Eugene Volokh, When

11 are Lies Constitutionally Protected?, 4 J. Free Speech L. 685,

12 704-09 (2024) (contrasting lies about "election procedures"— an

13 area where a "narrower restriction[] might pose fewer problems"

14 with lies about election campaigns and government officials—

15 areas that should be "categorically immune from liability").

16    Another narrower construction might be for California to

17 limit potential plaintiffs to political candidates actually

18 harmed by unprotected false speech, which would mirror

19 defamation law more closely.  See Restatement (Second) of Torts

20 § 564A (1977); P. MSJ at 25.  Plaintiffs also suggest that

21 California could encourage alternatives that are already working

22 in the free market such as fact checking or counter speech.

23 California could even fund its own AI educational campaigns or

24 form committees on combatting false or deceptive election

25 content.  See P. MSJ at 23; P. Opp'n at 15.  While California's

26 expert explains that political deepfakes are "sticky" and this

27 type of misinformation spreads too quickly for governments to

28 counteract it, Alvarez Decl. at ¶¶ 22, 39, 53, Plaintiffs have

1 offered evidence from their expert that shows fact-checking

2 alternatives like "Community Notes and Grok are already . . .

3 scalable solutions being adopted" in the real world.  Ayers

4 Decl. ¶¶ 50-51, ECF No. 80-8.  These misinformation flagging

5 tools crowdsource identification and labeling to educate

6 citizens rather than relying on censorship to eradicate

7 potentially misleading content.  Id. at ¶¶ 13-16.  Thus,

8 California provides no substantial evidence that other less

9 restrictive means of regulating deceptive election content are

10 not feasible or effective.

11     Under strict scrutiny, California must show that

12 alternative methods "would fail to achieve the government's

13 interests, not simply that the chosen route is easier."

14 McCullen v. Coakley, 573 U.S. 464, 495 (2014).  California has

15 not shown that it has explored other alternative means of

16 mitigating the potential harms of deepfakes or deceptive media

17 before jumping to complete censorship.  Because the First

18 Amendment is "[p]remised on mistrust of governmental power," the

19 Court affords minimal deference to California's choice to stifle

20 speech at the outset rather than use less restrictive counter

21 speech.  Citizens United v. FEC, 558 U.S. 310, 340 (2010).  The

22 Court thus holds that California has failed to use the least

23 restrictive means in its efforts to protect election integrity

24 and that accordingly, AB 2839 fails constitutional muster under

25 strict scrutiny.

26 ///

27 ///

28 ///

1          (iii) <u>Constitutional and Unconstitutional</u>

2                <u>Applications</u>

3          Pointing to the Supreme Court's recent decision in <u>Moody v.</u>

4     <u>NetChoice, LLC</u>, 603 U.S. 707, 723 (2024), Defendants suggest

5     that the Court may uphold AB 2839 as valid if its constitutional

6     applications outweigh its unconstitutional ones.  <u>See</u> D. MSJ at

7     14.  However, as Plaintiffs argue in their opposition at 10, the

8     distinctions AB 2839 draws between certain subjects, viewpoints,

9     and speakers infect the whole statute, making the statute

10    unconstitutional in all of its applications.  <u>See</u> P. Opp'n at

11    10, ECF No. 78.  "As <u>Moody</u> clarified, a First Amendment facial

12    challenge has two parts: first, the courts must 'assess the

13    state laws' scope'; and second, the courts must 'decide which of

14    the laws' applications violate the First Amendment, and . . .

15    measure them against the rest.'"  <u>NetChoice, LLC v. Bonta</u>, 113

16    F.4th 1101, 1115-1116 (9th Cir. 2024) (alteration in original)

17    (quoting <u>Moody</u>, 603 U.S. at 724).  However, when a challenged

18    law restricts pure speech by the topics discussed or viewpoint

19    expressed, it cannot be "salvage[d] by . . . constitutionally

20    permissible applications."  <u>Iancu</u>, 588 U.S. at 398.  In fact, a

21    law that regulates speech "based on the ideas or opinions it

22    conveys" fails even when the law is not overbroad and even when

23    the law regulates only unprotected speech.  <u>Id.</u> at 393.  <u>Iancu</u>

24    instructs that when a law "distinguishes between . . . ideas,"

25    it is facially invalid regardless of overbreadth.  588 U.S. at

26    394.

27         Stated another way, a law that discriminates facially

28    discriminates in each application.  <u>Id.</u> at 395 ("The facial

14

1  viewpoint bias . . . results in viewpoint-discriminatory

2  application.").  AB 2839 "raise[s] the same First Amendment

3  issues" "in every application" because it is content, viewpoint,

4  and speaker based.  X Corp. v. Bonta, 116 F.4th 888, 899 (9th

5  Cir. 2024) (holding facial challenge appropriate because

6  reporting requirements on "the face of the law" applied the same

7  way to affected social media companies).  While it is true that

8  AB 2839 has constitutional applications to the extent that

9  defamatory or fraudulent speech falls under its umbrella, this

10  is only because its scope is so elastic that it penalizes

11  wholesale categories of speech, sweeping in both protected and

12  unprotected speech.  Thus, the statute's potential

13  unconstitutional applications would regularly outweigh its

14  constitutional ones.  See P. MSJ at 13.

15                    2.   First Amendment As Applied Challenge

16      In conjunction with their facial challenge, Plaintiffs also

17  bring an as applied challenge against AB 2839.  Defendants

18  assert that AB 2839 is not unconstitutional as applied to the

19  Plaintiffs because their humorous media constitutes parody or

20  satire, which do not purport to be "an authentic record" and

21  thereby do not fall under AB 2839's definition for materially

22  deceptive media.  See Cal. Elec. Code § 20012(f)(8)(A); D. MSJ

23  at 14-20.  Plaintiffs respond that AB 2839 does sweep in parody

24  and satire and that the safe harbor provision implicates

25  Plaintiffs' free speech rights because the disclaimer is a

26  labelling requirement that constitutes impermissible compelled

27  speech.  See P. MSJ at 12, 19-22.

28      Contrary to Defendants' argument, the satirical and

humorous videos Plaintiffs create have been mistaken by ordinary people as authentic and therefore would fall under AB 2839's purview.  For example, Plaintiffs Kohls and The Bee created fictitious ads parodying Kamala Harris, Gavin Newsom, and Elizabeth Warren during the 2024 election.  See PSUF ¶¶ 21, 56, 59.  Because these ads used generative-AI to reproduce the candidate or official's voice, they "falsely appear[ed] . . . authentic."  Cal. Elec. Code § 20012(f)(8); see, e.g. PSUF ¶ 62. And because the videos portrayed these politicians saying things they did not say without the prescribed disclaimer, they would violate AB 2839.  Cal. Elec. Code § 20012(b).

Defendants agree that some satirical videos can appear to be authentic within the meaning of AB 2839.  California previously represented at the preliminary injunction stage that a "voter who encountered [the Harris Parody Video] . . . could have concluded . . . that it was real."  See Opp'n P.s' Mot. Prelim. Inj. at 21, ECF No. 9.  Thus, AB 2839's expansive terms capture even satire or parody videos since the law does not require that the parody in fact does fool or mislead someone. Content need only "falsely appear . . . authentic" in some respect to violate the law.  Cal. Elec. Code § 20012(f)(8). Since parody "imitates the characteristic style of an author or a work for comic effect or ridicule," much digitally created parody would run afoul of the law.  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 580 (1994).

Moreover, the State's contention that parody and satire are excepted is unpersuasive because AB 2839's safe harbor codified at Cal. Elec. Code § 20012(b)(3) imposes a disclaimer

16

requirement on parody or satire that is independently suspect. The purported safe harbor provides no refuge at all because any creator of AI-generated political satire would feel compelled to include a disclosure stating "This [media] has been manipulated for purposes of satire or parody" to avoid risk of civil penalty. Id. § 20012(b)(3). Defendants ask the Court to construe Section 20012(b)(3) as simply requiring disclosure of political speech, which subjects the requirement to a lower level of scrutiny used in the campaign finance context, but the explicitly creative context humorists and satirists operate in necessarily renders any compelled speech product an imposition on creative expression. See D. MSJ at 20-21. Courts "presume that speakers, not the government, know best both what they want to say and how to say it." Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 790-91 (1988).

As a legal matter, the potential speech at play is not similar to the campaign finance context and even if it were, transparency laws that compel speech still trigger strict scrutiny, not exacting scrutiny as the State maintains. Nat'l Inst. Of Fam. & Life Advocs. V. Becerra (NIFLA), 585 U.S. 755, 766 (2018) (licensing notices); Riley, 487 U.S. at 797 ("compelled statements of 'fact'" for fundraisers); X Corp., 116 F.4th at 902 ("Even a pure 'transparency' measure, if it compels non-commercial speech, is subject to strict scrutiny" (citing Riley, 487 U.S. at 796-97)). Thus, the Court agrees with Plaintiffs that strict scrutiny applies and the safe harbor requirement is impermissible because it drowns out Plaintiffs' message. See P. MSJ at 21; P. Opp'n at 13. As the Court

1  previously held in its preliminary injunction Order, the size

2  requirement of the disclaimer would take up an entire screen in

3  many instances and "effectively rules out the possibility of

4  [plaintiffs' videos] in the first place."  Order at 15; NIFLA,

5  585 U.S. at 778 (internal quotation omitted); accord Am.

6  Beverage Ass'n v. City & Cnty. of San Francisco, 916 F.3d 749,

7  757 (9th Cir. 2019) (en banc) (cleaned up) (determining that

8  labeling requirement that would occupy 20% of advertisement was

9  "unjustified or unduly burdensome").  Put simply, a mandatory

10  disclaimer for parody or satire would kill the joke.

11      Given that AB 2839 captures parody and satire and also

12  enforces an overly burdensome disclaimer requirement, the Court

13  finds that AB 2839 is unconstitutional as applied for the same

14  reasons that it is unconstitutional facially: the statute does

15  not use the least restrictive means to regulate misleading

16  content.  A "government-compelled disclosure that imposes an

17  undue burden fails for that reason alone," even when the warning

18  "is factually accurate and noncontroversial."  Am. Beverage

19  Ass'n, 916 F.3d at 757 (en banc).

20              3.  California Constitutional Challenge

21      California's free speech clause, Article I, Section 2, of

22  the California Constitution, is analytically similar to the

23  First Amendment.  See Beeman v. Anthem Prescription Management,

24  LLC, 58 Cal. 4th 329, 341 (2013).  It follows that AB 2839

25  violates California's Constitution for all of the same reasons

26  that it violates the First Amendment of the United States

27  Constitution.  See Order at 16 ("Under current case law, the

28  California state right to freedom of speech is at least as

18

1  protective as its federal counterpart."); _City of Montebello v._

2  _Vasquez_, 1 Cal. 5th 409, 421 n.11 (2016) ("[T]he California

3  liberty of speech clause is broader and more protective than the

4  free speech clause of the First Amendment."); _Delano Farms Co._

5  _v. Cal. Table Grape Comm'n_, 4 Cal. 5th 1204, 1221 (2018) ("[O]ur

6  case law interpreting California's free speech clause has given

7  respectful consideration to First Amendment case law for its

8  persuasive value.").  Therefore, the Court grants Plaintiffs'

9  motion for summary judgment on their California Constitution

10  claim as well.

11              4.   Fourteenth Amendment Challenge

12      Having found that Plaintiffs prevail on their motion for

13  summary judgment under the First Amendment, the Court next

14  addresses Plaintiffs' Fourteenth Amendment claims.  Plaintiffs

15  argue that AB 2839 offends the Fourteenth Amendment because it

16  is unconstitutionally vague.  _See_ P. MSJ at 35.  The Court

17  agrees.  A law is unconstitutionally vague "if its prohibitions

18  are not clearly defined."  _Grayned v. City of Rockford_, 408 U.S.

19  104, 108 (1972).  "[V]agueness concerns are more acute when a

20  law implicates First Amendment rights" because of the risks of

21  chilled speech and discriminatory enforcement.  _Butcher v._

22  _Knudsen_, 38 F.4th 1163, 1169 (9th Cir. 2022).

23      Specifically, the standards AB 2839 employs such as content

24  "reasonably likely to harm the reputation or electoral prospects

25  of a candidate" and "reasonably likely to falsely undermine

26  confidence in the outcome" of an election are too subjective and

27  vague because they inherently rely on value judgments.  Cal.

28  Elec. Code § 20012(b)(1)(A), (C).  What may harm a candidate's

electoral prospects versus help her is subjective because it depends on the recipient encountering the manipulated content. For example, whether a satirical AI-generated video that features a candidate calling for open borders and amnesty for undocumented immigrants helps or harms a campaign is entirely dependent on who sees the ad.  See P. MSJ at 37.  On one hand, the video may appeal to the candidate's base and boost favorability numbers.  On the other, the video may offend those of differing political views and alienate certain voters to the candidate's detriment.  The potential permutations associated with election strategy make any predication about what "likely . . . harm[s] electoral prospects" nebulous and intangible at best.

Moreover, when asked at oral argument about the statute's specific application to the Kamala Harris parody video which sparked this instant litigation, counsel for the State did not take a position as to whether or not that video would fall under AB 2839's ambit.  While cases at the margin will always exist, the fact that the viral video at issue in this case and others similar to it cannot neatly be categorized as falling within or outside the law indicates that AB 2839's scope is too indeterminate and is thereby unconstitutional on its face.  See United States v. Jae Gab Kim, 449 F.3d 933, 943 (9th Cir. 2006) (explaining a law is unconstitutional when citizens can't act based on "factual knowledge" to "avoid violating the law").

Laws like AB 2839 which provide "no principle for determining when" speech will "pass from the safe harbor . . .to the forbidden" do not fairly provide notice of conduct that is

1  prohibited.  Gentile v. State Bar of Nev., 501 U.S. 1030, 1049

2  (1991); see Flomo v. Firestone Nat. Rubber Co., LLC, 643 F.3d

3  1013, 1022 (7th Cir. 2011) (observing that law prohibiting

4  practices "likely to harm" was "pretty vague, in part because no

5  threshold of actionable harm is specified").  "[A]n

6  indeterminate prohibition carries with it the opportunity for

7  abuse" and AB 2839's provisions would allow any government

8  official or recipient of AI-manipulated content to decide what

9  harms electoral prospects or undermines confidence in an

10  election.  Minn. Voters All., 585 U.S. 1, 21 (2018) (cleaned

11  up).  Reasonable people can disagree about electoral strategy or

12  speculate about harm and without "objective, workable

13  standards," AB 2839 cannot withstand Plaintiffs' vagueness

14  challenge.  Id.

15              5.  Severability

16      Finally, the last issue the Court addresses is AB 2839's

17  severability clause.  Cal. Elec. Code § 20012(h).  California

18  law allows severance when a statutory provision is "functionally

19  and volitionally separable," remains coherent, and the

20  "remainder of the statute is complete in itself."  Kohls v.

21  Bonta, 752 F. Supp. 3d 1187, 1198–99 (E.D. Cal. 2024) (internal

22  quotation omitted).  The Court previously noted in its

23  preliminary injunction Order that the audio only portion of AB

24  2839 codified at Cal. Elec. Code § 20012(b)(2)(B)(ii) might be

25  severable.  See Order at 19.  Defendants also argue in their

26  opposition that the Court can sever the font size requirement to

27  save the safe harbor provision of AB 2839 codified at Cal. Elec.

28  Code § 20012(b)(3) because without the font size requirement,

1  the disclaimer would no longer be overly burdensome.  See D.

2  Opp'n at 23.

3      In response, Plaintiffs contend that these two provisions

4  would still be subject to strict scrutiny.  See P. MSJ at 19-22;

5  P. Opp'n at 10-12.  Indeed, the audio only requirement is a

6  speaker-based distinction because it falls under the section

7  regulating candidates portraying themselves.  See Cal. Elec.

8  Code § 20012(b)(2)(B)(ii).  Additionally, while Plaintiffs do

9  not address whether removing the font requirement would make the

10  safe harbor provision constitutional, the safe harbor

11  requirement fails strict scrutiny because if severed, it would

12  single out "satire or parody," meaning that arguably more

13  harmful content like non-humorous media that is intentionally

14  meant to deceive or impersonate would not be required to bear a

15  label.  California has not shown that it has a specific interest

16  in labelling candidate-created content or humorous content more

17  than it has an interest in disclaiming any other content that

18  contains materially deceptive characteristics.  Thus, the Court

19  finds that these provisions, even if severed, would be

20  underinclusive for singling out certain speakers rather than

21  broadly requiring materially deceptive content to be labeled as

22  a general matter.

23      Because the potentially severed parts of AB 2839 are

24  underinclusive, this reveals that what remains of the law

25  "[would] not actually advance a compelling interest."  Williams-

26  Yulee v. Fla. Bar, 575 U.S. 433, 449 (2015).  At this stage,

27  given the Court's findings that AB 2839's discriminates based on

28  content, viewpoint, and speaker and the Courts determination

22

1    that no portions of AB 2839 are severable, the Court finds that

2    AB 2839 fails strict scrutiny in its entirety.  See Tollis Inc.

3    v. Cnty. of San Diego, 505 F.3d 935, 943 (9th Cir. 2007)

4    ("severance is inappropriate if the remainder of the statute

5    would still be unconstitutional").

6                                III. CONCLUSION

7        In sum, AB 2839 suffers from "a compendium of traditional

8    First Amendment infirmities," stifling too much speech while at

9    the same time compelling it on a selective basis.  Washington

10   Post v. McManus, 944 F.3d 506 (4th Cir. 2019).  While there are

11   serious concerns about deepfakes and AI affecting elections,

12   California's AB 2839 represents a law that is well intentioned

13   but constitutionally infirm.  When it comes to political

14   expression, the antidote is not prematurely stifling content

15   creation and singling out specific speakers but encouraging

16   counter speech, rigorous fact-checking, and the uninhibited flow

17   of democratic discourse.

18       Novel mediums of speech and even low-brow humor have equal

19   entitlement to First Amendment protection and the principles

20   undergirding the freedom of expression do not waver when

21   technological changes occur.  See e.g., Moody, 603 U.S. at 734

22   (social media feeds); Brown v. Ent. Merch. Ass'n, 564 U.S. 786,

23   790 (2011) (videogames).  The satirical videos and posts that

24   Plaintiffs proliferate to critique public officials squarely

25   constitute speech on public issues, which occupies the "highest

26   rung of the hierarchy of First Amendment values," and is granted

27   special protection.  NAACP v. Claiborne Hardware Co., 458 U.S.

28   886, 913 (1982); Carey v. Brown, 447 U.S. 455, 467 (1980).  Any

1   "speech concerning public affairs is more than self-expression;

2   it is the essence of self-government." <u>Garrison v. Louisiana</u>,

3   379 U.S. 64, 74-75 (1964).  To this end, California's AB 2839

4   strikes at the heart of the First Amendment and does not

5   overcome the constitutional safeguards erected to protect

6   Plaintiffs' right to speak.  To be sure, deepfakes and

7   artificially manipulated media arguably pose significant risks

8   to electoral integrity, but the challenges launched by digital

9   content on a global scale cannot be quashed through censorship

10  or legislative fiat.  Just as the government may not dictate the

11  canon of comedy, California cannot pre-emptively sterilize

12  political content. "...In this field every person must be his

13  own watchman for truth, because the forefathers did not trust

14  any government to separate the true from the false for us."

15  <u>Meyer v. Grant</u>, 486 U.S. 414, 419-20 (1988).

16                          IV. ORDER

17       For the reasons set forth above, the Court GRANTS

18  Plaintiff's motion for a summary judgment and DENIES Defendants'

19  cross motion.  Defendants Rob Bonta and Shirley N. Weber and

20  their agents, employees, public servants, officers and persons

21  acting in concert with them are HEREBY PERMANENTLY ENJOINED from

22  enforcing AB 2839 against the named Plaintiffs.

23       IT IS SO ORDERED.

24  Dated: August 29, 2025

25

26  _____

27  JOHN A. MENDEZ
    SENIOR UNITED STATES DISTRICT JUDGE

28